1  Leslie Bryan Hart, Esq. (SBN 4932)
   John D. Tennert, Esq. (SBN 11728)
2  FENNEMORE CRAIG, P.C.
   300 E. Second St., Suite 1510
3  Reno, Nevada 89501
   Tel: 775-788-2228
4  lhart@fclaw.com; jtennert@fclaw.com

5  (Admitted *Pro Hac Vice*)
   Asim Varma, Esq.
6  Howard N. Cayne, Esq.
   Michael A.F. Johnson, Esq.
7  ARNOLD & PORTER KAYE SCHOLER LLP
   601 Massachusetts Ave., NW
8  Washington, DC 20001-3743
   Tel: (202) 942-5000
9  Asim.Varma@apks.com;
   Howard.Cayne@apks.com;
10 Michael.Johnson@apks.com

11 *Attorneys for Plaintiffs Federal Housing Finance*
   *Agency and Federal Home Loan Mortgage*
12 *Corporation*

13                  **UNITED STATES DISTRICT COURT**
                         **DISTRICT OF NEVADA**
14

15 FEDERAL HOUSING FINANCE AGENCY,      CASE NO.   2:17-cv-03006-JAD-CWF
   as conservator of Federal Home Loan
16 Mortgage Corporation; FEDERAL HOME
   LOAN MORTGAGE  CORPORATION; and
17 U.S. BANK NATIONAL ASSOCIATION,       **FEDERAL HOUSING FINANCE**
                                         **AGENCY AND FEDERAL HOME LOAN**
18                  Plaintiffs,          **MORTGAGE CORPORATION'S**
                                         **OPPOSITION TO MOTION TO DISMISS**
   vs.                                   **AND**
19                                       **MOTION FOR SUMMARY JUDGMENT**

20 LN MANAGEMENT LLC, SERIES 2937
   BARBOURSVILLE; FAIRBROOK
21 COMMUNITY ASSOCIATION; and
   NEVADA ASSOCIATION SERVICES, INC.,
22
                   Defendants.
23

24                        **INTRODUCTION**

25        In this case, Plaintiff Federal Home Loan Mortgage Corporation ("Freddie Mac") owns a

26 deed of trust encumbering the subject property; Defendant LN Management LLC, Series 2937

27 Barboursville ("LN Management") contends that a homeowners' association foreclosure sale

("HOA Sale") extinguished that deed of trust under a state law, NRS 116.3116(2) ("State Foreclosure Statute"), which allows properly conducted HOA foreclosure sales to extinguish all junior interests.  On December 6, 2017, Plaintiffs filed their Complaint to quiet title and for a declaratory judgment, asserting primarily that a federal statute, 12 U.S.C. § 4617(j)(3) ("Federal Foreclosure Bar"), protects Freddie Mac's deed of trust from extinguishment.

LN Management has moved to dismiss the complaint as time barred, citing Nevada's three-year statute of limitation for an action upon a liability created by statute.  Mot. to Dismiss ("MTD") at 3 (citing NRS 11.190(3)(a)), ECF No. 29.  But because the Federal Housing Finance Agency ("FHFA") as Conservator is a plaintiff, a federal statute—not state law—provides the applicable limitations period; that statute specifies a six-year period for claims, such as the quiet-title claim here, founded upon a contractual relationship.

The action is timely, and the Court should therefore deny LN Management's Motion.

Moreover, the Court should grant summary judgment in favor of FHFA and Freddie Mac. At the time of the HOA Sale, Freddie Mac owned the deed of trust and corresponding promissory note, while Mortgage Electronic Registration Systems, Inc. ("MERS") appeared as the deed of trust's beneficiary of record as nominee for Freddie Mac and, and, U.S. Bank National Association ("U.S. Bank") acted as Freddie Mac's contractually authorized servicer. As the Ninth Circuit and courts in this District have held in more than thirty cases, the Federal Foreclosure Bar protects Freddie Mac's property interests while it is under the conservatorship of FHFA.  The Federal Foreclosure Bar preempts state law insofar as it would permit nonconsensual extinguishment of Freddie Mac's property interests.  Under the Supremacy Clause, state law must yield and the HOA Sale did not extinguish Freddie Mac's deed of trust, precluding LN Management from claiming a free-and-clear interest in the property.

Four Ninth Circuit decisions have evaluated materially identical evidence as that in the record here—business records and declaration testimony of an employee of Freddie Mac or Fannie Mae (together, "the Enterprises")—and held that this evidence was sufficient for a district court to find that the Enterprises had a protected property interest and grant summary judgment.

1   *FHFA v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136 (9th Cir. 2018); *Berezovsky v. Moniz*, 869 F.3d

2   923 (9th Cir. 2017); *Elmer v. JPMorgan Chase & Co.*, 707 F. App'x 426 (9th Cir. 2017); *Saticoy*

3   *Bay, LLC, Series 2714 Snapdragon v. Flagstar Bank, FSB*, 699 F. App'x 658 (9th Cir. 2017).

4   This Court should do so as well here.

5     For these reasons, summary judgment should be entered in favor FHFA and Freddie Mac.

6               **BACKGROUND**

7   **I.  The Secondary Mortgage Market**

8     In the 1970, Congress chartered Freddie Mac to facilitate the nationwide secondary

9   mortgage market, and thereby to enhance the equitable distribution of mortgage credit

10  throughout the nation.  *See City of Spokane v. Fannie Mae*, 775 F.3d 1113, 1114 (9th Cir. 2014).

11  Congress has confirmed that "the continued ability of [Fannie Mae] and [Freddie Mac] to

12  accomplish their public missions is important to providing housing in the United States and the

13  health of the Nation's economy."  12 U.S.C. § 4501.  Freddie Mac's federal statutory charter

14  authorizes it to purchase and deal only in secured "mortgages," not unsecured loans.  *See* 12

15  U.S.C. §§ 1451(d), 1454; *see also Lightfoot v. Cendant Mortg. Corp*., 137 S. Ct. 553, 557

16  (2017); *FHFA v. Nomura Holding Am., Inc.*, 873 F.3d 85, 105 (2d Cir. 2017) (same); *Perry*

17  *Capital LLC v. Mnuchin*, 864 F.3d 591, 599-600 (D.C. Cir. 2017) (same).

18    Freddie Mac has purchased millions of mortgages nationwide, including hundreds of

19  thousands in Nevada.  *See Town of Babylon v. FHFA*, 699 F.3d 221, 225 (2d Cir. 2012).  In

20  2012, "the value of the combined debt and mortgage-related assets of [Fannie Mae and Freddie

21  Mac] along with the Federal Home Loan Banks . . . exceed[ed] $5.9 trillion" nationwide.  *Id*. at

22  225.  Indeed, "[t]he position held in the home mortgage business by Fannie Mae and Freddie

23  Mac make[s] them the dominant force in the market."  *Id.*  Their dominant position continues to

24  today.  *See Nomura*, 873. F.3d at 105; *Perry*, 864 F.3d at 599.

25    Although Freddie Mac owns a large number of mortgage loans through its purchases on

26  the secondary market, it is not in the business of managing the mortgages themselves, such as

27  handling day-to-day borrower communications.  Rather, like other investors in loans, Freddie

28

Mac contracts with servicers to act on its behalf, and these servicers often are assigned deeds of trust as record beneficiary to facilitate their efficient management of those loans.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038-39 (9th Cir. 2011) (describing how loan owners contract with servicers and the servicers' role); Restatement (Third) of Prop.: Mortgages § 5.4 cmt. c ("Restatement") (discussing the common practice where investors in the secondary mortgage market designate their servicer to be assignee of the mortgage); Freddie Mac's Single-Family Seller/Servicer Guide ("Guide") at 1101.2(a) (discussing Freddie Mac's relationship with servicers to manage the loans Freddie Mac purchases).[1]  The Nevada Supreme Court has recognized the importance of these relationships by adopting the Restatement approach.  *See In re Montierth*, 354 P.3d 648, 650-51 (Nev. 2015).  *Montierth* holds that when a loan owner has an agent or contractual relationship with an entity who acts as the beneficiary of record of a deed of trust, the loan owner (though not the recorded beneficiary) maintains a secured property interest.  *Id*.

Freddie Mac and its servicers also work with Mortgage Electronic Registration System ("MERS").  The Ninth Circuit has noted that while "MERS, as the 'nominee' of the lender and of any assignee of the lender, is designated . . . as the 'beneficiary' . . . under the deed of trust," a "lender *owns* the home loan borrower's . . . promissory note."  *In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 776 (9th Cir. 2014) (emphasis added).  The "obvious advantage" of the system is that "it allows residential lenders to avoid the bother and expense of recording every change of *ownership* of promissory notes."  *Id.* at 776-77 (emphasis added); *see also Higgins v. BAC Home Loans Servicing, LP*, 793 F.3d 688, 689 (6th Cir. 2015) (holding that sale of note to

---

[1]  The Guide is publicly available on Freddie Mac's website.  An interactive version is available at www.freddiemac.com/singlefamily/guide, and archived prior versions of the Guide are available at www.freddiemac.com/singlefamily/guide/bulletins/snapshot.html.  While the cited sections of the Guide have been amended over the course of Freddie Mac's ownership of the Loan, none of these amendments have materially changed the relevant sections.  A static, PDF copy of the most recent version of the Guide is available at http://www.freddiemac.com/learn/pdfs/deliver/allregs/combined.pdf.  The Court may take judicial notice of the Guide.  *See, e.g.*, *Berezovsky*, 869 F.3d at 932, n.9 (taking judicial notice of Freddie Mac's servicing guide); *Charest v. Fannie Mae*, 9 F. Supp. 3d 114, 118 & n.1 (D. Mass. 2014); *Cirino v. Bank of Am., N.A.*, No. CV 13-8829, 2014 WL 9894432, at *7 (C.D. Cal. Oct. 1, 2014).

new owner while MERS remains beneficiary of record of a mortgage does not trigger Kentucky recordation requirement).  The true owner of the loan is the lender or its successor—not MERS. *See Cervantes*, 656 F.3d at 1039.

## II.      FHFA and Freddie Mac in Conservatorship

In July 2008, Congress passed the Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 et seq.) ("HERA"), which established FHFA as an independent federal agency with regulatory and oversight authority over Fannie Mae and Freddie Mac (together, "the Enterprises") and the Federal Home Loan Banks.  In September 2008, FHFA placed the Enterprises into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs."  12 U.S.C. § 4617(a)(2).  Congress authorized the Conservator "to undertake extraordinary economic measures" out of a concern that "a default by Fannie and Freddie would imperil the already fragile national economy." *Perry*, 864 F.3d at 599.  Accordingly, Congress granted FHFA an array of powers, privileges, and exemptions from otherwise applicable laws when acting as Conservator.  Among these is a section providing that "[n]o property" of FHFA conservatorships "shall be subject to . . . foreclosure . . . without the consent of [FHFA]."  12 U.S.C. § 4617(j)(3).  Freddie Mac remains in FHFA conservatorship to the present day.

## III.     Undisputed Facts Specific to This Case

### A.      The Subject Property, Note, and Deed of Trust

1.     A deed of trust listing Jia Zhou as the borrower ("Borrower") and Linear Financial, LP d/b/a Pardee Home Loans ("Linear") as the lender and beneficiary was executed on December 27, 2010, and recorded on December 29, 2010 ("Deed of Trust").  Ex. A.  The Deed of Trust granted Linear a security interest in real property known as 2937 Barboursville Court, Henderson, Nevada 89052 (the "Property") to secure the repayment of a loan in the original amount of $296,820.00 to the Borrower (the Deed of Trust and note together are the "Loan").  *Id.*

///

2.    Freddie Mac purchased the Loan and thereby obtained a property interest in the Deed of Trust in March 2011.  *See* Declaration of Dean Meyer, Ex. B.  Freddie Mac maintained that ownership at the time of the HOA Sale on November 16, 2012.  *Id.*

3.    At all material times herein, U.S. Bank was and still is the servicer of the Loan.  Ex. B.

4.    On September 7, 2011, Linear recorded an assignment of the Deed of Trust to MERS.  At the time of the HOA Sale on October 23, 2012, U.S. Bank was the servicer of the Loan for Freddie Mac while MERS appeared as the record beneficiary of the Deed of Trust in its capacity as nominee for Freddie Mac.  *See* Ex. B.

5.    On August 28, 2013, MERS recorded an assignment of the Deed of Trust to U.S. Bank.  Ex. C.

**B.    Freddie Mac's Contract with Its Servicers, Including U.S. Bank**

6.    The relationship between U.S. Bank, as the servicer of the Loan, and Freddie Mac, as owner of the Loan, is governed by the Guide, a document central to Freddie Mac's relationship with servicers nationwide.  Among other things, the Guide provides that Freddie Mac's servicers may act as record beneficiaries for the deeds of trust Freddie Mac owns and requires that servicers assign these deeds of trust to Freddie Mac upon Freddie Mac's demand.  *See* Ex. B (Guide at 1101.2(a)).

7.    Specifically, the Guide provides that:

> For each Mortgage purchased by Freddie Mac, the Seller and the Servicer agree that Freddie Mac may, at any time and without limitation, require the Seller or the Servicer, at the Seller's or the Servicer's expense, to make such endorsements to and assignments and recordations of any of the Mortgage documents so as to reflect the interests of Freddie Mac.

Ex. B (Guide at 1301.10).

8.    The Guide also provides that:

> The Seller/Servicer is not required to prepare an assignment of the Security Instrument to Freddie Mac. However, *Freddie Mac may, at its sole discretion and at any time, require a Seller/Servicer, at the Seller/Servicer's expense, to prepare, execute and/or record assignments of the Security Instrument to Freddie Mac.*

Ex. B (Guide at 6301.6) (emphasis added).

6

9.      The Guide authorizes servicers to foreclose on the Deed of Trust on behalf of Freddie Mac.  *See, e.g.*, Ex. B (Guide at 8105.3, 9301.1, 9301.12, 9401.1).

10.     Accordingly, the Guide also provides for a temporary transfer of possession of the note when necessary for servicing, including foreclosure.  *See* Ex. B (Guide at 8107.1, 8107.2, 9301.11).  However, when in "physical or constructive possession of a Note," the Servicer must "follow prudent business practices" to ensure that the note is "identif[ied] as a Freddie Mac asset."  *Id.* at 8107.1(b).  Furthermore, when transferring documents in a mortgage file, including a note, the servicer must ensure the receiver acknowledges that the note is "Freddie Mac's property."  Ex. B (Guide at 3302.5).

11.     The Guide also includes chapters regarding how and when servicers should appear as parties to litigation involving Freddie Mac loans.  *See* Guide at 9402.2 ("Routine and non-routine litigation"), 9501 ("Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters.").  Included among the types of "non-routine" litigation in which servicers may appear as a party to represent loan interests of Freddie Mac is that concerning "[a]ny issue involving Freddie Mac's conservatorship."  Guide at 9402.2.

12.     The Guide provides that:

> All documents in the Mortgage file, . . . and all other documents and records related to the Mortgage of whatever kind or description . . . will be, and will remain at all times, the property of Freddie Mac.  All of these records and Mortgage data in the possession of the Servicer are retained by the Servicer in a custodial capacity only.

Ex. B (Guide at 1201.9).

13.     The Guide provides that a transferee servicer undertakes all responsibilities under the Guide.  *See* Ex. B (Guide at 7101.15(c)).

14.     Finally, the Guide provides that:

> When a Transfer of Servicing occurs, the Transferor Servicer may not . . . further endorse the Note, but must prepare and complete assignments . . . .
>
> To prepare and complete an assignment of a Security Instrument for a Subsequent Transfer of Servicing for a Mortgage not registered with

7

MERS, the Transferor Servicer must . . . [a]ssign the Security Instrument to the Transferee Servicer and record the assignment.

Ex. B (Guide at 7101.6).

## C.    Freddie Mac's Relationship with MERS

15.    While MERS was the beneficiary of record of the Deed of Trust, it did not own the Loan and acted solely as nominee for the lender and the lender's successors and assigns in the Deed of Trust, including Freddie Mac.  *See* Ex. B (Guide at 1301.8; 8101.12).  Thus, MERS had an interest in the Deed of Trust based on its contractual relationship with Freddie Mac and its appearance in that capacity as beneficiary of record of the Deed of Trust.

16.    This arrangement is reflected in the MERS System Rules of Membership:

> Mortgage Electronic Registration Systems, Inc. ("MERS") is . . . created for the purpose of serving as the Mortgagee of Record in the applicable public land records solely as Nominee for the Note Owner and the Note Owner's successors and assigns including the Note Holder.  MERS shall have no rights whatsoever to retain any payments made on account of a MERS Loan, to any servicing rights related to MERS Loans, or to retain any mortgaged properties securing MERS Loans.  MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to MERS Loans or mortgaged properties.

Ex. D (MERS System Rules of Membership, Introduction at ii, http://mersinc.org/join/1273-rom-09012015/file).  "Mortgagee of Record" is defined as "the party that takes, holds, or receives a pledge of an interest in or a lien against property as security" and includes a "named beneficiary or nominee of the lender under a deed of trust."  *Id.* at 69.

17.    The Rules also provide that:

> MERS shall act as the Nominee of the Note Owner and the Note Owner's successors and/or assigns . . . with respect to each MERS Loan that a Member registers on the MERS® System.  In the absence of contrary instructions from the Note Owner, . . . MERS may rely on instructions from the Servicer . . . shown on the MERS® System . . . with respect to transfers of legal title of the Note or mortgage, transfers of contractual servicing rights, and releases of any security interests applicable to such mortgage loan.  The Note Owner may give instructions that are contrary to those provided by the Servicer . . . that shall supersede all previous instructions by any other Member . . . .

1    *Id.* at Rule 2.5.

2    **D.    The HOA Foreclosure Sale and LN Management's Purported Acquisition of a Property Interest**

3

4    18.    The HOA recorded a Notice of Delinquent Assessment Lien concerning past-due

5    assessments, followed by a Notice of Default and Election to Sell, and a Notice of

     Foreclosure Sale against the Property.

6

7    19.    On October 23, 2012, the HOA foreclosed on its lien and sold the Property to LN

8    Management, which paid $18,000.00, according to the foreclosure deed recorded on

     November 7, 2012.  Ex. E.

9

10   20.    At no time prior to the HOA Sale did the Conservator consent to the HOA Sale

11   extinguishing or foreclosing Freddie Mac's interest in the Deed of Trust.  Ex. F (FHFA's

12   Statement on HOA Super-Priority Lien Foreclosures (Apr. 21, 2015),

13   www.fhfa.gov/Media/PublicAffairs/Pages/

14   Statement-on-HOA-Super-Priority-Lien-Foreclosures.aspx).

                            **REQUEST FOR JUDICIAL NOTICE**

15            Some of the preceding facts are supported by judicially noticeable facts that are either

16   "generally known" or that "can be accurately and readily determined from sources whose

17   accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  FHFA and Freddie Mac

18   respectfully request that the Court take judicial notice of two categories of documents and one

19   fact.

20            *First*, FHFA and Freddie Mac respectfully request the Court take judicial notice of the

21   publicly recorded instruments cited in the statement of undisputed facts.  Facts derived from the

22   publicly available records of the Clark County Recorder are judicially noticeable.  *See Disabled*

23   *Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 & n.1 (9th Cir. 2004) (court

24   may take judicial notice of the records of state agencies and other undisputed matters of public

25   record under Fed. R. Evid. 201); *Harlow v. MTC Fin. Inc.*, 865 F. Supp. 2d 1095, 1097 (D. Nev.

26   2012) ("When ruling on a motion for summary judgment, the Court may take judicial notice of

27   matters of public record, including recorded documents.").

28

                                         9

1       *Second*, the Court should take judicial notice of the FHFA Statement regarding its policy

2   not to consent to the extinguishment of the Enterprises' property interest.  FHFA's statement is

3   available on a federal government website that is not subject to reasonable dispute:

4   https://www.fhfa.gov/Media/PublicAffairs/Pages/Statement-on-HOA-Super-Priority-Lien-

5   Foreclosures.aspx.[2]  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010);

6   *Eagle SPE NV 1, Inc. v. S. Highlands Dev. Corp.*, 36 F. Supp. 3d 981, 985, 988 n.6 (D. Nev.

7   2014) (taking judicial notice of document on FDIC website).

8       *Finally*, FHFA and Freddie Mac respectfully request that the Court take judicial notice of

9   the fact that Freddie Mac was placed under FHFA's conservatorship in 2008 and has been in

10   conservatorship ever since.  This fact is subject to judicial notice under Federal Rule of Evidence

11   201(b) as it is a matter of common knowledge and readily determined from sources whose

12   accuracy cannot reasonably be questioned.  *See, e.g.*, FHFA, History of Fannie Mae & Freddie

13   Mac Conservatorships, http://www.fhfa.gov/Conservatorship.

14   **LEGAL STANDARD**

15       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

16   accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

17   U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads

18   factual content that allows the court to draw the reasonable inference that the defendant is liable

19   for the misconduct alleged."  *Id.*  In the context of such a motion, "all well-pleaded allegations of

20   material fact in the complaint are accepted as true and are construed in the light most favorable

21   to the non-moving party."  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144-45 (9th Cir.

22   2013) (citation omitted).

23       In evaluating a motion for summary judgment, courts must view all facts and draw all

24   inferences in the light most favorable to the nonmoving party.  *See Amerson v. Clark Cty.*, 995 F.

25   Supp. 2d 1155, 1159 (D. Nev. 2014) (citing *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*,

---

26

27       [2]    In the Statement, FHFA confirms that it "has not consented, and will not consent in the future, to the foreclosure or other extinguishment of any Fannie Mae or Freddie Mac lien or other property interest in connection with HOA foreclosures of super-priority liens."

28

1   793 F.2d 1100, 1103 (9th Cir. 1986)).  Summary judgment shall be granted if the moving party

2   demonstrates that the pleadings, depositions, answers to interrogatories, and admissions on file,

3   together with affidavits, if any, show that there is no genuine issue as to any material fact and the

4   moving party is entitled to judgment as a matter of law.  *See Zoslow v. MCA Distrib. Corp.*, 693

5   F.2d 870, 883 (9th Cir. 1982).

6   <u>**ARGUMENT**</u>

7   **I.     Plaintiffs' Claims Are Not Time-Barred**

8        LN Management relies exclusively on a state limitations statute, NRS 11.190(3)(a), to

9   support its motion.  MTD at 3.  But HERA provides the applicable period, mandating that:

> [T]he applicable statute of limitations with regard to *any action brought by*
> *[FHFA] as conservator or receiver* shall be—
>         (i) in the case of any contract claim, the longer of—
>                 (I) the 6-year period beginning on the date on which the claim
>                 accrues; or
>                 (II) the period applicable under State law; and
>         (ii) in the case of any tort claim, the longer of—
>                 (I) the 3-year period beginning on the date on which the claim
>                 accrues; or
>                 (II) the period applicable under State law.

16  12 U.S.C. § 4617(b)(12)(A) (emphasis added).  By its plain language, Section 4617(b)(12)(A)

17  governs "any action brought by [FHFA] as conservator," and the Conservator is an original

18  plaintiff here.

19       The participation of FHFA as a plaintiff thus fundamentally differentiates this case from

20  any of the cases on which LN Management's brief relies.  *See, e.g., Nationstar Mortg. LLC v.*

21  *Amber Hills II Homeowners Ass'n*, No. 2:15-CV-01433-APG-CWH, 2016 WL 1298108, at *5

22  (D. Nev. Mar. 31, 2016) (applying a five-year statute of limitations to Nationstar Mortgage's

23  quiet-title claim in a case in which FHFA did not participate).  Similarly, this case is unlike

24  Fannie Mae's quiet title claim against the HOA in *Fannie Mae v. Ayres* in which this Court

25  found that the four-year limitations period under NRS 11.220 applied.  *See* Order Granting

26  Motion to Dismiss, *Fannie Mae v. Ayres*, No. 2:17-cv-01799-JAD-CWH, slip op. at 4-7 (D. Nev.

27  June 4, 2018) (ECF No. 12).  Regardless of any position any of the Plaintiffs may have taken in

28

11

1     *Ayres* or may take with regard to the applicable statute of limitations in any case in which FHFA

2     is not a party, the federal statute is clear:  when FHFA files a lawsuit, Section 4617(b)(12)(A)

3     applies.

4          Under Section 4617(b)(12)(A), the applicable limitations period is six years.  The section

5     expressly enumerates two categories of claims—contract claims and tort claims.  But as the

6     section's prefatory clause confirms, "Congress intended to prescribe *comprehensive* time

7     limitations for '*any* action' that the Agency might bring as conservator." *See FHFA v. UBS*

8     *Americas Inc.*, 712 F.3d 136, 143, 144 (2d Cir. 2013) (emphases in original).  Accordingly,

9     courts must determine whether any claim brought by the Conservator is best classified as arising

10    in contract or in tort. *See In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 900 F. Supp.

11    2d 1055, 1067-68 (C.D. Cal. 2012).[3]

12         Courts have addressed the issue in the context of the analogous FIRREA provision that

13    applies to FDIC receiverships. *Compare* 12 U.S.C. § 1821(d)(14)(A) *to* 12 U.S.C. §

14    4617(b)(12)(A).  For example, in determining the relevant limitations period for a statutory

15    fraudulent transfer claim brought by the FDIC as receiver, a district court stated that, while the

16    claim "cannot easily be defined as a contract or a tort claim," the "plain language" of FIRREA's

17    limitations provision requires the court to classify the claim as sounding either in contract or in

18    tort. *FDIC v. Zibolis*, 856 F. Supp. 57, 61 (D.N.H. 1994).

19         While a quiet-title claim does not fit neatly into the "contract" or "tort" category, it has

20    more in common with a contract claim than with a tort claim.  Relationships formed in contract,

21    creating legal rights and interests in property, undergird actions for quiet title, even if the quiet-

22    title action does not require interpretation of these contracts. *See, e.g.*, *Smith v. FDIC*, 61 F.3d

23    1552, 1561 (11th Cir. 1995) (explaining that "a mortgage lien is an interest in property created

24    by contract").  Here, Plaintiffs' assertion of the Federal Foreclosure Bar as a basis for their quiet

25

---

26    [3]     FHFA and Freddie Mac are not aware of any federal or state case law that classifies a quiet-title claim as a subcategory of either tort or contract claims.  To the contrary, several courts

27    have expressly distinguished between these three categories of claims. *See Heyman v. Kline*, 344 F. Supp. 1081, 1086 (D. Conn. 1970).

28

1  title claim is grounded in the contractual relationships that Freddie Mac, as the owner of the

2  Loan, had or has both with MERS, as Freddie Mac's nominee and record beneficiary of the Deed

3  of Trust at the time of the HOA Sale, and with U.S. Bank, as Freddie Mac's servicer of the Loan

4  at the time of the HOA Sale and through today.  Those relationships are governed by the

5  contractual provisions of the Freddie Mac's Guide and the MERS Rules.

6       Moreover, the Ninth Circuit mandates that "when there is a substantial question which of

7  two conflicting statutes of limitations to apply, the court should apply the longer." *FDIC v.*

8  *Former Officers & Directors of Metro. Bank*, 884 F.2d 1304, 1307 (9th Cir. 1989) (quotation

9  omitted).  That appeal evaluated the very similar statute of limitations extender provided to the

10  FDIC in its capacity as a government agency, and the Ninth Circuit determined that there was a

11  substantial question in characterizing the FDIC's breach of fiduciary duty claims against a failed

12  bank's former officers as either tort or contract.  *Id.*  Accordingly, it applied the rule that the

13  longer six-year period concerning contract claims should apply.  *Id.*

14       Therefore, assuming the HOA Sale in October 2012 is the date of accrual, as LN

15  Management contends, MTD at 3, Plaintiffs' December 2017 complaint is timely.  Even if the

16  Court believes that there is a substantial question concerning which of HERA's two limitations

17  periods should apply, it should follow the Ninth Circuit's lead in applying the longer six-year

18  period and find Plaintiffs' claims were filed timely.

**II.  The Federal Foreclosure Bar Prevented the HOA Sale From Extinguishing Freddie Mac's Property Interest**

20       In four decisions, the Ninth Circuit has confirmed that the Federal Foreclosure Bar

21  preempts the State Foreclosure Statute and that an Enterprise maintains its property interest when

22  its servicers or MERS appears as beneficiary of record on the relevant deed of trust.  *See*

23  *Berezovsky*, 869 F.3d 923; *FHFA v. SFR*, 893 F.3d 1136; *Elmer*, 707 F. App'x 426; *Flagstar*,

24  699 F. App'x 658.

25       The Ninth Circuit evaluated materially similar evidence as that in the record here—

26  business records and a declaration from a Freddie Mac or Fannie Mae employee—and held that

27  this evidence was sufficient to conclude that the Enterprise had a protected property interest to

28

1   grant summary judgment. *See, e.g.*, *Berezovsky*, 869 F.3d at 930-31; *Elmer*, 707 F. App'x at

2   428.

3          This Court should follow the Ninth Circuit's precedent and the many other similar

4   decisions from other courts in this District,[4] to grant FHFA and Freddie Mac summary judgment

5   here.

6          **A.     The Federal Foreclosure Bar Preempts Contrary State Law**

7          The Ninth Circuit held that the Federal Foreclosure Bar preempts the State Foreclosure

8   Statute because "Nevada's law is an obstacle to Congress's clear and manifest goal of protecting

9   [FHFA's] assets in the face of multiple potential threats." *Berezovsky*, 869 F.3d at 931.  The

10  Nevada Supreme Court has agreed, citing *Berezovsky*. *Saticoy Bay LLC Series 9641 Christine*

---

[4]        *See, e.g.*, *Skylights v. Byron*, 112 F. Supp. 3d 1145, 1153 (D. Nev. 2015); *Premier One Holdings, Inc. v. Fannie Mae*, No. 2:14-cv-02128-GMN-NJK, 2015 WL 4276169 (D. Nev. July 14, 2015); *Williston Inv. Grp., LLC v. JP Morgan Chase Bank, NA*, No. 2:14-cv-02038-GMN-PAL, 2015 WL 4276144 (D. Nev. July 14, 2015); *My Glob. Vill., LLC v. Fannie Mae*, No. 2:15-cv-00211-RCJ-NJK, 2015 WL 4523501 (D. Nev. July 27, 2015); *1597 Ashfield Valley Trust v. Fannie Mae*, No. 2:14-cv-02123-JCM, 2015 WL 4581220 (D. Nev. July 28, 2015); *Fannie Mae v. SFR Invs. Pool 1, LLC*, No. 2:14-CV-2046-JAD-PAL, 2015 WL 5723647 (D. Nev. Sept. 29, 2015); *Saticoy Bay, LLC Series 1702 Empire Mine v. Fannie Mae*, No. 2:14-CV-01975-KJD-NJK, 2015 WL 5709484 (D. Nev. Sept. 29, 2015); *FHFA v. SFR Investments Pool 1, LLC*, No. 2:15-cv-1338-GMN-CWH, 2016 WL 2350121 (D. Nev. May 2, 2016); *G & P Inv. Enters., LLC v. Wells Fargo Bank*, N.A., No. 2:15-cv-0907-JCM-NJK, 2016 WL 4370055 (D. Nev. Aug. 4, 2016); *Saticoy Bay LLC, Series 2714 Snapdragon v. Flagstar Bank, FSB*, No. 2-13-CV-1589-JCM-VCF, 2016 WL 1064463 (D. Nev. Mar. 17, 2016); *Koronik v. Nationstar Mortg. LLC*, No. 2:13-CV-2060-GMN-GWF, 2016 WL 7493961 (D. Nev. Dec. 30, 2016); *Nevada Sand Castles, LLC v. Green Tree Servicing LLC*, No. 2:15-CV-0588-GMN-VCF, 2017 WL 701361 (D. Nev. Feb. 22, 2017); *Alessi & Koenig, LLC v. Dolan, Jr.*, No. 2:15-cv-00805-JCM-CWH, 2017 WL 773872 (D. Nev. Feb. 27, 2017); *FHFA v. Nevada New Builds, LLC*, No. 2:16-cv-1188-GMN-CWH, 2017 WL 888480 (D. Nev. Mar. 6, 2017); *LN Mgmt. LLC v. Pfeiffer*, No. 2:13-cv-1934-JCM-PAL, 2017 WL 955184 (D. Nev. Mar. 9, 2017); *Vita Bella Homeowners Ass'n v. Fannie Mae*, No. 2:15-cv-00515-JCM-VCF, 2017 WL 6055667 (D. Nev. Mar. 9, 2017); *JP Morgan Chase Bank, N.A. v. Las Vegas Dev't Grp., LLC*, No. 2:15-cv-1701-JCM-VCF, 2017 WL 937722 (D. Nev. Mar. 9, 2017); *Freddie Mac v. Donel*, No. 2:16-cv-176, 2017 WL 2692403 (D. Nev. June 21, 2017); *Cohen v. Bank of America, N.A.*, No. 2:15-cv-01393-GMN-GWF, 2017 WL 4185464 (D. Nev. Sept. 21, 2017); *Fannie Mae v. Canyon Willow Owners Ass'n*, No. 2:16-cv-00203-JCM-CWH, 2018 WL 297575 (D. Nev. Jan. 4, 2018); *Springland Vill. Homeowners Ass'n v. Pearman*, No. 3:16-cv-00423-MMD-WGC, 2018 WL 357853 (D. Nev. Jan. 10, 2018); *Freddie Mac v. T-Shack, Inc.*, No. 2:16-cv-02664-JCM-PAL, 2018 WL 456878 (D. Nev. Jan. 17, 2018); *MRT Assets LLC v. Nationstar Mortg., LLC*, No. 2:17-cv-0070-JCM-CWH, 2018 WL 1245501 (D. Nev. Mar. 9, 2018); *Nationstar Mortg., LLC v. Tow Props. LLC II*, No. 2:17-cv-01770-APG-VCF, 2018 WL 2014064 (D. Nev. Apr. 27, 2018); *JPMorgan Chase Bank, N.A. v. GDS Fin. Servs*, No. 2-17-cv-2451-APG, 2018 WL 2023123 (D. Nev. May 1, 2018); *Ditech Fin. LLC v. Paradise Springs One Homeowners Assoc.*, No. 2:16-cv-2900-APG, 2018 WL 3429676 (D. Nev. July 16, 2018).

14

*View v. Fannie Mae*, 417 P.3d 363 (Nev. 2018).  It is thus beyond dispute that the Federal Foreclosure Bar preempts the State Foreclosure Statute to protect Enterprise property interests from extinguishment in an HOA foreclosure sales.

### B.   The Federal Foreclosure Bar Protected Freddie Mac's Property Interest

To successfully invoke the Federal Foreclosure Bar's protection, FHFA and Freddie Mac need to establish two things:  First, that Freddie Mac owned the Loan at the time of the HOA Sale, and second, that ownership of the Loan was a property interest covered by the Federal Foreclosure Bar's protection.  FHFA and Freddie Mac satisfy both here.

#### 1.   Freddie Mac Had a Property Interest at the Time of the HOA Sale

##### (a)   Undisputed Evidence Established Freddie Mac's Ownership of the Loan

*Berezovsky* and *Elmer* confirm that Freddie Mac's property interest may be established by Freddie Mac's business records and a declaration from a Freddie Mac employee explaining that the records show when Freddie Mac owned the Loan.  *Berezovsky*, 869 F.3d at 933; *Elmer*, 707 F. App'x at 428.  Here, FHFA and Freddie Mac have submitted materially identical evidence to that found sufficient for summary judgment in those Ninth Circuit decisions.

First, Freddie Mac's business records, along with the declaration of a Freddie Mac employee describing those records, evidence the fact that Freddie Mac acquired the Loan in March 2011 and owned the Loan at the time of the HOA Sale in October 2012.  *See* Meyer Decl. ¶ 5(b),(i).  Freddie Mac maintains its business records in its MIDAS system, which Freddie Mac uses in the course of its everyday business to manage and record information about the millions of mortgage loans it owns.  *Id*. at ¶¶ 2-4.  These records show that that Freddie Mac acquired the Loan in March 2011.  *Id*. at ¶ 5(b).  The loan activity history, among other elements in these records, shows that the servicer continued to report monthly to Freddie Mac about the Loan in October 2012, that no event ending Freddie Mac's ownership of the Loan had occurred prior to that date, and that Freddie Mac continues to own the Loan today.  *Id*. at ¶ 5(f).

Second, Freddie Mac's business records show that U.S. Bank was the servicer of the Loan for Freddie Mac at the time of the HOA Sale.  Dean Meyer's declaration explains how the

business records identify the servicer for the Loan and how one can determine that U.S. Bank was the servicer at the time of the HOA Sale in October 2012. *Id.* at ¶ 5(e).

Under the Federal Rules of Evidence, business records are, by their nature, admissible to prove the truth of their contents when introduced by a qualified witness, as they are here. *See Malek v. Fed. Ins. Co.*, 994 F.2d 49, 53 (2d Cir. 1993); Fed. R. Evid. 803 (advisory committee's note to 1972 proposed rules) (noting that business records have "unusual reliability" and include electronic database records). The Ninth Circuit's decisions in *Berezovsky* and *Elmer* held that the business records of Freddie Mac are admissible evidence of Freddie Mac's ownership of a loan. *Berezovsky*, 869 F.3d at 932 & n.8 (holding that Freddie Mac "database printouts" were sufficient to support a "valid and enforceable" property interest under Nevada law); *Elmer*, 707 F. App'x at 428 (finding that a declaration from a Freddie Mac employee and records from Freddie Mac's database were "reliable and uncontroverted evidence of its interest in the property on the date of the foreclosure"). The same analysis applies to the evidence here. The Freddie Mac business records here are materially identical to the business records evidence the Ninth Circuit found to be admissible and sufficient to prove Freddie Mac's property interest. *Berezovsky*, 869 F.3d at 933; *Elmer*, 707 F. App'x at 428.

Finally, the evidence also includes the Selling and Servicing Guides that govern Freddie Mac's relationship with its authorized sellers and servicers nationwide. The applicable portions of the Guide show that (i) the Guide is the central part of the contractual relationship between U.S. Bank and Freddie Mac; (ii) U.S. Bank is authorized to foreclose on the Loan on behalf of Freddie Mac, pursuant to the guidelines laid out by Freddie Mac; (iii) Freddie Mac has the right to demand that U.S. Bank record an assignment of the Deed of Trust to Freddie Mac; and (iv) that regardless of who physically possesses the note and Deed of Trust, those instruments are owned by Freddie Mac. Ex. B, Exs. 5, 6. These provisions confirm Freddie Mac's ownership of the Loan while a servicer like U.S. Bank handles certain aspects of the Loan's management on Freddie Mac's behalf.

       **(b)**       **Freddie Mac Owned the Note and Deed of Trust Under Nevada Law**

16

1        In four decisions, the Ninth Circuit relied on Nevada law to confirm that an Enterprise

2   maintains a property interest when its servicer or MERS appears as record beneficiary of a deed

3   of trust.  *See Berezovsky*, 869 F.3d at 932; *FHFA v. SFR Invs. Pool 1, LLC*, 893 F.3d at 1150;

4   *Elmer*, 707 F. App'x at 428; *Saticoy Bay, LLC, Series 2714 Snapdragon v. Flagstar Bank, FSB*,

5   699 F. App'x 658, 658-59 (9th Cir. 2017).  Nevada law incorporates the Restatement, which

6   describes the typical arrangement between investors in mortgages, such as Freddie Mac, and

7   their contractually authorized representatives (often their servicers or, as here, MERS).  *See*

8   Restatement § 5.4 cmt. c.  The Restatement recognizes that the assignment of a deed of trust to a

9   contractually authorized representative or nominee does not alter the fact that the purchaser of

10  the loan remains the owner of the note and deed of trust.  *Id.*  Thus, the Restatement approach

11  recognizes and conforms to the realities of the mortgage industry:  The Enterprises can support

12  the national secondary mortgage market more efficiently if they can contract with others to

13  manage loans and use MERS as the recorded beneficiary on property records without

14  relinquishing ownership of deeds of trust.

15       Indeed, in a case in which MERS acted as recorded beneficiary in a nominee capacity for

16  the lender, the Nevada Supreme Court adopted the Restatement approach to evaluate the transfer

17  and ownership of the mortgage at issue and applied it to very similar facts as here.  *Montierth*,

18  354 P.3d at 650-51.  In *Montierth*, the Nevada Supreme Court clarified that Nevada follows the

19  entirety of the Restatement approach, including certain exceptions that the court had not

20  discussed in its prior decision on similar issues, *Edelstein v. Bank of New York Mellon*, 286 P.3d

21  249, 257-58 (Nev. 2012) (citing Restatement § 5.4(a)).  Specifically, *Montierth* held that a

22  foreclosure on a mortgage could proceed when the noteholder was *not* the beneficiary named in

23  the recorded deed of trust, so long as the named beneficiary—there, MERS—had authority to

24  foreclose on the noteholder's behalf.  *Montierth*, 354 P.3d at 650-51.  *Montierth* stated

25  unequivocally that in those circumstances, a note owner remains "a secured creditor" under

26  Nevada law, meaning that it retains a property interest in the collateral.  *Id.* (citing Restatement §

27  5.4 cmts. c, e).

28

1    Therefore, *Montierth* establishes that where, as here, MERS is the recorded beneficiary of

2    the deed of trust, the loan owner for which MERS is nominee maintains a property interest in the

3    collateral.  *See id.*  In such a circumstance, the purchaser of the loan, like Freddie Mac here, is a

4    secured lender with a "fully-secured, first priority deed" that can be enforced.  *Id.*

5    Since *Montierth*, the Ninth Circuit, Nevada Supreme Court, and federal trial courts across

6    this District have recognized that when the entity appearing as record beneficiary of a deed of

7    trust is MERS or a servicer in a contractual relationship with the loan owner, the loan owner

8    retains a secured property interest under Nevada law.  *See, e.g.*, *Elmer*, 707 F. App'x at 428;

9    *Berezovsky*, 869 F.3d at 932; *Flagstar*, 699 F. App'x at 659; *FHFA v. SFR Invs. Pool 1, LLC*,

10   *FHFA v. SFR*, 893 F.3d at 1152(granting FHFA, Fannie Mae, and Freddie Mac summary

11   judgment regarding five properties); *Nationstar Mortg., LLC v. Guberland LLC-Series 3*, No.

12   70546, 2018 WL 3025919 (Nev. June 15, 2018) (unpublished disposition). The Ninth Circuit

13   rejected any argument that, under Nevada law, a loan owner's property interest depends on its

14   name appearing in the public property records:  "[a]lthough the recorded deed of trust here

15   omitted Freddie Mac's name, Freddie Mac's property interest is valid and enforceable under

16   Nevada law" because Freddie Mac owned the note and its servicer was beneficiary of record of

17   the deed of trust.  *Berezovsky*, 869 F.3d at 932.  This Court should do the same here.

### 2.    The Federal Foreclosure Bar's Protection Extends to Freddie Mac While in Conservatorship

18

19

20   The Federal Foreclosure Bar necessarily protects the Deed of Trust because the

21   Conservator has succeeded by law to all of Freddie Mac's "rights, titles, powers, and privileges."

22   12 U.S.C. § 4617(b)(2)(A)(i).  Accordingly, "[Freddie Mac]'s property interest effectively

23   becomes the FHFA's while the conservatorship exists." *Christine View*, 417 P.3d at 367 (citing

24   12 U.S.C. § 4617(b)(2)(A)(i)).  Indeed, courts across this District have uniformly rejected any

25   argument that the immunities provided by Section 4617(j) do not apply to the property of Fannie

26   Mae or Freddie Mac while in FHFA's conservatorship. *See, e.g.*, *Skylights*, 112 F. Supp. 3d at

27   1155; *Nevada v. Countrywide Home Loans Servicing, LP,* 812 F. Supp. 2d 1211, 1218 (D. Nev.

28   2011) ("[W]hile under the conservatorship with the FHFA, Fannie Mae is statutorily exempt

1   from taxes, penalties, and fines to the same extent that the FHFA is.").

2       **C.      FHFA Did Not Consent to the Extinguishment of the Deed of Trust Prior to
                  the HOA Sale**
3

4           While it is not FHFA and Freddie Mac's burden to establish this fact, it is undisputed that

5   FHFA did not consent to the extinguishment of Freddie Mac's property interest in this case prior

6   to the HOA Sale.  The Federal Foreclosure Bar precluded LN Management from acquiring free-

7   and-clear title unless LN Management obtained FHFA's consent to the extinguishment of

8   Freddie Mac's interest.  The Federal Foreclosure Bar "cloaks [FHFA] property with

9   Congressional protection unless or until the Agency *affirmatively* relinquishes it."  *Berezovsky*,

10  869 F.3d at 929 (emphasis added); *see also Christine View*, 2018 WL 2293648, at *3 (citing

11  *Berezovsky*).

12          LN Management cannot show that it ever requested, let alone received, such consent.  To

13  the contrary, the Conservator has clearly state that it "has not consented, and will not consent in

14  the future, to the foreclosure or other extinguishment of any Fannie Mae or Freddie Mac lien or

15  other property interest in connection with HOA foreclosures of super-priority liens."  *See* Ex. F.

16  Thus, "it is clear that FHFA did not consent to the extinguishment of [the Enterprise's] property

17  interest through the HOA's foreclosure sale."  *Alessi & Koenig*, No. 2:15–cv–00805–JCM–

18  CWH, 2017 WL 773872, at *3 (D. Nev. Feb. 27, 2017) (citing and relying on cases in which

19  FHFA's statement was sufficient to show FHFA's lack of consent).

20                                    <u>**CONCLUSION**</u>

21          Because Plaintiffs filed their claims within the six-year statute of limitations provided

22  under 12 U.S.C. § 4617(b)(12)(A), FHFA and Freddie Mac respectfully request that the Court

23  deny LN Management's Motion to Dismiss.

24          FHFA and Freddie Mac further request that the Court grant judgment in their favor on their

25  quiet title and declaratory relief claims, and declare that:

26      • 12 U.S.C. § 4617(j)(3) preempts any Nevada law that otherwise would permit a

27          foreclosure of an HOA lien to extinguish Freddie Mac's property interest while it is under

28          FHFA's conservatorship;

                                              19

- the HOA Sale did not extinguish Freddie Mac's interest in the Property and thus LN Management does not have an interest in the Property free and clear of the Deed of Trust; and

- Freddie Mac's request for quiet title is granted insofar as any interest of LN Management in the Property is subject to Freddie Mac's Deed of Trust.

DATED:  August 10, 2018.

**FENNEMORE CRAIG, P.C.**

By: ___/s/ Leslie Bryan Hart_____
    Leslie Bryan Hart, Esq. (SBN 4932)
    John D. Tennert, Esq. (SBN 11728)
    300 E. Second St., Suite 1510
    Reno, Nevada 89501
    Tel: 775-788-2228
    lhart@fclaw.com; jtennert@fclaw.com

       and

**ARNOLD & PORTER KAYE**
**   SCHOLER LLP**
(Admitted *Pro Hac Vice*)
    Asim Varma, Esq.
    Howard N. Cayne, Esq.
    Michael A.F. Johnson, Esq.
*Attorneys for Plaintiffs Federal Housing Financing Agency and Federal Home Loan Mortgage Corporation*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b) and Electronic Filing Procedure IV(B), I certify that on August 10, 2018, a true and correct copy of the **FEDERAL HOUSING FINANCE AGENCY AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S OPPOSITION TO MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT,** was transmitted electronically through the Court's e-filing electronic notice system to the attorney(s) associated with this case.  If electronic notice is not indicated through the court's e-filing system, then a true and correct paper copy of the foregoing document was delivered via U.S. Mail.

Kerry P. Faughnan, Esq. Kerry.faughnan@gmail.com

Gregory L Wilde     efilenv@tblaw.com

Sean L. Anderson     sanderson@leachjohnson.com

Ryan Warren Reed     rreed@leachjohnson.com

/s/ Pamela Carmon
An Employee of Fennemore Craig, P.C.

**EXHIBIT INDEX**

| DESCRIPTION | EXHIBIT |
|---|---|
| Deed of Trust | A |
| Declaration of Dean Meyer | B |
| Assignment of Deed of Trust | C |
| MERS Rules | D |
| Foreclosure Deed | E |
| FHFA Statement on HOA Super Priority Lien Foreclosures | F |
|  |  |

14158606