# Exhibit B

Declaration Dean Meyer

# Exhibit B

1   Leslie Bryan Hart, Esq. (SBN 4932)
John D. Tennert, Esq. (SBN 11728)
2   FENNEMORE CRAIG, P.C.
300 E. Second St., Suite 1510
3   Reno, Nevada 89501
Tel: 775-788-2228
4   lhart@fclaw.com; jtennert@fclaw.com

5   (Admitted *Pro Hac Vice*)
Asim Varma, Esq.
6   Howard N. Cayne, Esq.
Michael A.F. Johnson, Esq.
7   ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
8   Washington, DC 20001-3743
Tel: (202) 942-5000
9   Asim.Varma@apks.com;
Howard.Cayne@apks.com;
10   Michael.Johnson@apks.com

11   *Attorneys for Plaintiffs Federal Housing Finance*
*Agency and Federal Home Loan Mortgage*
12   *Corporation*

13

14

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

15   FEDERAL HOUSING FINANCE AGENCY, | CASE NO.   2:17-cv-03006-JAD-CWF
as conservator of Federal Home Loan
16   Mortgage Corporation; FEDERAL HOME
LOAN MORTGAGE  CORPORATION; and
17   U.S. BANK NATIONAL ASSOCIATION,     | **DECLARATION OF FEDERAL HOME**
**LOAN MORTGAGE CORPORATION IN**
18            Plaintiffs, | **SUPPORT OF PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT**
19      vs.

20   LN MANAGEMENT LLC, SERIES 2937
BARBOURSVILLE; FAIRBROOK
21   COMMUNITY ASSOCIATION; and
NEVADA ASSOCIATION SERVICES, INC.,
22

23           Defendants.

24

25

26

27

28

001

I, Dean Meyer, under penalty of perjury, declare as follows:

1.      My name is Dean Meyer.  I have personal knowledge of and am competent to testify as to the matters stated herein by virtue of my position as Director, Loss Mitigation for Federal Home Loan Mortgage Corporation ("Freddie Mac"), a corporation organized and existing under the laws of the United States.

2.      As Director, Loss Mitigation for Freddie Mac, I am familiar with certain Freddie Mac systems and databases that contain data regarding loans acquired and owned by Freddie Mac.  The systems and databases include Freddie Mac's Loan Status Manager and MIDAS system, which includes and stores information concerning Freddie Mac's servicers and the purchase of loans.  I also am familiar with Freddie Mac's Single-Family Seller/Servicer Guide (the "Guide").  This declaration is based upon my review of Freddie Mac's systems, databases containing loan information and data, and the Guide.

3.      Entries in Freddie Mac's systems and corresponding databases are made at or near the time of the events recorded by, or from information transmitted by, persons with knowledge.  Freddie Mac's systems and databases are maintained and kept in the course of Freddie Mac's regularly conducted business activity, and it is the regular practice of Freddie Mac to keep and maintain information regarding loans owned by Freddie Mac in Freddie Mac's databases.  Freddie Mac's systems and databases consist of records that were made and kept by Freddie Mac in the course of its regularly conducted activities pursuant to its regular business practice of creating such records.  These systems and databases are Freddie Mac's business records.

4.      I have reviewed the Federal Housing Finance Agency ("FHFA"), Freddie Mac, and U.S. Bank, National Association's (U.S. Bank) (collectively "Plaintiffs")  Motion for Summary Judgment and accompanying exhibits filed simultaneously herewith (collectively, the "Documents").  I have also reviewed Freddie Mac's systems and corresponding databases, including the documents referenced below, which are print-outs from Freddie Mac systems reflecting the contents of those databases, as well as portions of the Guide.

5.      Freddie Mac's systems, corresponding databases, and the Documents reflect the following:

FENNEMORE CRAIG
ATTORNEYS
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
775-788-2200

2

002

a.     On or about December 27, 2010, Jia Zhou ("Borrower") obtained a loan from Linear Financial, LP d/b/a Pardee Home Loans ("Lender") in the amount of $296,820. As part of the loan, the Borrower executed a note in favor of Lender (the "Note") dated December 27, 2010. The Note is secured by real property located at 2937 Barboursville Court, Henderson, Nevada 89052 (the "Property").

b.     Borrower executed a deed of trust (the "Deed of Trust" and collectively with the Note and any other documents executed by Borrower in connection with the loan, the "Loan") on or about December 29, 2010 in connection with the Loan, which was recorded on or about December 29, 2010.

c.     On September 7, 2011, an Assignment of the Deed of Trust was recorded whereby the Deed of Trust was assigned to Mortgage Electronic Registration Systems, Inc. ("MERS").

a.     On August 28, 2013, an Assignment of the Deed of Trust was recorded, whereby the Deed of Trust was assigned to U.S. Bank.

b.     As indicated by the "Funding Date" appearing midway down on the second column of Page 1 of 2 of the print-out from Freddie Mac's MIDAS system pertaining to Freddie Mac's purchase of the Loan, Freddie Mac acquired ownership of the Loan on or about March 10, 2011 and has owned it ever since. A true and correct copy of the print-out from Freddie Mac's MIDAS system pertaining to Freddie Mac's purchase of the Loan is attached hereto as **Exhibit 1**. The Guide defines "Funding Date" as the date when Freddie Mac disburses payment to the seller for a Loan Freddie Mac purchased.

c.     As indicated by the "Seller Nbr 114427" appearing near the top of the first column of Page 1 of 2 of the print-out from Freddie Mac's MIDAS system attached hereto as **Exhibit 1**, which identifies the entity that sold Freddie

FENNEMORE CRAIG
ATTORNEYS
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
775-788-2200

3

003

Mac the loan by "Seller Number," U.S. Bank sold the Loan to Freddie Mac. A true and correct copy of the print-out from Freddie Mac's MIDAS system identifying U.S. Bank by Seller Number 114427 is attached hereto as **Exhibit 2**.

d.   The "Part. Pct." or "Participation Percentage" appearing above the Funding Date on Page 1 of 2 of the print-out from Freddie Mac's MIDAS system attached hereto as **Exhibit 1**, reflects "1.0," which means that Freddie Mac owns 100% of the Loan. If the Participation Percentage was anything less than 100%, then a number less than 1.0 would appear on the print-out from Freddie Mac's MIDAS system.

e.   U.S. Bank was servicing the Loan, pursuant to the Guide, on behalf of Freddie Mac on October 23, 2012. U.S. Bank began servicing the Loan, pursuant to the Guide, on behalf of Freddie Mac on or about March 10, 2011 and has serviced the Loan ever since. Freddie Mac's systems and databases do not reflect any change in the servicer of the Loan from the time Freddie Mac purchased the Loan on or about March 10, 2011 through the present day. If there had been a change in servicer, the change would have been entered into and would be reflected in Freddie Mac's Loan Status Manager. Consistent with the fact that no change in servicer has occurred, no such information appears in Loan Status Manager, which evidences the fact that the Loan was continuously serviced by U.S. Bank since on or about March 10, 2011 through the present. Additionally, as indicated by the "Servicer Nbr 114427" appearing near the top of the first column of Page 1 of 2 of the print-out from Freddie Mac's MIDAS system attached hereto as **Exhibit 3**, which identifies the current servicer by

FENNEMORE CRAIG
ATTORNEYS
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
775-788-2200

4

004

"Servicer Number," U.S. Bank is currently servicing the Loan, pursuant to the Guide, on behalf of Freddie Mac. A true and correct copy of the print-out from Freddie Mac's MIDAS system identifying U.S. Bank by Servicer Number 114427 is attached hereto as **Exhibit 3**.

f.  A true and correct copy of the print-out from Freddie Mac's Loan Status Manager is attached hereto as **Exhibit 4**, which reflects the mortgage payment history (the "Mortgage Payment History") for the Loan. The "Date Reported" in the second column of **Exhibit 4** indicates the date that Freddie Mac's servicer reported information on the Loan to Freddie Mac. The Mortgage Payment History reflects that the servicer provided Freddie Mac with reports on the Loan, pursuant to the Guide which requires servicers to report regularly to Freddie Mac on Freddie Mac-owned loans, on a monthly basis from March 2011 through June 2018, consistent with when the report was generated. The servicer would not send regular monthly reports on the Loan to Freddie Mac if Freddie Mac did not own the Loan.

g.  The Guide, a publicly accessible document found at www.freddiemac.com/singlefamily/guide, serves as a central document governing the contractual relationship between Freddie Mac and its servicers nationwide. Archived prior versions of the Guide are available at www.freddiemac.com/singlefamily/guide/bulletins/snapshot.html. Attached hereto as **Exhibit 5** are copies of relevant sections of the Guide that were in effect on October 23, 2012. Copies of the current version of each of the relevant sections of the Guide are attached hereto as **Exhibit 6**.

h.  At the time Freddie Mac acquired the Loan and at all times thereafter, the Guide was in effect and governed the relationship between Freddie Mac, on the one hand, and U.S. Bank on the other, with respect to the Loan.

FENNEMORE CRAIG
ATTORNEYS
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
775-788-2200

5

005

i.    Since it acquired the Loan on or about March 10, 2011 Freddie Mac has not sold the Loan and has never authorized MERS or U.S. Bank to convey the Loan to any other entity.

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

Executed on August _10_ 2018.

_____

Dean Meyer
Director, Loss Mitigation
Federal Home Loan Mortgage Corporation

FENNEMORE CRAIG
ATTORNEYS
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
775-788-2200

6

# Exhibit 1



# **Exhibit 2**



# **Exhibit 3**



# **Exhibit 4**

**Loan Status*Manager***
**Mortgage Payment History Report**
Report generated on Friday, July 6, 2018 at 2:53 pm.

SQL returned **89** rows

Fhlmc Loan Number: ████0469

| Accounting Cycle | Date Reported | Date DDLPI Reported | Last Payment Received | Monthly P&I Due Date | Monthly P&I | Principal Due | Interest Due | Ending UPB | Int Bearing UPB | Non-Int Bearing UPB | Non-Int Bearing Principal Curtailment | Borrower Incentive | Negam Balance | Prepay Penalty | Proceeds | ANY Rate | Note Rate | Code Exception | Date Exception |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/15/2018 | 06/20/2018 | 11/01/2012 | 10/30/2012 | 06/20/2018 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 05/15/2018 | 05/21/2018 | 11/01/2012 | 10/30/2012 | 05/18/2018 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 04/15/2018 | 04/18/2018 | 11/01/2012 | 10/30/2012 | 04/18/2018 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 03/15/2018 | 03/19/2018 | 11/01/2012 | 10/30/2012 | 03/20/2018 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 02/15/2018 | 02/20/2018 | 11/01/2012 | 10/30/2012 | 02/21/2018 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 01/15/2018 | 01/17/2018 | 11/01/2012 | 10/30/2012 | 01/18/2018 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 12/15/2017 | 12/19/2017 | 11/01/2012 | 10/30/2012 | 12/20/2017 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 11/15/2017 | 11/17/2017 | 11/01/2012 | 10/30/2012 | 11/20/2017 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 10/15/2017 | 10/17/2017 | 11/01/2012 | 10/30/2012 | 10/18/2017 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 09/15/2017 | 09/19/2017 | 11/01/2012 | 10/30/2012 | 09/20/2017 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 08/15/2017 | 08/17/2017 | 11/01/2012 | 10/30/2012 | 08/18/2017 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 07/15/2017 | 07/18/2017 | 11/01/2012 | 10/30/2012 | 07/19/2017 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 06/15/2017 | 06/19/2017 | 11/01/2012 | 10/30/2012 | 06/20/2017 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 05/15/2017 | 05/18/2017 | 11/01/2012 | 10/30/2012 | 05/18/2017 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 04/15/2017 | 04/18/2017 | 11/01/2012 | 10/30/2012 | 04/19/2017 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 03/15/2017 | 03/17/2017 | 11/01/2012 | 10/30/2012 | 03/20/2017 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 02/15/2017 | 02/17/2017 | 11/01/2012 | 10/30/2012 | 02/21/2017 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 01/15/2017 | 01/18/2017 | 11/01/2012 | 10/30/2012 | 01/19/2017 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 12/15/2016 | 12/19/2016 | 11/01/2012 | 10/30/2012 | 12/20/2016 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 11/15/2016 | 11/18/2016 | 11/01/2012 | 10/30/2012 | 11/18/2016 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 10/15/2016 | 10/18/2016 | 11/01/2012 | 10/30/2012 | 10/19/2016 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 09/15/2016 | 09/19/2016 | 11/01/2012 | 10/30/2012 | 09/20/2016 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 08/15/2016 | 08/18/2016 | 11/01/2012 | 10/30/2012 | 08/18/2016 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 07/15/2016 | 07/20/2016 | 11/01/2012 | 10/30/2012 | 07/20/2016 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 06/15/2016 | 06/20/2016 | 11/01/2012 | 10/30/2012 | 06/20/2016 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |
| 05/15/2016 | 05/18/2016 | 11/01/2012 | 10/30/2012 | 05/18/2016 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% | | |

014

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/15/2016 | 04/20/2016 | 11/01/2012 | 10/30/2012 | 04/20/2016 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 03/15/2016 | 03/17/2016 | 11/01/2012 | 10/30/2012 | 03/18/2016 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 02/15/2016 | 02/17/2016 | 11/01/2012 | 10/30/2012 | 02/18/2016 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 01/15/2016 | 01/20/2016 | 11/01/2012 | 10/30/2012 | 01/21/2016 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 12/15/2015 | 12/17/2015 | 11/01/2012 | 10/30/2012 | 12/18/2015 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 11/15/2015 | 11/18/2015 | 11/01/2012 | 10/30/2012 | 11/18/2015 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 10/15/2015 | 10/20/2015 | 11/01/2012 | 10/30/2012 | 10/20/2015 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 09/15/2015 | 09/18/2015 | 11/01/2012 | 10/30/2012 | 09/18/2015 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 08/15/2015 | 08/19/2015 | 11/01/2012 | 10/30/2012 | 08/19/2015 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 07/15/2015 | 07/20/2015 | 11/01/2012 | 10/30/2012 | 07/20/2015 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 06/15/2015 | 06/18/2015 | 11/01/2012 | 10/30/2012 | 06/18/2015 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 05/15/2015 | 05/20/2015 | 11/01/2012 | 10/30/2012 | 05/20/2015 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 04/15/2015 | 04/20/2015 | 11/01/2012 | 10/30/2012 | 04/20/2015 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 03/15/2015 | 03/18/2015 | 11/01/2012 | 10/30/2012 | 03/18/2015 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 02/15/2015 | 02/19/2015 | 11/01/2012 | 10/30/2012 | 02/19/2015 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 01/15/2015 | 01/21/2015 | 11/01/2012 | 10/30/2012 | 01/21/2015 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 12/15/2014 | 12/18/2014 | 11/01/2012 | 10/30/2012 | 12/18/2014 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 11/15/2014 | 11/19/2014 | 11/01/2012 | 10/30/2012 | 11/19/2014 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 10/15/2014 | 10/20/2014 | 11/01/2012 | 10/30/2012 | 10/20/2014 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 09/15/2014 | 09/17/2014 | 11/01/2012 | 10/30/2012 | 09/18/2014 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 08/15/2014 | 08/20/2014 | 11/01/2012 | 10/30/2012 | 08/20/2014 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 07/15/2014 | 07/18/2014 | 11/01/2012 | 10/30/2012 | 07/18/2014 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 06/15/2014 | 06/18/2014 | 11/01/2012 | 10/30/2012 | 06/18/2014 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 05/15/2014 | 05/20/2014 | 11/01/2012 | 10/30/2012 | 05/20/2014 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 04/15/2014 | 04/18/2014 | 11/01/2012 | 10/30/2012 | 04/18/2014 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 03/15/2014 | 03/19/2014 | 11/01/2012 | 10/30/2012 | 03/19/2014 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 02/15/2014 | 02/24/2014 | 11/01/2012 | 10/30/2012 | 02/20/2014 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 01/15/2014 | 01/21/2014 | 11/01/2012 | 10/30/2012 | 01/21/2014 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 12/15/2013 | 12/18/2013 | 11/01/2012 | 10/30/2012 | 12/18/2013 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 11/15/2013 | 11/20/2013 | 11/01/2012 | 10/30/2012 | 11/20/2013 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 10/15/2013 | 10/18/2013 | 11/01/2012 | 10/30/2012 | 10/18/2013 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 09/15/2013 | 09/18/2013 | 11/01/2012 | 10/30/2012 | 09/18/2013 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 08/15/2013 | 08/21/2013 | 11/01/2012 | 10/30/2012 | 08/20/2013 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |
| 07/15/2013 | 07/18/2013 | 11/01/2012 | 10/30/2012 | 07/18/2013 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ▇ | 4.375% |

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/15/2013 | 06/19/2013 | 11/01/2012 | 10/30/2012 | 06/19/2013 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 05/15/2013 | 05/20/2013 | 11/01/2012 | 10/30/2012 | 05/20/2013 | $1,481.98 | $0.00 | $0.00 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 04/15/2013 | 04/18/2013 | 11/01/2012 | 10/30/2012 | 04/18/2013 | $1,481.98 | $0.00 | $988.90 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 03/15/2013 | 03/21/2013 | 11/01/2012 | 10/30/2012 | 03/20/2013 | $1,481.98 | $0.00 | $988.90 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 02/15/2013 | 02/21/2013 | 11/01/2012 | 10/30/2012 | 02/21/2013 | $1,481.98 | $0.00 | $988.90 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 01/15/2013 | 01/18/2013 | 11/01/2012 | 10/30/2012 | 01/18/2013 | $1,481.98 | $0.00 | $988.90 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 12/15/2012 | 12/19/2012 | 11/01/2012 | 10/30/2012 | 12/19/2012 | $1,481.98 | $0.00 | $988.90 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 11/15/2012 | 11/23/2012 | 11/01/2012 | 11/20/2012 | $1,481.98 | $431.58 | $990.38 | $287,678.64 | $287,678.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 10/15/2012 | 10/18/2012 | 10/01/2012 | 10/01/2012 | 10/18/2012 | $1,481.98 | $430.01 | $991.86 | $288,110.22 | $288,110.22 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 09/15/2012 | 09/19/2012 | 09/01/2012 | 09/04/2012 | 09/19/2012 | $1,481.98 | $428.63 | $993.33 | $288,540.23 | $288,540.23 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 08/15/2012 | 08/20/2012 | 08/01/2012 | 08/07/2012 | 08/20/2012 | $1,481.98 | $426.89 | $994.80 | $288,968.86 | $288,968.86 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 07/15/2012 | 07/18/2012 | 07/01/2012 | 07/02/2012 | 07/18/2012 | $1,481.98 | $425.34 | $996.26 | $289,395.52 | $289,395.75 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 06/15/2012 | 06/20/2012 | 06/01/2012 | 06/01/2012 | 06/20/2012 | $1,481.98 | $423.80 | $997.72 | $289,821.09 | $289,821.09 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 05/15/2012 | 05/18/2012 | 05/01/2012 | 05/01/2012 | 05/18/2012 | $1,481.98 | $422.26 | $999.17 | $290,244.89 | $290,244.89 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 04/15/2012 | 04/18/2012 | 04/01/2012 | 04/02/2012 | 04/18/2012 | $1,481.98 | $420.72 | $1,000.61 | $290,667.15 | $290,667.15 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 03/15/2012 | 03/20/2012 | 03/01/2012 | 02/29/2012 | 03/20/2012 | $1,481.98 | $419.19 | $1,002.06 | $291,087.87 | $291,087.87 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 02/15/2012 | 02/21/2012 | 02/01/2012 | 01/31/2012 | 02/21/2012 | $1,481.98 | $417.67 | $1,003.49 | $291,507.06 | $291,507.06 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 01/15/2012 | 01/19/2012 | 01/01/2012 | 01/03/2012 | 01/19/2012 | $1,481.98 | $416.15 | $1,004.92 | $291,924.73 | $291,924.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 12/15/2011 | 12/20/2011 | 12/01/2011 | 12/02/2011 | 12/20/2011 | $1,481.98 | $414.64 | $1,006.35 | $292,340.88 | $292,340.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 11/15/2011 | 11/18/2011 | 11/01/2011 | 11/02/2011 | 11/18/2011 | $1,481.98 | $413.14 | $1,007.77 | $292,755.52 | $292,755.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 10/15/2011 | 10/19/2011 | 10/01/2011 | 09/30/2011 | 10/19/2011 | $1,481.98 | $411.64 | $1,009.18 | $293,168.66 | $293,168.66 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 09/15/2011 | 09/20/2011 | 09/01/2011 | 08/30/2011 | 09/20/2011 | $1,481.98 | $410.14 | $1,010.59 | $293,580.30 | $293,580.30 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 08/15/2011 | 08/18/2011 | 08/01/2011 | 07/29/2011 | 08/18/2011 | $1,481.98 | $408.65 | $1,012.00 | $293,990.44 | $293,990.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 07/15/2011 | 07/20/2011 | 07/01/2011 | 06/29/2011 | 07/20/2011 | $1,481.98 | $407.17 | $1,013.40 | $294,399.09 | $294,399.09 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 06/15/2011 | 06/20/2011 | 06/01/2011 | 06/01/2011 | 06/20/2011 | $1,481.98 | $405.69 | $1,014.79 | $294,806.26 | $294,806.26 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 05/15/2011 | 05/18/2011 | 05/01/2011 | 05/02/2011 | 05/18/2011 | $1,481.98 | $404.21 | $1,016.18 | $295,211.95 | $295,211.95 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 04/15/2011 | 04/20/2011 | 04/01/2011 | 04/04/2011 | 04/20/2011 | $1,481.98 | $402.74 | $1,017.56 | $295,616.16 | $295,616.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 03/15/2011 | 03/29/2011 | 03/01/2011 | | 03/18/2011 | $0.00 | $0.00 | $0.00 | $296,018.90 | $296,018.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |
| 02/15/2011 | 03/11/2011 | | | | $0.00 | $0.00 | $0.00 | $296,018.90 | $296,018.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | 4.375% |

Inactivate loan


Download Data to an Excel Spreadsheet

# **Exhibit 5**

Freddie Mac Single Family / Archive of Single-Family Seller/Servicer Guide / Archive of Single-Family Seller/Servicer Guide Published as of the Date of the Last 2012 Bulletin / Archive of Single-Family Seller/Servicer Guide, Volume 1, Published as of the Date of the Last 2012 Bulletin / Chs. 1-A1: Introduction / Chapter 1: Introduction / 1.2: Legal effect of the Single-Family Seller/Servicer Guide (07/20/12)

## 1.2: Legal effect of the *Single-Family Seller/Servicer Guide* (07/20/12)

**ARCHIVED VERSION**

**(a)  Status as a contract**

1.  **Effect of the Guide.** The *Single-Family Seller/Servicer Guide* ("Guide") governs the business relationship between a Seller and Freddie Mac relating to the sale and Servicing of Mortgages. Each Seller/Servicer must complete and submit a Form 16SF, Annual Eligibility Certification Report, that certifies that the Seller/Servicer has access to the Electronic version of the Guide as an Electronic Record, as those terms are defined in Chapter 3, and is in compliance with all requirements of the Purchase Documents.

2.  **Volume 1 of the Guide.** In connection with the sale of Mortgages to Freddie Mac, the Seller agrees that each transaction is governed by the Guide, the applicable Purchase Contract and all other Purchase Documents.

3.  **Volume 2 of the Guide.** A Seller must service all Mortgages that the Seller has sold to Freddie Mac and/or has agreed to service for Freddie Mac in accordance with the standards set forth in the Seller's Purchase Documents. All of a Seller's obligations to service Mortgages for Freddie Mac are considered to constitute, and must be performed pursuant to a unitary, indivisible master Servicing contract, and the Servicing obligations assumed pursuant to any contract to sell Mortgages to Freddie Mac are deemed to be merged into, and must be performed pursuant to, such unitary, indivisible master Servicing contract.

    A Seller acknowledges that Freddie Mac's agreement to purchase Mortgages from the Seller pursuant to any individual Purchase Contract is based upon the Seller's agreement that the Mortgages purchased will be serviced by the Seller pursuant to the unitary, indivisible master Servicing contract. The Seller agrees that any failure to service any Mortgage in accordance with the terms of the unitary, indivisible master Servicing contract, or any breach of any of the Seller's obligations under any aspect of the unitary, indivisible master Servicing contract, shall be deemed to constitute a breach of the entire contract and shall entitle Freddie Mac to terminate all or a portion of the Servicing. The termination of a portion of the Servicing shall not alter the unitary, indivisible nature of the Servicing contract.

    If a Servicer who services Mortgages for Freddie Mac is not also the Seller of the Mortgages to Freddie Mac, the Servicer must agree to service Mortgages for Freddie Mac by separate agreement, which incorporates the applicable Purchase Documents. In such case, the separate agreement shall be deemed to be one of the "Purchase Documents" that constitute the unitary, indivisible master Servicing contract.

    In addition, in certain cases, a Seller and/or Servicer who uses certain Freddie Mac services will, by virtue of the provisions of the Guide, be deemed to have agreed upon certain terms and conditions related to such services and their use.

4.  **Amendments to the Guide.** Freddie Mac may, in its sole discretion, amend or supplement the Guide from time to time. Amendments to the Guide may be a paper Record or an Electronic Record, as those terms are defined in Chapter 3. The Guide may not be amended orally. Freddie Mac may amend the Guide by:

- Publishing Bulletins, which apply to all Sellers/Servicers, or
- Entering into a Purchase Contract or other written or Electronic agreement, which applies to the Seller that is a party to the Purchase Contract or agreement

Bulletins expressly amend, supplement, revise or terminate specific provisions of the Guide. An amendment, supplement, revision or termination of a provision in Volume 1 or Volume 2 of the Guide is effective as of the date specified by Freddie Mac in the applicable Bulletin.

A Purchase Contract or other written agreement or Electronic agreement amends or supplements specific provisions of the Guide for purposes of such Purchase Contract or other agreement, as applicable. Such amendments or supplements to the Guide are effective as of the date specified in the Purchase Contract or other agreement. See Section 12.3(d) for information about how amendments and supplements to Volume 1 of the Guide amend or otherwise apply to a Seller's Purchase Contracts and other Purchase Documents.

5.  **Publication of Guide and Bulletins.** The Guide is posted on the AllRegs® web site of Mortgage Resource Center, Inc. (MRC) which posts the Guide under license from and with the express permission of Freddie Mac. MRC is the exclusive third-party electronic publisher of the Guide. Freddie Mac makes no representation or warranty regarding availability, features or functionality of the AllRegs web site. The Guide is also posted on FreddieMac.com.

By using the web site, Seller/Servicers acknowledge and agree (individually and on behalf of the entity for which they access the Guide) neither Freddie Mac nor MRC shall be liable to them (or the entity for which they access the Guide) for any losses or damages whatsoever resulting directly or indirectly from Freddie Mac's designation of the Guide as found on the AllRegs web site as the official Electronic version, as an Electronic Record, and MRC expressly disclaims any warranty as to the results to be obtained by Seller/Servicers (and the entity for which Seller/Servicers access the Guide) from use of the AllRegs web site, and MRC shall not be liable to Seller/Servicers (and the entity for which Seller/Servicers access the Guide) for any damages arising directly or indirectly out of the use of the AllRegs web site by them (and the entity for which they access the Guide).

From time to time, Bulletins are published on AllRegs and FreddieMac.com. Sellers and Servicers with an AllRegs subscription may receive notice of Bulletins directly from AllRegs. If a Seller or Servicer does not receive notice of Bulletins through AllRegs, the Seller or Servicer must take the steps necessary to receive the applicable Freddie Mac Single-Family Update e-mails, which will notify Sellers and Servicers of Bulletin publications. A Seller or Servicer's failure to take the appropriate steps to receive notices of Bulletins does not relieve the Seller or Servicer of its legal obligations to comply with the terms of the Bulletins.

6.  **Effective Date.** The effective date of each section of the Guide is located at the beginning of each section, to the right of the section number and name.

**(b)   Copyright**

The Guide (including related supplements, bulletins and industry letters) is copyrighted. Limited permission to photocopy the Guide is granted to Seller/Servicers strictly for their own use in originating and selling Mortgages to, and in Servicing Mortgages for, Freddie Mac. No part of the Guide may be reproduced for any other reason (in any form or by any means) without the express written permission of Freddie Mac. Requests for such permission to reproduce the Guide must be sent to Freddie Mac **(see Directory 1)**.

Requests will be reviewed and answered by Freddie Mac in the ordinary course of business.

Freddie Mac reserves the right to revoke permission to reproduce the Guide upon 60 days' notice to any and all Sellers and Servicers. Under no circumstances will Freddie Mac permit the Guide to be reproduced by any Electronic or mechanical means, including, but not limited to, reproduction in, or as a component of, any information storage and retrieval system.

**(c)   Reliance**

By entering into a Purchase Contract or into the unitary, indivisible master Servicing contract with Freddie Mac, the Seller or Servicer acknowledges that it is not relying upon Freddie Mac or any employee, agent or representative thereof, in making its decision to enter into the contract and that it has relied upon the advice and counsel of its own employees, agents and representatives as to the regulatory, business, corporate, tax, accounting and other consequences of entering into and performing its obligations under a Purchase Contract or the unitary, indivisible master Servicing contract.

**(d) Assignments; security interests**

A Seller or Servicer shall not, in whole or in part, assign or transfer or grant a security interest in, any of its obligations, rights or interest under any Purchase Contract or under the unitary, indivisible master Servicing contract, including any of its rights or obligations under this Guide or any of the Purchase Documents, without Freddie Mac's prior written consent. Any purported or attempted assignment or transfer of, or grant of a security interest in, any such obligations, rights or interest is prohibited and shall be null and void.

Notwithstanding the provisions of the immediately preceding paragraph, Freddie Mac may consent to a Servicer's grant to one or more third parties of a security interest under the Uniform Commercial Code in the conditional, nondelegable contract right of the Servicer to service Home Mortgages for Freddie Mac pursuant to the terms of the unitary, indivisible master Servicing contract ("Freddie Mac Servicing rights"). Freddie Mac will indicate its consent only by executing an Acknowledgment Agreement, which must also be executed by a Servicer and the third party to whom the Servicer grants a security interest. A Servicer may write to Freddie Mac **(see Directory 1)** for a copy of the Acknowledgment Agreement and instructions for completing and executing it.

A Servicer's grant to a third party of a security interest in the Servicer's Freddie Mac Servicing rights, as more specifically defined in the Acknowledgment Agreement, may be made only for a purpose specified in the instructions for the Acknowledgment Agreement. Any purported or attempted grant of a security interest in any other rights or interest of the Servicer under the Guide or any of the Purchase Documents, or for the purpose of securing any other type of obligation, is prohibited and shall be null and void. In addition, a Servicer's purported or attempted grant to a third party of a security interest in the Servicer's Freddie Mac Servicing rights without the Servicer and the third party also having executed the Acknowledgment Agreement is prohibited and shall be null and void.

Freddie Mac has the right to sell, assign, convey, hypothecate, pledge or in any way transfer, in whole or in part, its interest under the Purchase Documents with respect to any Mortgage it purchases.

**(e) Severability**

If any provision of this Guide shall be held invalid, the legality and enforceability of all remaining provisions shall not in any way be affected or impaired thereby, and this Guide shall be interpreted as if such invalid provision were not contained herein.

**(f) Construction of Guide**

This Guide shall not be construed against Freddie Mac as being the drafter hereof.

**(g) Entire agreement**

This Guide, including the exhibits attached to the Guide and all Purchase Documents incorporated by reference in the Guide, constitutes the entire understanding between Freddie Mac and the Seller or Servicer and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether oral or written or Electronic, with respect to the transactions contemplated by the Guide.

**(h)  Governing law**

This Guide shall be construed, and the rights and obligations of Freddie Mac and the Seller or Servicer hereunder determined, in accordance with the laws of the United States. Insofar as there may be no applicable precedent, and insofar as to do so would not frustrate any provision of this Guide or the transactions governed thereby, the laws of the State of New York shall be deemed reflective of the laws of the United States.

> Freddie Mac Single Family / Archive of Single-Family Seller/Servicer Guide / Archive of Single-Family Seller/Servicer Guide Published as of the Date of the Last 2012 Bulletin / Archive of Single-Family Seller/Servicer Guide, Volume 2, Published as of the Date of the Last 2012 Bulletin / Chs. 51-57: General Freddie Mac Policies / Chapter 52: Mortgage File Retention / 52.5: The Mortgage file, Mortgage data and related records (05/17/11)

## 52.5: The Mortgage file, Mortgage data and related records (05/17/11)

### ARCHIVED VERSION

**(a)** **Ownership** All documents in the Mortgage file, all data related to Mortgages owned or guaranteed by Freddie Mac to which the Servicer obtains access in connection with any agreement with Freddie Mac, including, without limitation, data in the documents in the Mortgage file (collectively, Mortgage data) and all other documents and records related to the Mortgage of whatever kind or description (whether prepared or originated by the Servicer or others, or whether prepared or maintained or held by the Servicer or others acting for and on behalf of the Servicer), including all current and historical computerized data files, will be, and will remain at all times, the property of Freddie Mac. All of these records and Mortgage data in the possession of the Servicer are retained by the Servicer in a custodial capacity only.

**(b)** **Permitted use of Mortgage data**

The Servicer may use these records and Mortgage data only for the following purposes:

- Servicing Mortgages (and, in compliance with the provisions of the Guide, retaining subservicers to service Mortgages) on behalf of, and in the interest of, Freddie Mac;

- As background information for the Servicer's use related to marketing or cross-selling of the Servicer's own primary market products and services in compliance with applicable laws, provided that such marketing and cross-selling does not involve disclosure of these records or Mortgage data to any third parties, other than vendors assisting the Servicer in its marketing activities who are themselves bound by these requirements;

- As necessary to enable a vendor to provide analytic services to the Servicer with respect to the Servicer's Servicing portfolio, for the Servicer's internal use only, provided the vendor is bound by these requirements; and

- As necessary to enable the Servicer to comply with its obligations under applicable law, including, without limitation, any disclosures required in connection with audits by regulatory agencies with jurisdiction over the Servicer's operations.

Except as expressly authorized by Freddie Mac in writing, Servicers may not use or disclose, or authorize or permit third parties to use or disclose, these records or Mortgage data for any other purpose, including, without limitation, resale or licensing of Mortgage data, either alone or with other data. See Section 53.3, Confidential Information; Privacy; Conflicts of Interest, Misuse of Material Information; Security of Information, for additional requirements related to confidentiality.

023

**Freddie Mac Single Family / Archive of Single-Family Seller/Servicer Guide / Archive of Single-Family Seller/Servicer Guide Published as of the Date of the Last 2012 Bulletin / Archive of Single-Family Seller/Servicer Guide, Volume 1, Published as of the Date of the Last 2012 Bulletin / Chs. 4-7: Seller/Servicer Requirements and Warranties / Chapter 6: General Warranties and Responsibilities of the Seller/Servicer / 6.6: Survival of warranties; remedies (05/05/00)**

## 6.6: Survival of warranties; remedies (05/05/00)

**ARCHIVED VERSION**

The warranties and representations in the Purchase Documents for any Mortgage purchased by Freddie Mac survive payment of the purchase price by Freddie Mac. The warranties and representations are not affected by any investigation made by, or on behalf of, Freddie Mac, except when expressly waived in writing by Freddie Mac.

When any party has purchased a Mortgage from Freddie Mac that Freddie Mac previously purchased from a Seller, Freddie Mac may exercise any rights or remedies at law or in equity on behalf of the party to the extent that the party does not affirmatively do so. Freddie Mac may also exercise its discretion to disqualify or suspend a Seller or a Servicer pursuant to Chapter 5 or 53.

For each Mortgage purchased by Freddie Mac, the Seller and the Servicer agree that Freddie Mac may, at any time and without limitation, require the Seller or the Servicer, at the Seller's or the Servicer's expense, to make such endorsements to and assignments and recordations of any of the Mortgage documents so as to reflect the interests of Freddie Mac and/or its successors and assigns.

024

> **Freddie Mac Single Family / Archive of Single-Family Seller/Servicer Guide / Archive of Single-Family Seller/Servicer Guide Published as of the Date of the Last 2012 Bulletin / Archive of Single-Family Seller/Servicer Guide, Volume 2, Published as of the Date of the Last 2012 Bulletin / Chs. 51-57: General Freddie Mac Policies / Chapter 52: Mortgage File Retention / 52.7: Transfer of file custody; security of file information (10/01/09)**

## 52.7: Transfer of file custody; security of file information (10/01/09)

**ARCHIVED VERSION**

Freddie Mac may at any time require the Servicer to deliver the following documents to a Document Custodian approved by Freddie Mac or a transferee designated by Freddie Mac:

- Any original Note, Security Instrument, assignment and modifying instrument still in the Servicer's custody

- Any Mortgage file, document within a Mortgage file or other related documents and records in the Servicer's or its Document Custodian's custody, whether maintained as originals or as copies in accordance with Section 52.2

The Servicer may, without Freddie Mac's prior approval, entrust custody of all or part of the Mortgage file to the Document Custodian holding Notes and assignments under Section 18.2. When requested, the Servicer must be able to identify to Freddie Mac those file items held by the Document Custodian and document to Freddie Mac the Document Custodian's acknowledgment that such file items:

- Are Freddie Mac's property

- Will be maintained by the Document Custodian according to standards at least equal to those set in this chapter

- Will be maintained in such a way as to ensure the security and confidentiality of the information; protect against anticipated threats or hazards to the security or integrity of the information; and protect against unauthorized access to or use of such information

- Will be surrendered to Freddie Mac at any time Freddie Mac may request them

The Servicer agrees to indemnify Freddie Mac and hold Freddie Mac harmless for any loss, damage or expense (including court costs and reasonable attorney fees) that Freddie Mac may incur as a result of the Document Custodian's holding all or part of the Mortgage file.

The Servicer must maintain a copy (in a form allowable under Section 52.2) of any original document that has been entrusted to the Document Custodian for safekeeping. If all or part of the Mortgage file is held by the Servicer's Document Custodian, the Servicer agrees to recover from the Document Custodian (at the Servicer's expense) and provide to Freddie Mac (at the place and within the timeframe specified by Freddie Mac) any Document Custodian-held original document requested by Freddie Mac for the postfunding quality control detailed in Chapter 47 or in conjunction with a Freddie Mac desktop or on-site review of the Servicer's Servicing operations.

Freddie Mac Single Family / Archive of Single-Family Seller/Servicer Guide / Archive of Single-Family Seller/Servicer Guide Published as of the Date of the Last 2012 Bulletin / Archive of Single-Family Seller/Servicer Guide, Volume 1, Published as of the Date of the Last 2012 Bulletin / Chs. 22-28: General Mortgage Eligibility / Chapter 22: General Mortgage Eligibility / 22.14: Assignment of Security Instrument (10/01/09)

## 22.14: Assignment of Security Instrument (10/01/09)

**ARCHIVED VERSION**

The Seller/Servicer is not required to prepare an assignment of the Security Instrument to the Federal Home Loan Mortgage Corporation (Freddie Mac). However, Freddie Mac may, at its sole discretion and at any time, require a Seller/Servicer, at the Seller/Servicer's expense, to prepare, execute and/or record assignments of the Security Instrument to Freddie Mac.

If an assignment of the Security Instrument to Freddie Mac has been prepared, Seller/Servicer must not record it unless directed to do so by Freddie Mac. Any statement in the assignment to the effect that the assignment is made without recourse will in no way affect the Seller/Servicer's repurchase obligations under the Purchase Documents.

Intervening Assignments must be prepared as required in Sections 22.14(a), 22.14(b) or 22.14(c) below.

Special provisions for preparing assignments for Mortgages secured by Manufactured Homes located in certificate of title States where there is no provision for surrender and cancellation of the certificate of title are set forth in Section H33.7(c), paragraph 3. Mortgages secured by Manufactured Homes located in certificate of title States where there is no provision for surrender and cancellation of the certificate of title may not be registered with MERS.

**(a) Preparation and completion of assignments for Mortgages not registered with MERS** For a Mortgage not registered with MERS, the Seller/Servicer must ensure that the chain of assignments is complete and recorded from the original mortgagee on the Security Instrument to the Seller. If the Seller concurrently or subsequently transfers the Servicing, an assignment to the new Servicer must be completed and recorded where required, thus keeping the chain complete.

If a State does not accept assignments for recordation, the Seller must so state in an affidavit maintained with the unrecorded assignment.

**(b) Preparation and completion of assignments for Mortgages registered with MERS**

For a Mortgage registered with MERS, if MERS is not the original mortgagee of record, the Seller/Servicer must ensure that:

- An assignment to MERS has been prepared, duly executed and recorded
- The chain of assignments is complete and recorded from the original mortgagee to MERS

If the Seller/Servicer concurrently or subsequently transfers the Servicing of a Mortgage registered with MERS, no further assignments are required if the Transferee Servicer is a MERS member. If the Transferee Servicer is not a MERS member, or if the Mortgage has not been, or is no longer, registered with MERS, the Seller/Servicer must complete the assignments in accordance with the requirements in Section 22.14(a).

**(c)  Mortgages registered with MERS naming MERS as original mortgagee of record**

No assignments are required for a Mortgage registered with MERS if:

- The Mortgage is originated naming MERS as the original mortgagee of record, solely as nominee for the lender named in the Security Instrument and the Note, and the lender's successors and assigns, and

- The Seller/Servicer has ensured that the Security Instrument is properly executed, acknowledged, delivered and recorded in all places necessary to perfect a First Lien security interest in the Mortgaged Premises in favor of MERS, solely as nominee for the lender named in the Security Instrument and the Note, and the lender's successors and assigns

**(d)  Concurrent Transfers of Servicing**

If the Mortgage is registered with MERS, and the Transferee Seller/Servicer is not a MERS Member, then the requirements for Mortgages not registered with MERS in the first paragraph of Section 22.14(a) must be followed.

For a Concurrent Transfer of Servicing when a Mortgage is registered with MERS:

- The Transferor Seller must notify MERS of the Transfer of Servicing

- The Transferee Seller/Servicer must follow the document custodial procedures in Section 56.9, and deliver the assignments to the Transferee Document Custodian to be verified and certified in accordance with the requirements of Section 18.5, unless the Transferee Seller/Servicer has elected to retain all assignments for MERS-registered Mortgages in the Mortgage files. The Transferee Seller/Servicer must also supply its Document Custodian with any documentation necessary for the Document Custodian to determine whether the Seller/Servicer has elected to hold all assignments in the Mortgage files

For a Concurrent Transfers of Servicing when a Mortgage is not registered with MERS:

- The Transferor Seller must record any Intervening Assignments to complete the chain of assignments from the original mortgagee to the Transferor Seller, in accordance with Section 22.14(a)

- The Transferor Servicer must then assign the Security Instruments to the Transferee Servicer and record the assignments

- The Transferee Servicer must follow the document custodial procedures set forth in Section 56.9, and deliver the assignments to the Transferee Document Custodian, to be verified and certified in accordance with the requirements of Section 18.5

Special provisions for Concurrent Transfers of Servicing of Mortgages secured by Manufactured Homes located in certificate of title States where there is no provision for surrender and cancellation of the certificate of title are set forth in Section H33.7 (c), paragraph 3.

**(e)    Delivery to a Document Custodian**

The Seller/Servicer must deliver all Intervening Assignments for each Mortgage to the Document Custodian, unless the Mortgage is registered with MERS and the Seller/Servicer has elected to retain all assignments for MERS-registered Mortgages in the Mortgage files. The Seller/Servicer must also supply its Document Custodian with any documentation necessary for the Document Custodian to determine if it should expect to receive assignments for MERS-registered Mortgages.

If a recorder's office has not yet returned a recorded Intervening Assignment to the Seller/Servicer, the Seller/Servicer must deliver a certified copy of the assignment sent for recordation to the Document Custodian.

The original recorded assignment must be delivered to the Document Custodian immediately after the Seller/Servicer receives it from the recorder's office. If a jurisdiction does not accept assignments for recordation, the Seller/Servicer must so indicate in an affidavit delivered to the Document Custodian with the unrecorded Intervening Assignment.

**(f)    Transfer or assignment of Freddie Mac's interests**

For transfer or assignment of Freddie Mac's interest in the Mortgage, the Seller/Servicer shall prepare at its own expense any assignment necessary to transfer the Security Instrument to Freddie Mac's assignee, designee or transferee.

**(g)    Transfer of Servicing**

See Sections 56.7 and 56.9.

> **Freddie Mac Single Family / Archive of Single-Family Seller/Servicer Guide / Archive of Single-Family Seller/Servicer Guide Published as of the Date of the Last 2012 Bulletin / Archive of Single-Family Seller/Servicer Guide, Volume 2, Published as of the Date of the Last 2012 Bulletin / Chs. 51-57: General Freddie Mac Policies / Chapter 56: Transfers of Servicing / 56.7: Endorsement of Notes and assignment of Security Instruments (10/01/09)**

## 56.7: Endorsement of Notes and assignment of Security Instruments (10/01/09)

### ARCHIVED VERSION

When a Mortgage is sold to Freddie Mac, the Seller must endorse the Note in blank in accordance with Section 16.4. When a Transfer of Servicing occurs, the Transferor Servicer may not complete the blank endorsement or further endorse the Note, but must prepare and complete assignments according to the following requirements:

**(a) Concurrent Transfer of Servicing for a Mortgage not registered with the Mortgage Electronic Registration Systems Inc. (MERS)**

To prepare and complete assignment of the Security Instrument for a Concurrent Transfer of Servicing for a Mortgage not registered with MERS, the Transferor Servicer must :

- Record any Intervening Assignments to complete the chain of assignments to it from the original mortgagee, in accordance with Section 22.14(a)

- Assign the Security Instruments to the Transferee Servicer, and record the assignment

- Follow the document custodial procedures set forth in Section 56.9 and deliver the assignment to the Transferee Document Custodian to be verified in accordance with the requirements of Section 18.5

See Section 22.14(a) for additional information.

**(b) Concurrent Transfer of Servicing for a Mortgage registered with MERS**

To prepare and complete an assignment of the Security Instrument for a Concurrent Transfer of Servicing of a Mortgage that is registered with MERS:

- If the **Transferee Servicer is a MERS Member**, no further assignment is needed. The Transferor Servicer must notify MERS of the Transfer of Servicing.

- If the **Transferee Servicer is not a MERS Member**, then for a Concurrent Transfer of Servicing:

  - The Transferor Servicer must prepare and record an assignment of the Security Instrument (on behalf of MERS) from MERS to the Transferee Servicer

  - The Transferor Servicer must follow the document custodial procedures set forth in Section 56.9, and deliver the assignment to the Transferee Document Custodian to be verified and certified in accordance with the requirements of Section 18.5

See Section 22.14(b) for additional information.

029

**(c)  Subsequent Transfer of Servicing for a Mortgage not registered with MERS**

To prepare and complete an assignment of a Security Instrument for a Subsequent Transfer of Servicing for a Mortgage not registered with MERS, the Transferor Servicer must:

- Recover and destroy any original unrecorded assignments to Freddie Mac that may have been prepared
- Assign the Security Instrument to the Transferee Servicer and record the assignment
- Follow the document custody procedures set forth in Section 56.9, and deliver the assignment(s) to the Transferee Document Custodian to be verified and certified in accordance with the requirements of Section 18.5

If an original assignment to Freddie Mac was recorded, no additional assignment need be made.

> Freddie Mac Single Family / Archive of Single-Family Seller/Servicer Guide / Archive of Single-Family Seller/Servicer Guide Published as of the Date of the Last 2012 Bulletin / Archive of Single-Family Seller/Servicer Guide, Volume 2, Published as of the Date of the Last 2012 Bulletin / Chs. 51-57: General Freddie Mac Policies / Chapter 56: Transfers of Servicing / 56.15: Liabilities of the Transferor Servicer and Transferee Servicer (10/03/12)

**56.15: Liabilities of the Transferor Servicer and Transferee Servicer (10/03/12)**

**ARCHIVED VERSION**

**(a) Warranties**

Except as stated in the following paragraph, for Transfer of Servicing requests received by Freddie Mac, the Transferee Servicer is liable to Freddie Mac for all sale and Servicing responsibilities, representations, covenants and warranties in the Purchase Documents with respect to the Mortgages and Real Estate Owned (REO) for which Servicing is transferred, whether or not the Transferor Servicer had such liability. The Transferee Servicer's assumption of responsibilities, representations, covenants and warranties upon transfer does not release the Transferor Servicer, any prior Servicer, or the original Seller of their responsibilities, representations, covenants and warranties with respect to the transferred Mortgages, their liability being joint and several with the Transferee Servicer. However, a Transferor Servicer does not assume such liability for Servicing violations occurring in all respects after the effective date of its transfer and based in all respects upon the actions or omissions of later Transferee Servicers.

For Mortgages sold through Gold Cash Xtra® and the Servicing Released Sales Process, the Seller remains solely liable to Freddie Mac for all sale representations, covenants and warranties in the Purchase Documents (sale representations and warranties) with respect to the Mortgages for which Servicing is transferred. The Transferee Servicer is liable to Freddie Mac for all servicing responsibilities, representations, covenants and warranties in the Purchase Documents with respect to the Mortgages for which Servicing is transferred. For subsequent Transfers of Servicing of such Mortgages:

- The Seller Transferor remains solely liable to Freddie Mac for all sale representations and warranties with respect to the Mortgages for which Servicing is transferred; and

- The subsequent Transferee Servicer is liable to Freddie Mac for all Servicing responsibilities, representations, covenants and warranties in the Purchase Documents with respect to the Mortgages and Real Estate Owned (REO) for which Servicing is transferred, but the Transferee Servicer's assumption of responsibilities, representations, covenants and warranties upon transfer does not release the subsequent Transferor Servicer or any prior Servicer of their responsibilities, representations, covenants and warranties with respect to Servicing of the transferred Mortgages, their liability being joint and several with the Transferee Servicer. However, a Transferor Servicer does not assume such liability for Servicing violations occurring in all respects after the effective date of its transfer and based in all respects upon the actions or omissions of later Transferee Servicers.

**(b)  Hold harmless**

The Transferor *Servicer* and the Transferee *Servicer*, jointly and severally, fully indemnify and agree to hold Freddie Mac, its successors and assigns, harmless from and against any and all losses, claims, demands, actions, suits, damages, costs and expenses (including reasonable attorney fees) of every nature and character that may arise or be made against or be incurred by Freddie Mac as a result of the Transferor *Servicer*'s or the Transferee *Servicer*'s failure to comply with applicable law or failure to comply with Freddie Mac's Servicing requirements as set forth in the Purchase Documents, including, but not limited to failure to provide the notices required by Section 56.14, failure to make any payment to the appropriate parties for which Escrow is collected and failure to credit properly any payments received from Borrowers.

**(c)  Servicing**

The Transferee *Servicer* hereby agrees to service the Mortgages in accordance with the terms of the unitary, indivisible master Servicing contract comprising the Guide, applicable bulletins, applicable *users' guides* and any other applicable Purchase Documents, all of which are fully incorporated herein by reference.

> Freddie Mac Single Family / Archive of Single-Family Seller/Servicer Guide / Archive of Single-Family Seller/Servicer Guide Published as of the Date of the Last 2012 Bulletin / Archive of Single-Family Seller/Servicer Guide, Volume 2, Published as of the Date of the Last 2012 Bulletin / Chs. 51-57: General Freddie Mac Policies / Chapter 54: Servicing Compensation / 54.4: Servicing obligations to be performed for the Servicing compensation (03/23/11)

**54.4: Servicing obligations to be performed for the Servicing compensation (03/23/11)**

## ARCHIVED VERSION

In consideration for the Servicing Spread, a Servicer is responsible for the performance of all of its Servicing obligations described in the Guide and other Purchase Documents for each of the Mortgages purchased by Freddie Mac. The Servicer's Servicing obligations compensated by the Servicing Spread include, among other things, undertaking all activities required to protect Freddie Mac's interest in the Mortgage in the event of a foreclosure of the property or a bankruptcy of the Borrower, such as:

- Preparing and delivering foreclosure and bankruptcy referrals to attorneys or trustees

- Providing all documents and information necessary for the attorneys or trustees to prosecute foreclosure or bankruptcy cases (including, but not limited to, missing documents such as Notes, title insurance policies, and Intervening Assignments)

- When necessary, paying for the preparation and recordation of missing documents, such as Intervening Assignments, necessary for the prosecution of foreclosure or bankruptcy cases

- Resolving any title issues that are the result of the Seller's or Servicer's action or inaction

- Managing attorneys, including but not limited to:

  ◦ Collecting, receiving, processing, reviewing and paying attorneys' and trustees' invoices

  ◦ Supervising and providing necessary assistance to attorneys and trustees in the foreclosure and bankruptcy proceedings

  ◦ Making available any monitoring, management, reporting, information and document delivery processes or systems, and paying the fees and costs for such processes or systems

- Continuing to work with the Borrower to resolve the delinquency through loss mitigation activities

- Handling the bankruptcy management activities specified in Chapter 67

Refer to Section 66.25 for information on connectivity and invoice processing systems and reimbursement of fees for use of such systems.

Nothing in the Guide is intended to prohibit a foreclosure or bankruptcy attorney or a trustee from assisting a Servicer by working with a Borrower to facilitate a reinstatement of the Mortgage or loss mitigation activity.

> **Freddie Mac Single Family / Archive of Single-Family Seller/Servicer Guide / Archive of Single-Family Seller/Servicer Guide Published as of the Date of the Last 2012 Bulletin / Archive of Single-Family Seller/Servicer Guide, Volume 1, Published as of the Date of the Last 2012 Bulletin / Chs. 16-21: Delivery / Chapter 18: Document Custody / 18.4: Seller/Servicer responsibilities (10/01/09)**

## 18.4: Seller/Servicer responsibilities (10/01/09)

**ARCHIVED VERSION**

**(a) Responsibility for documents and Document Custodian compliance**

The Seller/Servicer agrees to indemnify Freddie Mac and hold Freddie Mac harmless for any loss, damage or expense (including court costs and reasonable attorney fees) that Freddie Mac may incur as a result of the Seller/Servicer's Document Custodian holding Notes and any other documents.

The Seller/Servicer is responsible for ensuring that its Document Custodian complies with all applicable Freddie Mac requirements regarding Note custody. Freddie Mac's Document Custody Procedure Handbook is available to Seller/Servicers and Document Custodians on AllRegs, or at **http://www.freddiemac.com/cim/handbook.html**. Seller/Servicers and Document Custodians will find this handbook to be a useful resource in fulfilling these requirements.

**(b) Monitoring the eligibility status of the Document Custodian**

The Seller/Servicer is responsible for monitoring its Document Custodian for compliance with Freddie Mac's Document Custodian eligibility requirements, and must ensure that its Document Custodian is in compliance with all eligibility requirements at all times, provided, however, that Freddie Mac will perform this monitoring for the Designated Custodian.

If, at any time, the Document Custodian fails to comply with any eligibility requirement, the Seller/Servicer must contact Freddie Mac **(see Directory 1)** in writing within one day of the Seller/Servicer learning of the noncompliance. Freddie Mac, at its discretion, may allow the Seller/Servicer a period of time to work with its Document Custodian to ensure that the Document Custodian takes all necessary steps to meet the requirements. However, Freddie Mac reserves the right to immediately terminate a custodial agreement. Further, Freddie Mac may direct the Seller/Servicer to transfer the Notes to the Designated Custodian or a new Document Custodian pursuant to Sections 18.1 through 18.3, and transfer all Notes and assignments for Mortgages serviced for Freddie Mac from the old Document Custodian to the new Document Custodian, pursuant to the requirements of Section 18.6.

**(c)  Transit insurance requirements**

If the Seller/Servicer has not contractually agreed with the Document Custodian to have the Document Custodian assume liability for Notes and assignments while in transit, the Seller/Servicer must obtain insurance covering physical damage or destruction to, or loss of, any Notes and assignments while such documents are in transit between the Document Custodian's vault and anywhere, regardless of the means by which they are transported. For the purpose of this insurance, Mortgage Notes are to be defined as "Negotiable Instruments" per Section 3-104 of the Uniform Commercial Code (UCC).

At a minimum, the required insurance coverage must:

- Be underwritten by an insurer that has an A- (A minus) or better rating according to the A.M. Best Company

- Be maintained in amounts that are deemed adequate for the number of Notes and assignments held in custody and that are deemed appropriate based on prudent business practice

- Each have a deductible amount no more than the greater of 5% of the Seller/Servicer's GAAP net worth or $100,000, but in no case greater than $10,000,000

In the event that a Seller/Servicer is covered under its parent's insurance program rather than by its own insurance:

- The acceptable deductible amount for each insurance coverage may be no more than the greater of 5% of the parent's GAAP net worth or $100,000, but in no case greater than $10,000,000

- The Seller/Servicer must be a named insured

- The parent's insurance policy(ies) must meet requirements as stated in this subsection

In the event of cancellation or non-renewal of any of the required insurance coverages, the Seller/Servicer or the Seller/Servicer's insurer, insurance broker or agent must provide Freddie Mac **(see Directory 1)** a minimum of 30 days advance written notice thereof.

Freddie Mac's insurance requirements as stated in this subsection do not diminish, restrict or otherwise limit the Seller/Servicer's responsibilities and obligations as stated in the Form 1035, Form 1035DC, or otherwise in the Purchase Documents.

**(d)  Transfers of Servicing**

For Transfers of Servicing pursuant to Chapter 56, the Seller/Servicer must meet the document custody requirements of Section 18.7 and Section 56.9, including the transfer of the Notes from the Transferor Servicer's Document Custodian to the Transferee Servicer's Document Custodian.

**(e)  Obtaining documents**

Seller/Servicers may need to request the Note or other documents held by a
Document Custodian to take appropriate action in conjunction with the payoff,
foreclosure, repurchase substitution, conversion, modification or assumption of a
Mortgage or the recordation of the assignment of a Security Instrument to Freddie
Mac.

- To obtain a Note and/or other documents from the Designated Custodian, the
  Seller/Servicer must make an electronic request ("Web Release Request") using
  the Designated Custodian's Web portal. Contact the Designated Custodian for
  further information **(see Directory 4).** Unless the related Mortgage was
  repurchased or paid in full, the Seller/Servicer must promptly return the Note and
  documents when they are no longer required for servicing to the Designated
  Custodian. Seller/Servicers using the Designated Custodian's internet website Asset
  Repository and Collateral System (ARK) to request release of Notes and other
  documents must include a copy of the 1036 Release Receipt Report when returning
  such items to the Designated Custodian. The Release Receipt Report can be
  electronically generated from the Designated Custodian's ARK web site.

- To obtain a Note and/or other documents from a Document Custodian other than
  the Designated Custodian, the Seller/Servicer must complete Form 1036, Request
  for Release of Documents, and send the form to the Document Custodian. Unless
  the related Mortgage was repurchased or paid in full, the Seller/Servicer must
  promptly return the Notes and documents and Form 1036 when they are no longer
  required for servicing to the Document Custodian.

Seller/Servicers must follow prudent business practices in protecting and
safeguarding all Notes and documents released to them by the Document Custodian
until these documents are returned to the Document Custodian. These practices
include protection from external elements, such as fire, and identification as a
Freddie Mac asset and segregation from other non-related documents.

> Freddie Mac Single Family / Archive of Single-Family Seller/Servicer Guide / Archive of Single-
> Family Seller/Servicer Guide Published as of the Date of the Last 2012 Bulletin / Archive of Single-
> Family Seller/Servicer Guide, Volume 1, Published as of the Date of the Last 2012 Bulletin / Chs.
> 16-21: Delivery / Chapter 18: Document Custody / 18.6: Document Custodian's functions and
> duties (07/20/12)

**18.6: Document Custodian's functions and duties (07/20/12)**

**ARCHIVED VERSION**

Changes to these requirements have been announced and will become effective on
06/01/13.

**(a)  General duties**

Each Document Custodian is responsible for:

1.  Maintaining custody and control of the original Notes and assignments on behalf
    of Freddie Mac. If the Seller/Servicer delivers supplemental documents, such as
    original modifying instruments, the Document Custodian must place the
    supplemental documents with the related original Notes.

2.  Holding the Notes and assignments in secure, fire-resistant facilities as
    described in Section 18.2(b)

3.  Affixing the Freddie Mac loan number to the Note, if advised by the
    Seller/Servicer that Freddie Mac requires it. If the Note for a Mortgage contains
    the Freddie Mac loan number, changing the Freddie Mac loan number on a Note
    if advised in writing by the Seller/Servicer that Freddie Mac has changed the
    Freddie Mac loan number for the related Mortgage.

4.  Making available for review by Freddie Mac (or its designee), at any time during
    normal business hours, with or without prior notice, the Notes and assignments
    and related storage facilities, maintenance and release procedures, and control
    and tracking mechanisms, and other evidence of compliance with eligibility
    requirements as requested

5.  Making the custodial staff available for interview by Freddie Mac or its designee,
    at any time during normal business hours, with or without prior notice, for an
    assessment of the staff's familiarity with and adherence to Freddie Mac's
    custodial requirements and the Document Custodian's internal controls

6.  Indemnifying Freddie Mac for such losses as may occur as a result of any
    negligence by the Document Custodian in the performance of its duties under
    the Guide pertaining to Notes and assignments held for Freddie Mac and Form
    1035, Custodial Agreement: Single-Family Mortgages, and Form 1035DC,
    Designated Custodial Agreement: Single-Family Mortgages

7.  Providing, in an electronic format acceptable to Freddie Mac, an accounting of
    all Notes held for Freddie Mac as described in Section 18.2(b)

Freddie Mac may, at any time, and in its sole discretion, require a Document
Custodian to segregate the Notes it holds for Freddie Mac from those held for other
investors.

**(b)   Verifications**

Upon receiving the Notes from the Seller/Servicer, the Document Custodian must verify that the following requirements have been met:

- Note: The information on each Note matches all corresponding information for the related Mortgage contained in the Freddie Mac Selling System (" Selling System"). The Document Custodian is not required to verify the Seller/Servicer number.

- Note endorsement: Each Note is endorsed as required by Section 16.4. If the Seller/Servicer delivering the Note is not the original payee on a Note, the Document Custodian must verify that the chain of endorsements is proper and complete from the original payee on the Note to the Seller delivering the Note to Freddie Mac — not to the Servicer.

- Assignments: The assignments of the Security Instruments from the original Mortgagee to the Seller/Servicer or to MERS® are prepared, executed and recorded where required, in accordance with Sections 22.14 and 56.7. The Seller/Servicer must provide its Document Custodian with any documentation necessary for the Document Custodian to determine whether the Seller/Servicer has elected to hold all assignments for Mortgages registered with MERS in the Mortgage files, as provided in Section 22.14.

**(c)   Certification**

The Document Custodian must comply with the applicable requirements of the Purchase Documents whenever the Document Custodian is completing the certification process for Mortgages sold to Freddie Mac.

The Document Custodian consents to conduct Electronic Transactions, as defined in Chapter 3, with the Seller/Servicer and Freddie Mac in connection with its functions, duties and obligations under this Section 18.6 and Form 1035. In accordance with Form 1035, the Document Custodian adopts as its signature its Freddie Mac Document Custodian number. The Document Custodian must comply with the requirements of Chapter 3 as if each reference to the word "Seller/Servicer" were a reference to the "Document Custodian."

The Document Custodian must not execute the Custodian Certification if any of the information or documentation required to be verified does not match the specifications in Section 18.6(b) or if any discrepancy is not sufficiently justified. The Document Custodian must inform the delivering Seller/Servicer of any discrepancy for corrective action.

**(d)   Duties to Freddie Mac**

Upon certification of the Notes and assignments, the Document Custodian must hold the Notes and assignments in trust for the sole benefit of Freddie Mac. The Document Custodian may not enter into any understanding, agreement, or relationship with any party by which any such party would obtain, retain or claim any interest (including an ownership or security interest) in such documents or the underlying Mortgages, unless otherwise specifically approved by Freddie Mac.

If the Document Custodian's facilities are affected by a disaster, the Document Custodian must notify Freddie Mac **(see Directory 9)** within 24 hours of the disaster.

**(e)  Release of documents to the Seller/Servicer**

The Seller/Servicer may require Notes and related documents in conjunction with the maturity, prepayment, foreclosure, repurchase, substitution, conversion, modification or assumption of a Mortgage or the recordation of the assignment of a Security Instrument to Freddie Mac.

The Document Custodian will release to the Seller/Servicer any Note and related documents in the Document Custodian's custody upon receiving from the Seller/Servicer a properly completed and executed Form 1036, Request for Release of Documents, (or its equivalent, each such form, a "Request for Release"), (or in the case of the Designated Custodian, a request via its web portal (see section 18.4(e)). To use an electronic or system-generated version of the Form 1036, the Seller/Servicer must enter into an agreement with the Document Custodian that:

- Defines electronic signatures and the type of electronic transmission permitted

- States the Document Custodian's requirements for accepting electronic signatures

- States the Seller/Servicer's requirements for maintaining and controlling access to electronic signature information

- Clearly assigns liability when the terms of the agreement are violated

In addition, the Seller/Servicer must provide, and the Document Custodian must retain, a list of the individuals designated to request the release of documents electronically. The list must be signed by an authorized officer of the Seller/Servicer and contain the notarized signatures of the designees.

An electronic or system-generated Form 1036 must contain all of the information required on the paper form. A single electronic form can be used to request multiple Notes provided that the Note list is attached.

See Section 18.6(g) for additional information on imaging and retention requirements. If a document is no longer needed for the reason originally cited on the request, the Seller/Servicer must return the Note and related documents and a copy of the Form 1036 to the Document Custodian, or return the Note and any other documentation required by the Designated Custodian, which will resume its custody and update its note tracking system to reflect receipt of the documents.

See Section 18.4(e) for additional information on returning documents to the Document Custodian or Designated Custodian. Seller/Servicers must follow prudent business practices in protecting and safeguarding all documents released to them while those documents are in their possession. These practices include protection from destructive elements, such as fire, identification as Freddie Mac assets, and segregation from other non-related documents.

**(f)  Release of documents to designated counsel**

Designated counsel may require Notes in conjunction with the foreclosure of a Mortgage. The Document Custodian must release to the designated counsel any Note in the Document Custodian's custody upon receipt of a properly completed and executed Form 1036DC, Designated Counsel's Request for Release of Documents, from the designated counsel.

Prior to releasing the documents, the Document Custodian must:

- Verify that the designated counsel requesting the documents using Form 1036DC is in fact Freddie Mac's designated counsel by using the list (Guide Exhibit 79, Designated Counsel/Trustee) on our web site at **http://www.freddiemac.com/service/msp/desig_counsel.html,** or by calling (800) FREDDIE.

- Verify that the information provided for each Mortgage is correct, for example, that the named Borrower corresponds to the Freddie Mac loan number. If the Document Custodian has reason to believe the information provided is incorrect, contact the Servicer or Freddie Mac's Settlement Operations at **fmmdm@freddiemac.com,** and do not release the documents.

- Fax or e-mail a copy of the Form 1036DC that accompanies any documents that are released to designated counsel to the Servicer indicated on the form and obtain "in transit" insurance coverage for the documents released to the designated counsel.

- Retain the Form 1036DC as required by Form 1035.

The Seller/Servicer will be responsible for any release fees and delivery expenses with respect to documents that the Document Custodian releases to the designated counsel.

If the foreclosure is not completed, the designated counsel will return the Note with a copy of the Form 1036DC to the Document Custodian, which will resume its custody and update its note tracking system to reflect receipt of the documents.

**(g)  Imaging and retention requirements**

The Document Custodian must retain either the original or an imaged copy of each Form 1036 (or its equivalent, each such form, a "Request for Release") for at least three months after the date the Mortgage is paid off or the Note is returned to the Document Custodian. The Document Custodian need not retain a Form 1034E, or Note Delivery Cover Sheet, after the related Mortgages have been certified.

Imaged copies of the forms are permitted, provided that:

- Such copies were made in the regular course of business pursuant to Document Custodian's written policy
- Each imaged copy accurately reproduces or forms a durable medium for reproducing the original document
- There is equipment to view or read and to reproduce the imaged copies into legible documents at the location where the imaged copies are maintained

The Document Custodian may destroy:

- Original Certification Schedules after making imaged copies that meet the above criteria
- Requests for Release after making imaged copies that meet the above criteria and updating Document Custodian's note tracking system to indicate the date of release of the related documents and the reason for their release
- All original or imaged copies of Certification Schedules and Requests for Release after expiration of the retention period

In disposing of such documents, Document Custodian must have in place and follow procedures to ensure the confidentiality of Borrowers' private personal information and must use disposal methods that safeguard such confidentiality.

041

**Freddie Mac Single Family / Archive of Single-Family Seller/Servicer Guide / Archive of Single-Family Seller/Servicer Guide Published as of the Date of the Last 2012 Bulletin / Archive of Single-Family Seller/Servicer Guide, Volume 2, Published as of the Date of the Last 2012 Bulletin / Chs. 64-A69: Servicing Nonperforming Mortgages / Chapter 66: Foreclosure / 66.1: Introduction (10/01/11)**

**66.1: Introduction (10/01/11)**

ARCHIVED VERSION

The Servicer must initiate foreclosure in accordance with this chapter only when there is no viable alternative to foreclosure. Additionally, Freddie Mac requires the Servicer to manage the foreclosure process to acquire clear and marketable title to the property in a cost-effective, expeditious and efficient manner.

## 66.20: Obtaining the original Note (01/14/11)

If the original Note is needed to perform the foreclosure, the Servicer must request the Note from the Document Custodian holding the Note by submitting to the Document Custodian a completed Form 1036, Request for Release of Documents, or an electronic or system-generated version of the form (or, in the case of the Designated Custodian, a copy of the electronically generated 1036 Release Receipt Report) in accordance with the requirements of Section 18.4(e).

If there is a full or partial reinstatement of the Mortgage, the Servicer must return the Note to the Document Custodian with either the original Form 1036 or a copy.

For foreclosures referred to designated counsel, if the Servicer fails to provide the above information in a timely manner as required by the designated counsel, the designated counsel may request the Note from the Document Custodian holding the Note by submitting to the Document Custodian a completed Form 1036DC, Designated Counsel's Request for Release of Documents. The designated counsel may contact the Servicer to identify the Document Custodian holding the Note, and the Servicer must cooperate in providing the necessary information. In addition, the Servicer must pay any release fees and expenses required by the Document Custodian.

## 66.21: Reporting requirements (06/30/11)

The Servicer must notify Freddie Mac via an Electronic Default Reporting (EDR) transmission within the first three Business Days of the month following the month that the Servicer initiated foreclosure. Use a default action code of 43 and provide the date foreclosure was initiated. For additional information on EDR requirements, refer to Section 64.10.

## 66.22: Managing the foreclosure process (10/01/11)

This section has been deleted.

Freddie Mac Single Family / Archive of Single-Family Seller/Servicer Guide / Archive of Single-Family Seller/Servicer Guide Published as of the Date of the Last 2012 Bulletin / Archive of Single-Family Seller/Servicer Guide, Volume 2, Published as of the Date of the Last 2012 Bulletin / Chs. 64-A69: Servicing Nonperforming Mortgages / Chapter 66: Foreclosure / 66.17: Foreclosing in the Servicer's name (06/13/12)

## 66.17: Foreclosing in the Servicer's name (06/13/12)

**ARCHIVED VERSION**

Changes to these requirements have been announced and will become effective on 06/01/13.

The Servicer must instruct the foreclosure counsel or trustee to process the foreclosure in the Servicer's name.

If an assignment of the Security Instrument to Freddie Mac has been recorded, then the Security Instrument must be assigned back to the Servicer before the foreclosure counsel or trustee files the first legal action. Refer to Section 66.18 for an explanation of first legal action.

To have the Security Instrument assigned back to the Servicer, the Servicer must submit a completed assignment with Form 105, Multipurpose Loan Servicing Transmittal, to Freddie Mac **(see Directory 9)**. Freddie Mac will execute the assignment and return it to the Servicer within seven Business Days of receiving the documents.

If the Servicer is foreclosing on a Mortgage registered with MERS[®], the Servicer must prepare and execute (using the Servicer's employee who is a MERS authorized "signing officer") an assignment of the Security Instrument from MERS to the Servicer and instruct the foreclosure counsel or trustee to foreclose in the Servicer's name and take title in Freddie Mac's name according to the requirements of Section 66.54. The Servicer must record the prepared assignment where required by State law. State mandated recordings are non-reimbursable by Freddie Mac, are not considered part of the Freddie Mac allowable attorney fees and must not be billed to the Borrower.

If the Mortgage is an FHA, Section 502 GRH or VA Mortgage, then the Servicer must follow FHA, Rural Housing Service (RHS) or VA guidelines to determine in whose name the foreclosure action should be brought.

If the Servicer is foreclosing on a property in the State of Oregon, the Servicer must destroy any unrecorded assignment to Freddie Mac no later than 10 days after the date the Servicer refers the foreclosure to its foreclosure attorney or trustee. If the Borrower subsequently reinstates his or her Mortgage, the Servicer does not need to prepare a new assignment to Freddie Mac. Refer to Section 22.14 for additional information on Freddie Mac's requirements for assignments of the Security Instrument.

# 67.5: Freddie Mac's rights (06/30/11)

Freddie Mac reserves the right, at its sole discretion, to:

1. Require the Servicer to submit copies of any and all records related to Freddie Mac's Mortgages
2. Require the Servicer to compensate Freddie Mac and hold Freddie Mac harmless for any loss, damage or expense, including court costs and attorney fees, that Freddie Mac sustains as a result of the Servicer's failure to comply with the Guide or that result from errors, omissions or delays by the Servicer or the Servicer's agent
3. Use Freddie Mac's own counsel or trustee, or require the Servicer to use Freddie Mac's designated counsel or trustee, or select the counsel or trustee to represent Freddie Mac in any matter related to the requirements contained in this chapter
4. Limit the amount of a reimbursement for attorney fees if those fees exceed the limits in Exhibit 57A, Approved Attorney Fees and Title Expenses, or the fees commonly charged for similar services in the area where the affected property is located
5. Deny the Servicer's request for reimbursement of expenses incurred as a result of Servicing Freddie Mac's Mortgages under the requirements of this chapter if the Servicer does not obtain Freddie Mac's prior written approval as required
6. Assess compensatory and other fees and pursue any other remedies, including, without limitation, repurchase of the Mortgage or indemnification of Freddie Mac, in accordance with the provisions of Section 55.1 and Chapter 78 if the Servicer fails to comply with the requirements contained in the Guide

# 67.6: Introduction (01/14/11)

This part of the chapter provides Servicers with Freddie Mac's requirements for Servicing Mortgages subject to bankruptcy proceedings or litigation. The Servicer must take appropriate action to protect Freddie Mac's interest during bankruptcy proceedings in which the Borrower is the debtor or when there is litigation of either a routine or non-routine nature.

# 67.7: Bankruptcy general requirements (10/01/11)

When the Servicer receives notice, or confirms information that a Borrower has filed a bankruptcy petition, at a minimum, the Servicer must:

1. Comply with all applicable laws and regulations, including working with debtor's pre-bankruptcy credit counseling agency on a debt management plan, if applicable

2. Obtain a copy of the Borrower's (debtor's) bankruptcy petition or other bankruptcy notice.

December 30, 2011 Single-Family Seller/Servicer Guide ("Guide") snapshot - not an official Guide version, for official Guide requirements see AllRegs web site.        Page 67-2

045

1. The Borrower was current on the Mortgage at the time the Borrower filed for bankruptcy protection, has remained current, and Freddie Mac did not approve a referral to bankruptcy counsel for special circumstances
2. The Servicer is required to use designated counsel but used other counsel
3. The Servicer incurred costs for reaffirmation agreements
4. The Servicer incorrectly reported or failed to report the bankruptcy through Electronic Default Reporting (EDR). See Section 67.9 for more details on how to report bankruptcies through EDR.

# 67.17: Litigation matters (01/14/11)

Litigation matters fall into two categories:
- Routine litigation
- Non-routine litigation

**(a)  Routine litigation**

This category includes civil actions in which the plaintiff has named Freddie Mac a party as a result of Freddie Mac's interest in the property. Routine litigation matters include, but are not limited to:

1. Foreclosures by junior lienholders
2. Sales of properties for nonpayment of taxes
3. Property partition actions
4. Eminent domain proceedings
5. Actions to acquire or enforce public utility easements and rights of way
6. Title claims covered by title insurance policies
7. Contested foreclosure actions in which the Borrower alleges a procedural defect in the foreclosure or a routine defense

**(b)  Non-routine litigation**

This category includes civil actions in which the plaintiff seeks to divest Freddie Mac of Freddie Mac's interest in a property, or to recover damages from Freddie Mac based on an allegation that Freddie Mac engaged in conduct or committed an act that caused injury or damage to the plaintiff. Non-routine litigation includes, but is not limited to, claims of a violation of statutory obligations (such as the Truth-in-Lending Act, fair lending practices, the Real Estate Settlement Procedures Act (RESPA) or the Equal Credit Opportunity Act) or allegations of misconduct or fraud that challenge the validity of the Mortgage. This category also includes class action litigation against the Servicer involving Freddie Mac's Mortgages or allegations which could ultimately affect Freddie Mac's interests.

046

# Chapter 53: Servicer Agreements

## 53.1: The Servicer to perform its obligations at its own expense (07/09/01)

The Servicer is responsible for performing the duties required under this Guide at its own expense and without cost or charge to Freddie Mac, except as provided in this chapter or elsewhere in this Guide. Any costs incurred by the Servicer may be charged to the Borrower only to the extent allowed under the terms of the Security Instrument and any applicable law.

## 53.1.1: Litigation counsel eligibility criteria (04/17/08)

Having a single law firm handle a Mortgage from foreclosure through eviction, including bankruptcy, increases efficiency and effectiveness by eliminating learning curve problems and delays caused by hand-offs and duplicative title work. Therefore, Servicers are required to ensure that counsel retained for Freddie Mac's Mortgage foreclosures, evictions, deeds-in-lieu of foreclosure and bankruptcies meet the following criteria:

■   The law firm retained as litigation counsel must have expertise in all four of the following areas: residential foreclosures, deeds-in-lieu of foreclosure, evictions and secured creditor representation in bankruptcy cases. For foreclosures or evictions on 2- to 4-unit properties, the law firm must also have experience in handling litigation matters on income-producing properties, including appointing receivers and enforcing assignment of rents.

■   The attorneys at the law firm who are actually handling Freddie Mac's cases must have a minimum of three years' experience in their particular areas of expertise. For example, an attorney handling a bankruptcy case must have at least three years' experience representing secured creditors in bankruptcy cases. In the event that the attorney handling a matter for Freddie Mac is unavailable, the firm must have an attorney with similar relevant experience who can substitute for the absent attorney without causing a delay.

In addition, when selecting a law firm to handle foreclosures and bankruptcies, Servicers should consider the reputation of the firm as well as whether the firm's attorneys, principals, or managers are, or have been, subject to:

■   Disciplinary action by any regulatory authority

■   Sanctions imposed by a court or licensing authority

December 30, 2011 Single-Family Seller/Servicer Guide ("Guide") snapshot - not an official Guide version, for official Guide requirements see AllRegs web site.     Page 53-1

047

- Legal action by any governmental or regulatory authority resulting from the firm's involvement in single-family loan level foreclosure, bankruptcy, eviction or property closing activities

- Legal action by consumers resulting from the firm's involvement in single-family loan level foreclosure, bankruptcy, eviction or property closing activities

Freddie Mac may, at its option, designate counsel to perform specific duties. Refer to Section 66.15 regarding selecting foreclosure counsel or trustee, also refer to Sections 67.10 through 67.15 regarding when to refer a bankruptcy case to counsel and our requirements for bankruptcy counsel, Sections 67.17 through 67.19 regarding litigation, and Exhibit 79, Designated Litigation Counsel/Trustee, which identifies our designated counsel.

## 53.1.2: Litigation communication between a Servicer and its foreclosure attorney/trustee and bankruptcy attorney (06/06/03)

A Servicer must maintain communication with the foreclosure attorney/trustee or bankruptcy attorney so that the Servicer can manage the foreclosure and bankruptcy case effectively. No less than one time per month, Servicer must require the attorney or trustee to report the status of the case, request any documentation needed from Servicer and report any relevant information to the Servicer. The Servicer must maintain this information in the Mortgage file or on its Mortgage system.

## 53.2: The Servicer to satisfy FHA, VA, RHS and MI requirements (05/21/04)

The Servicer must comply with and use its best efforts to obtain compliance by the original Borrower and any transferee of the Borrower with all requirements of the FHA, VA, RHS or MI for Mortgages serviced for Freddie Mac. References to FHA, VA, RHS and MI requirements are made elsewhere in this Guide, and some guidance is given as to the nature of these requirements. The Servicer must ensure that all applicable FHA, VA, RHS and MI requirements are satisfied, so that Freddie Mac receives full benefit of the FHA insurance or RHS guaranty, VA guaranty or Mortgage insurance.

December 30, 2011 Single-Family Seller/Servicer Guide ("Guide") snapshot - not an official Guide version, for official Guide requirements see AllRegs web site.        Page 53-2

048

- Continuing to work with the Borrower to resolve the delinquency through loss mitigation activities
- Handling the bankruptcy management activities specified in Chapter 67

Refer to Section 66.25 for information on connectivity and invoice processing systems and reimbursement of fees for use of such systems.

Nothing in the Guide is intended to prohibit a foreclosure or bankruptcy attorney or a trustee from assisting a Servicer by working with a Borrower to facilitate a reinstatement of the Mortgage or loss mitigation activity.

# 54.5 Prohibitions relating to Foreclosure and Bankruptcy Referrals; Freddie Mac remedies for non-compliance (03/23/11)

Freddie Mac requires that all foreclosure- and bankruptcy- related Servicing obligations, and all services and products purchased in connection with such Servicing obligations, be done in the most effective, efficient and cost-conscious manner.

**(a) Prohibition against charging for, contracting for, or making arrangements to receive benefits for Servicing obligations:**

A Servicer, whether acting directly or through an affiliate, service provider, vendor or outsourcing company, must not directly or indirectly:

- Charge Freddie Mac, the trustee or attorney for any foreclosure- or bankruptcy-related Servicing obligations, including expenses covered by the Servicing Spread; or

- Contract or make any arrangements with attorneys or trustees whereby the Servicer (or its affiliate, service provider, vendor or outsourcing company) receives, directly or indirectly, any financial or other benefits (including, but not limited to payments, the provision of employees, or free or discounted services or products) from the attorneys or trustees in connection with any Freddie Mac Mortgage.

Refer to Section 54.4 for additional information on Servicing obligations.

**(b) Prohibition against Servicers requiring attorneys and trustees to use specific vendors, services and/or products**

A Servicer must not, whether acting directly or through an affiliate, service provider, vendor or outsourcing company:

049

- Require an attorney or trustee to contract with or use a particular service provider, vendor or outsourcing company, or to use, or pay for, a particular service or product;

- Refuse to refer a file to an attorney or trustee because the attorney or trustee chooses not to contract with or use a particular service provider, vendor or outsourcing company, or chooses not to use, or pay for, a particular service or product; or

- Charge an attorney or trustee for any aspect of the file referral or management process, including, but not limited to, the use of connectivity or invoice processing systems (e.g., licensing or subscription fees, "click" charges, or any other payment) in order for an attorney or trustee to provide services necessary to prosecute the foreclosure or bankruptcy case.

However, a Servicer may require an attorney or trustee to use certain connectivity or invoice processing systems provided that the attorney or trustee is not required to pay for the use of, or access to, such systems.

Refer to Section 66.25 for information about use of, and reimbursement for, connectivity and invoice processing systems.

**(c) Prohibition against service providers, vendors, outsourcing companies or others influencing selection of foreclosure counsel and trustees**

The Servicer, and not a service provider, vendor or outsourcing company assisting the Servicer in Servicing defaulted Mortgages, must select the attorneys and trustees to work on Freddie Mac Mortgages, and Servicers must not permit service providers, vendors, outsourcing companies, or others to participate in or influence, in any way, the Servicer's selection process.

**(d) Remedies for non-compliance**

If a Servicer fails to comply with the provisions of Section 54.5(a), (b) or (c), Freddie Mac may, in its sole discretion and in addition to any other remedies specified in the Guide or the Servicer's other Purchase Documents:

- Refuse to reimburse the Servicer for any attorney or trustee fees and costs;

- Offset the entire legal fee from future foreclosure expenses or seek reimbursement of the entire legal fee with interest, if Freddie Mac has already reimbursed the Servicer for the costs involved in the particular foreclosure or bankruptcy;

- Require the Servicer to reimburse the attorney, trustee or Freddie Mac for any prohibited payments or other financial benefits;

■ Prohibit the Servicer from contracting, directly or through any service provider, vendor or outsourcing company, with an attorney or trustee with respect to products or services ancillary to a foreclosure or bankruptcy case; and/or

■ Prohibit the Servicer from contracting with the service provider, vendor or outsourcing company involved in the prohibited activities with respect to Freddie Mac Mortgages.

December 30, 2011 Single-Family Seller/Servicer Guide ("Guide") snapshot - not an official Guide version, for official Guide requirements see AllRegs web site.   Page 54-5

051

notify Freddie Mac **(see Directory 5)** of the situation by submitting Form 105, Multipurpose Loan Servicing Transmittal, in addition to the following:

1.  The number and ages of children less than seven years old residing in the property
2.  A copy of the citation
3.  Copies of documentation related to a lead-based paint violation

After reviewing the documentation, Freddie Mac will provide the Servicer with instructions on the course of action to take.

# 66.15: How to select foreclosure counsel or trustee (10/01/11)

The Servicer is responsible for selecting attorneys and trustees, and its selection decisions must not be influenced by inappropriate considerations. Refer to Section 54.5 for additional information on prohibitions relating to foreclosure and bankruptcy referrals.

When making foreclosure and bankruptcy referrals, the Servicer must ensure that it is diversifying referrals by engaging in a relationship with at least two law firms, or trustees, in higher-volume States (States in which the Servicer has 250 or more Freddie Mac foreclosure and bankruptcy referrals in a calendar year).

In higher-volume States, the Servicer must take one of the following approaches to diversifying foreclosure and bankruptcy referrals:

1.  The Servicer must make foreclosure and bankruptcy referrals on Mortgages it services on behalf of Freddie Mac to at least two law firms or trustees, ensuring that at least a substantial minority of the referrals are made to the law firm or trustee that receives the fewest referrals, or

2.  The Servicer must make foreclosure and bankruptcy referrals to at least two law firms or trustees, with respect to its entire servicing portfolio, ensuring that at least a substantial minority of the referrals are made to the law firm or trustee that receives the fewest referrals.

If the Servicer fails to diversify its foreclosure and bankruptcy referrals in a higher-volume State, Freddie Mac may deny the Servicer's foreclosure and bankruptcy fees and costs in that State and assess the Servicer a compensatory fee of $500.

In addition, all Servicers must have a contingency plan in place, either in the form of a stand-alone document or incorporated into policies and procedures, to redirect new foreclosure and bankruptcy referrals in the event a law firm or trustee the Servicer is using is no longer able to accept new referrals.

December 30, 2011 Single-Family Seller/Servicer Guide ("Guide") snapshot - not an official Guide version, for official Guide requirements see AllRegs web site.          Page 66-10

052

The Servicer must use the same entity that it retains to represent it in a bankruptcy action on a Mortgage to process the foreclosure.

The foreclosure counsel or trustee must be free from any conflict of interest with the Borrower.

**(a)  Foreclosure on a property in a State where Freddie Mac has designated counsel or trustees**

Freddie Mac has designated counsel or trustees in the following selected States:

1.  Arizona
2.  California
3.  Connecticut
4.  District of Columbia
5.  Florida
6.  Georgia
7.  Illinois
8.  Indiana
9.  Kentucky
10. Maryland
11. Massachusetts
12. Michigan
13. Minnesota
14. Nevada
15. New Jersey
16. New York
17. North Carolina
18. Ohio
19. Pennsylvania
20. South Carolina
21. Texas
22. Virginia
23. Washington
24. West Virginia

The Servicer must use one of Freddie Mac's designated counsel or trustees for the foreclosure (unless the Mortgage on which the Servicer is foreclosing was sold to Freddie Mac with recourse or it is an FHA Mortgage, VA Mortgage, or Section 502 GRH Mortgage) if the Mortgage is secured by a:

1.  2- to 4-unit property in Arizona, California, Connecticut, the District of Columbia, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, Virginia, Washington or West Virginia

December 30, 2011 Single-Family Seller/Servicer Guide ("Guide") snapshot - not an official Guide version, for official Guide requirements see AllRegs web site.     Page 66-11

053

2. A Manufactured Home in Arizona, California, Connecticut, the District of Columbia, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, Virginia, Washington or West Virginia

3. 1- to 4-unit property in Texas and the Mortgage was a Texas Equity Section 50(a)(6) Mortgage

Additionally, Freddie Mac may require the Servicer to use Freddie Mac's designated counsel or trustees on 1-unit properties in one or more of the selected States based on Freddie Mac's evaluation of the Servicer's foreclosure performance. Freddie Mac will notify the Servicer in writing if the Servicer must use designated counsel or trustees in any of the selected States.

Refer to Exhibit 79, Designated Litigation Counsel/Trustee, which is available at **http://www.freddiemac.com/service/msp/desig_counsel.html**, for a listing of the designated counsel or trustees in the applicable States. Even if the Servicer is not required to use designated counsel or trustees, the Servicer may elect to use them for foreclosures or bankruptcies in any of the States listed in Exhibit 79. Because the Servicer must use the same entity for all related legal actions, if it retained bankruptcy counsel that is not a designated counsel, the Servicer must not refer the foreclosure to one of Freddie Mac's designated counsel.

**(b) Foreclosure on a property in a State where Freddie Mac does not have designated counsel or trustees or when the Servicer is not required to use designated counsel or trustees**

Unless the Servicer uses Freddie Mac's designated counsel or trustees as required in Section 66.15(a), the Servicer must select either a foreclosure counsel or trustee, as appropriate under applicable law, to represent the Servicer in the foreclosure action.

The Servicer must use the same entity to conduct a foreclosure and any bankruptcy pertaining to a particular Mortgage. In those States where it may be common practice to use a trustee to conduct a foreclosure, the trustee must be associated with a bankruptcy law firm meeting the criteria specified in Section 53.1.1. Any bankruptcy filed on a Mortgage in foreclosure being processed by a trustee, must be handled by the trustee's associated bankruptcy law firm. The trustee and the associated bankruptcy law firm must transfer information regarding the case seamlessly and must not in any way increase the bankruptcy or State foreclosure time lines.

The foreclosure counsel or trustee the Servicer chooses must meet the eligibility requirements in Section 53.1.1.

054

When selecting the foreclosure counsel or trustee, the Servicer must base the selection on the prior performance of the foreclosure counsel or trustee in the following areas:

1.   Completing foreclosures
2.   Delivering clear and marketable title to Freddie Mac
3.   Facilitating reinstatements and workouts with Borrowers
4.   Resolving litigation delays (foreclosure counsel only)

The Servicer must communicate Freddie Mac's State foreclosure time line expectations and Freddie Mac's allowable fee schedule to the foreclosure counsel or trustees whom the Servicer selects. The Servicer must also communicate to the attorney or trustee that if they pay the Servicer or its vendor, either directly or indirectly, for any of the Servicing obligations covered by the Servicing Spread or any expenses itemized in Section 71.24, Freddie Mac may preclude the attorney or trustee who pays any such expenses on Freddie Mac Mortgages from processing future foreclosures or bankruptcies for Freddie Mac.

# 66.15.1: Compensatory fee for failure to use designated counsel or trustee when required (06/30/11)

If the Servicer is required to use Freddie Mac's designated counsel or trustee for a foreclosure and the Servicer uses another counsel or trustee, Freddie Mac will assess the Servicer $500 and Freddie Mac will not reimburse the Servicer for any foreclosure expenses that it incurs. Additionally, Freddie Mac may assess the compensatory fees described in Section 66.33, if applicable.

# 66.15.2: Foreclosure counsel and trustee fees (10/01/11)

Foreclosure counsel or trustee fees must be reasonable and comparable to those customarily charged in the area where the property is located. Exhibit 57A, Approved Attorney Fees and Title Expenses, provides Freddie Mac's expense limits for attorney fees. The Servicer must obtain Freddie Mac's written approval prior to incurring attorney fees in excess of the expense limits. Refer to Section 71.11 for details on obtaining Freddie Mac's written pre-approval for exceeding the expense limits in Exhibit 57A. The attorney fees in Exhibit 57A do not apply to Mortgages referred to designated counsel. Servicers must pay designated counsel for the fees they submit on the 104DC claim; Freddie Mac will reimburse the Servicer for those amounts submitted on the 104DC claim.

December 30, 2011 Single-Family Seller/Servicer Guide ("Guide") snapshot - not an official Guide version, for official Guide requirements see AllRegs web site.                    Page 66-13

055

# 66.23: Managing the foreclosure process (10/01/11)

The requirements necessary to manage a foreclosure are detailed in Sections 66.24 through 66.36.

| Topic | Section(s) |
| --- | --- |
| Managing the foreclosure process | 66.24-66.29 |
| Monitoring the State foreclosure time lines | 66.30-66.32 |
| Maintaining the property | 66.34-66.36 |

# 66.24: Servicer's responsibility to work with foreclosure counsel or trustee (10/01/11)

Once the Servicer has initiated foreclosure on a Mortgage, the Servicer must work with the foreclosure counsel or trustee and to:

1. Identify any viable alternatives to foreclosure
2. Monitor the progress of the foreclosure
3. Facilitate prompt and efficient completion of the foreclosure proceedings and acquisition of clear and marketable title, including conducting the foreclosure in a way that will expedite an eviction of the tenant or Borrower

# 66.25: Providing information to the foreclosure counsel or trustee; Servicer use of connectivity and invoice processing systems (04/01/11)

**(a) Responsibility to provide information to foreclosure counsel or trustee**

For any Mortgage that the Servicer refers for foreclosure, the Servicer must provide complete written reinstatement or payoff figures to the attorney, trustee, workout specialist or outsourcing vendor requesting the information. This information must be provided within two Business Days of the date on which a written request is received. The Servicer may provide the written reinstatement or payoff figures via a paper document, facsimile or e-mail.

If the foreclosure counsel or trustee requests additional documentation from the Servicer (such as certificates of judgment or proofs of claim) while a case is pending, the Servicer must provide the additional documentation within two Business Days of receiving the request.

**(b) Connectivity and invoice processing systems**

A Servicer, whether acting directly or through any vendor, service provider or outsourcing company, may employ electronic monitoring, management, reporting or information and document delivery processes technology, referred to here as a "Connectivity System," and an invoice processing system as outlined below.

December 30, 2011 Single-Family Seller/Servicer Guide ("Guide") snapshot - not an official Guide version, for official Guide requirements see AllRegs web site.    Page 66-19

056

**Connectivity System**

A Servicer may employ a Connectivity System to assist with fulfilling Servicing obligations such as:

- Packaging and referring foreclosure and bankruptcy cases to attorneys and trustees;
- Communicating information and delivering documents between the Servicer and its attorneys and trustees as well as any other third parties requiring access to the Connectivity System; and
- Managing and monitoring foreclosure and bankruptcy cases.

If a Servicer uses a Connectivity System:

- Freddie Mac will reimburse a Servicer for the actual cost of the connectivity fee up to the maximum expense limit specified in Exhibit 57, 1- to 4- Unit Property Approved Expense Amounts;
- The Servicer must provide all attorneys and trustees use of and access to the identical Connectivity System;
- The Servicer must permit, or continue to permit, attorneys and trustees to integrate their own technology systems with the Connectivity System at no cost to the attorneys or trustees; and
- The Servicer must not pass on any Connectivity System related charges to the Borrower or the attorney or trustee.

**Invoice processing system**

A Servicer may employ an invoice processing system for managing the submission and payment of invoices.

If a Servicer, whether acting directly or through a vendor or outsourcing company, processes attorney or trustee invoices electronically:

- Freddie Mac will reimburse the Servicer for the actual cost of the invoicing fee up to the maximum expense limits specified in Exhibit 57; and
- The Servicer must not pass on any invoice processing related charges to the Borrower or the attorney or trustee.

The amounts specified in Exhibit 57 for connectivity and invoice processing systems are the maximum amounts for which a Servicer may seek reimbursement for the life of the default (i.e., the duration of the foreclosure, including any related bankruptcy referral).

For example, if a Servicer has already referred a file to foreclosure and it then becomes necessary to take action with respect to a bankruptcy related to such Mortgage, or if a Servicer has already referred a file for bankruptcy and foreclosure has commenced following the bankruptcy referral, the Servicer may be reimbursed only for one connectivity fee. Likewise in this scenario, if the Servicer is using an

December 30, 2011 Single-Family Seller/Servicer Guide ("Guide") snapshot - not an official Guide version, for official Guide requirements see AllRegs web site.   Page 66-20

057

invoice processing system, then the Servicer may only seek reimbursement for one invoicing fee associated with the foreclosure and for one invoicing fee associated with the bankruptcy during the life of the default.

# 66.25.1: Monthly foreclosure reporting (06/30/11)

Once the Servicer has reported that foreclosure is initiated on a Mortgage (refer to Section 66.21), the Servicer must report a default action code 68 (Date of first legal action) with the corresponding date of the first legal action (as defined in Section 66.18). The Servicer must continue to report that the Mortgage is in foreclosure in its monthly Electronic Default Reporting (EDR) transmission using a default action code of 43 (Referred to foreclosure) until:

■ The Servicer reports the results of a foreclosure sale or the execution of a deed-in-lieu of foreclosure, or
■ The Servicer reports that the Mortgage is fully reinstated or paid off, or
■ A workout is completed

For additional information on EDR requirements, refer to Section 64.10.

# 66.26: Responding to and reporting Borrower defenses (06/30/11)

**(a) Responding to Borrower defenses**

The Servicer must respond to legal actions, such as bankruptcy and contested foreclosure, brought by the Borrower during the foreclosure. Refer to Chapter 67 for specific requirements for handling bankruptcy matters.

**(b) Reporting a bankruptcy filing**

If the Borrower files bankruptcy during the foreclosure process, the Servicer must report the bankruptcy filing to Freddie Mac. The Servicer must submit this notification via an Electronic Default Reporting (EDR) transmission within the first three Business Days of the month following the month that the bankruptcy was filed. The Servicer must include the date of the filing and the applicable default action code to indicate the bankruptcy chapter number, as shown below.

| Bankruptcy Chapter | Default Action Code |
| --- | --- |
| Chapter 12 bankruptcy petition filed | 59 |
| Chapter 7 bankruptcy petition filed | 65 |

December 30, 2011 Single-Family Seller/Servicer Guide ("Guide") snapshot - not an official Guide version, for official Guide requirements see AllRegs web site.          Page 66-21

058

# 67.15: Selecting bankruptcy counsel (10/01/11)

The Servicer must diversify foreclosure and bankruptcy referrals in higher-volume States (States in which the Servicer has 250 or more Freddie Mac foreclosure and bankruptcy referrals in a calendar year). In addition, a Servicer must have a contingency plan to redirect new foreclosure and bankruptcy referrals in the event a law firm or trustee that a Servicer is using is no longer able to accept new referrals **(see Section 66.15)**.

Bankruptcy counsel must be free from any conflict of interest with the Borrower.

Servicers must use the same entity retained in a foreclosure action on a Mortgage to represent the Servicer in a subsequent bankruptcy. (For example, if the Servicer retained foreclosure counsel that is not a designated counsel, then the Servicer must use that same law firm for any bankruptcy. Servicers must not refer the bankruptcy to one of Freddie Mac's designated counsel.) Likewise, if at the dismissal or completion of the bankruptcy the Mortgage progresses to foreclosure, the Servicer must use the same law firm to handle the foreclosure as it used for the bankruptcy.

If the Servicer does not use the same entity representing the Servicer in a foreclosure action to represent it in a subsequent bankruptcy, Freddie Mac may, in its sole discretion, elect not to reimburse the Servicer. See Chapter 71 for more details on reimbursement for bankruptcy costs and fees.

If a Servicer determines that special circumstances exist that require case management by counsel on a current Mortgage, then the Servicer must obtain Freddie Mac's prior written approval to obtain counsel in accordance with the requirements in Section 53.1.1 and incur the legal expense by submitting a request for pre-approval via the Reimbursement System.

**(a)  Selecting bankruptcy counsel in a State where Freddie Mac has designated counsel**

Servicers must use Freddie Mac's designated counsel for the bankruptcy (unless the Mortgage on which the bankruptcy was filed was sold with recourse or it is an FHA Mortgage, VA Mortgage, or Section 502 GRH Mortgage) if the Mortgage is secured by a:

1.  2- to 4-unit property in Arizona, California, Connecticut, the District of Columbia, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, Virginia, Washington or West Virginia

2.  Manufactured Home in Arizona, California, Connecticut, the District of Columbia, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, Virginia, Washington or West Virginia

December 30, 2011 Single-Family Seller/Servicer Guide ("Guide") snapshot - not an official Guide version, for official Guide requirements see AllRegs web site.        Page 67-11

059

3.  1- to 4-unit property in Texas and the Mortgage was a Texas Equity Section 50(a)(6) Mortgage

4.  Servicers must also use designated bankruptcy counsel in a designated counsel State for a Mortgage regardless of property type if Freddie Mac has sent written notification to the Servicer of such a requirement

Refer to Section 66.15.1 regarding compensatory fees for failure to use designated counsel when required.

**(b) Selecting bankruptcy counsel in a State where Freddie Mac does not have designated counsel**

Servicers must choose bankruptcy counsel that meet the eligibility requirements in Section 53.1.1. In addition, Servicers must base the selection on the prior performance of the bankruptcy counsel in the following areas:

1.  Timely filings of motion for relief

2.  Length of time to obtain automatic stay or case dismissal

3.  Facilitation of loss mitigation options where appropriate

If at the dismissal or completion of the bankruptcy the Mortgage progresses to foreclosure, the Servicer must use the same law firm to handle the foreclosure that was used for the bankruptcy. However, in those States where it may be common practice to use a trustee to conduct a foreclosure, the Servicer must use a trustee that is associated with the law firm that handled the bankruptcy.

# 67.16: Reimbursement of expenses related to a bankruptcy (06/30/11)

When legally permissible, the Servicer must attempt to obtain payment of the attorney fees and costs resulting from the bankruptcy proceedings directly from the Borrower and/or the bankruptcy court.

Unless a Servicer uses one of Freddie Mac's designated counsel, the Servicer must obtain Freddie Mac's written pre-approval for any fees in excess of the fees listed in Exhibit 57A, Approved Attorney Fees and Title, by submitting a request for pre-approval via the Reimbursement System.

Freddie Mac will not reimburse Servicers for attorney fees or legal costs on any bankruptcy case if:

December 30, 2011 Single-Family Seller/Servicer Guide ("Guide") snapshot - not an official Guide version, for official Guide requirements see AllRegs web site.          Page 67-12

060

# **Exhibit 6**

**Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Freddie Mac - Seller/Servicer Relationship / Series 1000: General Contract Terms / Topic 1100: The Guide / Chapter 1101: The Guide / 1101.2: Legal effect of the Guide and other Purchase Documents (03/02/16)**

## 1101.2: Legal effect of the Guide and other Purchase Documents (03/02/16)

### (a)   Status as a contract

#### (i)   Effect of the Guide and other Purchase Documents

The Guide governs the business relationship between a Seller/Servicer and Freddie Mac relating to the sale and Servicing of Mortgages. Each Seller/Servicer must complete and submit a Form 16SF, Annual Eligibility Certification Report, that certifies that the Seller/Servicer has access to the Electronic version of the Guide as an Electronic Record, as those terms are defined in Chapter 1401, and is in compliance with all requirements of the Purchase Documents.

In connection with the sale of Mortgages to Freddie Mac, the Seller/Servicer agrees that each transaction is governed by the Guide, the applicable Purchase Contract and all other Purchase Documents.

A Seller/Servicer must service all Mortgages that the Seller/Servicer has sold to Freddie Mac and/or has agreed to service for Freddie Mac in accordance with the standards set forth in the Seller/Servicer's Purchase Documents. All of a Seller/Servicer's obligations to service Mortgages for Freddie Mac are considered to constitute, and must be performed pursuant to a unitary, indivisible master Servicing contract, and the Servicing obligations assumed pursuant to any contract to sell Mortgages to Freddie Mac are deemed to be merged into, and must be performed pursuant to, such unitary, indivisible master Servicing contract.

A Seller/Servicer acknowledges that Freddie Mac's agreement to purchase Mortgages from the Seller/Servicer pursuant to any individual Purchase Contract is based upon the Seller/Servicer's agreement that the Mortgages purchased will be serviced by the Seller/Servicer pursuant to the unitary, indivisible master Servicing contract. The Seller/Servicer agrees that any failure to service any Mortgage in accordance with the terms of the unitary, indivisible master Servicing contract, or any breach of any of the Seller/Servicer's obligations under any aspect of the unitary, indivisible master Servicing contract, shall be deemed to constitute a breach of the entire contract and shall entitle Freddie Mac to terminate all or a portion of the Servicing. The termination of a portion of the Servicing shall not alter the unitary, indivisible nature of the Servicing contract.

If a Servicer who services Mortgages for Freddie Mac is not also the Seller of the Mortgages to Freddie Mac, the Servicer must agree to service Mortgages for Freddie Mac by separate agreement, which incorporates the applicable Purchase Documents. In such case, the separate agreement shall be deemed to be one of the "Purchase Documents" that constitute the unitary, indivisible master Servicing contract.

In addition, in certain cases, a Seller and/or Servicer who uses certain Freddie Mac services will, by virtue of the provisions of the Guide, be deemed to have agreed upon certain terms and conditions related to such services and their use.

062

**(ii)   Amendments to the Guide**

Freddie Mac may, in its sole discretion, amend or supplement the Guide from time to time. Amendments to the Guide may be a paper Record or an Electronic Record, as those terms are defined in Chapter 1401. The Guide may not be amended orally. Freddie Mac may amend the Guide by:

- Publishing Bulletins, which apply to all Sellers/Servicers, or
- Entering into a Purchase Contract or other written or Electronic agreement, which applies to the Seller/Servicer that is a party to the Purchase Contract or agreement

Bulletins expressly amend, supplement, revise or terminate specific provisions of the Guide. An amendment, supplement, revision or termination of a provision in the Guide is effective as of the date specified by Freddie Mac in the applicable Bulletin.

A Purchase Contract or other written agreement or Electronic agreement amends or supplements specific provisions of the Guide for purposes of such Purchase Contract or other agreement, as applicable. Such amendments or supplements to the Guide are effective as of the date specified in the Purchase Contract or other agreement. See Section 1501.2(d) for information about how amendments and supplements to the Guide amend or otherwise apply to a Seller's Purchase Contracts and other Purchase Documents.

**(iii)   Publication of Guide and Bulletins**

The Guide is posted on the AllRegs® web site of Ellie Mae, Inc., which operates the AllRegs brand ("AllRegs") and which posts the Guide under license from and with the express permission of Freddie Mac. AllRegs is the exclusive third-party electronic publisher of the Guide. Seller/Servicers also can access the Guide on the AllRegs web site by using the link on FreddieMac.com.

Freddie Mac makes no representation or warranty regarding availability, features or functionality of the AllRegs web site.

By using the web site, Seller/Servicers acknowledge and agree (individually and on behalf of the entity for which they access the Guide) neither Freddie Mac nor AllRegs shall be liable to them (or the entity for which they access the Guide) for any losses or damages whatsoever resulting directly or indirectly from Freddie Mac's designation of the Guide as found on the AllRegs web site as the official Electronic version, as an Electronic Record, and AllRegs expressly disclaims any warranty as to the results to be obtained by Seller/Servicers (and the entity for which Seller/Servicers access the Guide) from use of the AllRegs web site, and AllRegs shall not be liable to Seller/Servicers (and the entity for which Seller/Servicers access the Guide) for any damages arising directly or indirectly out of the use of the AllRegs web site by them (and the entity for which they access the Guide).

Bulletins are published on AllRegs and FreddieMac.com. A Seller/Servicer with an AllRegs subscription may receive notice of Bulletins directly from AllRegs. If a Seller/Servicer does not receive notice of Bulletins through AllRegs, the Seller/Servicer must take the steps necessary to receive the applicable Freddie Mac Single-Family Update e-mails, which will notify Seller/Servicer of Bulletin publications. A Seller/Servicer's failure to take the appropriate steps to receive notices of Bulletins does not relieve the Seller/Servicer of its legal obligations to comply with the terms of the Bulletins.

**(iv)  Effective Date**

The effective date of each section of the Guide is located at the beginning of each section, to the right of the section number and name.

**(b)  Reliance**

By entering into a Purchase Contract or into the unitary, indivisible master Servicing contract with Freddie Mac, the Seller/Servicer acknowledges that it is not relying upon Freddie Mac or any employee, agent or representative thereof, in making its decision to enter into the contract and that it has relied upon the advice and counsel of its own employees, agents and representatives as to the regulatory, business, corporate, tax, accounting and other consequences of entering into and performing its obligations under a Purchase Contract or the unitary, indivisible master Servicing contract.

**(c)  Assignments; security interests**

A Seller/Servicer shall not, in whole or in part, assign, sell, convey, hypothecate, pledge or in any other way or transfer, conditionally or otherwise, or grant a security interest in, any of its obligations, rights or interest under any Purchase Contract or under the unitary, indivisible master Servicing contract, including any of its rights or obligations under this Guide or any of the Purchase Documents, without Freddie Mac's prior written consent. Any purported or attempted assignment or transfer of, or grant of a security interest in, any such obligations, rights or interest is prohibited and shall be null and void.

Freddie Mac has the unconditional right to sell, assign, convey, hypothecate, pledge or in any way transfer, in whole or in part, its rights and interest under the Purchase Documents with respect to any Mortgage it purchases. Freddie Mac has the right to direct the Servicer to send remittances, notices, reports and other communications to any party designated by Freddie Mac and may designate any such party to exercise any and all of Freddie Mac's rights hereunder.

**(d)    Notice**

**(i)     Seller/Servicer notices to Freddie Mac**

Except as otherwise provided in the Guide or other Purchase Documents, any communication, advice, consent, document, notice or direction given, made, sent or withdrawn by the Seller/Servicer pursuant to the Purchase Documents must be in writing and will be deemed to have been duly given to and received by Freddie Mac on the day such communication, advice, consent, document, notice or direction is actually received by Freddie Mac at the address specified below:

Address: In writing to Freddie Mac **(see Directory 1)** by first class mail

Other addresses may be substituted for the above upon notice of the substitution.

**(ii)    Freddie Mac notices to Seller/Servicer**

Any communication, advice, consent, document, notice or direction given, made, sent or withdrawn by Freddie Mac pursuant to the Purchase Documents may be in writing or may be in electronic form in accordance with Chapter 1401. Such notice will be deemed to have been duly given to the Seller/Servicer on the date such communication, advice, consent, document, notice or direction is:

- Received in writing by first class mail by the Seller/Servicer at the address set forth in the Purchase Documents, or
- Received in electronic form (e-mail) as an Electronic Record by the Seller/Servicer's computer information processing system at its Internet e-mail address provided to Freddie Mac by the Seller/Servicer, or
- Received in electronic form (facsimile) as a Record or Electronic Record by the Seller/Servicer's electronic facsimile machine or system at the facsimile telephone number provided to Freddie Mac by the Seller/Servicer

Other addresses may be substituted for the above upon notice of the substitution.

**(e)    Severability**

If any provision of this Guide shall be held invalid, the legality and enforceability of all remaining provisions shall not in any way be affected or impaired thereby, and this Guide shall be interpreted as if such invalid provision were not contained herein.

**(f)    Defined terms**

Initial capitalization of words in the Guide generally denotes terms that are defined in (i) the Glossary, (ii) the chapter in which capitalized words appear, or (iii) an expressly referenced chapter.

**(g)    Construction of the Guide**

This Guide shall not be construed against Freddie Mac as being the drafter hereof.

**(h)   Entire agreement**

This Guide, including the exhibits attached to the Guide and all Purchase Documents incorporated by reference in the Guide, constitutes the entire understanding between Freddie Mac and the Seller/Servicer and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether oral or written or Electronic, with respect to the transactions contemplated by the Guide.

**(i)   Governing law**

This Guide shall be construed, and the rights and obligations of Freddie Mac and the Seller/Servicer hereunder determined, in accordance with the laws of the United States. Insofar as there may be no applicable precedent, and insofar as to do so would not frustrate any provision of this Guide or the transactions governed thereby, the laws of the State of New York shall be deemed reflective of the laws of the United States.

**(j)   Copyright**

The Guide (including related supplements and Bulletins) and Industry Letters are copyrighted. Limited permission to reproduce the Guide is granted to Seller/Servicers strictly for their own use in originating and selling Mortgages to, and in Servicing Mortgages for, Freddie Mac. No part of the Guide may be reproduced for any other reason (in any form or by any means) without the express written permission of Freddie Mac. Requests for such permission to reproduce the Guide must be sent to Freddie Mac **(see Directory 1)**.

Requests will be reviewed and answered by Freddie Mac in the ordinary course of business.

Freddie Mac reserves the right to revoke permission to reproduce the Guide upon 60 days' notice to any and all Seller/Servicers. Under no circumstances will Freddie Mac permit the Guide to be reproduced by any Electronic or mechanical means, including, but not limited to, reproduction in, or as a component of, any information storage and retrieval system.

**(k)   Headings and design features**

Headings and design features are written for convenience of reference only and do not constitute a part of this Purchase Document.

> **Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Freddie Mac - Seller/Servicer Relationship / Series 1000: General Contract Terms / Topic 1200: General Freddie Mac Policies / Chapter 1201: General Freddie Mac Policies / 1201.9: The Mortgage file, Mortgage data and related records (03/02/16)**

## 1201.9: The Mortgage file, Mortgage data and related records (03/02/16)

### (a)   Ownership

All documents in the Mortgage file, all data related to Mortgages owned or guaranteed by Freddie Mac to which the Servicer obtains access in connection with any agreement with Freddie Mac, including, without limitation, data in the documents in the Mortgage file (collectively, Mortgage data) and all other documents and records related to the Mortgage of whatever kind or description (whether prepared or originated by the Servicer or others, or whether prepared or maintained or held by the Servicer or others acting for and on behalf of the Servicer), including all current and historical computerized data files, will be, and will remain at all times, the property of Freddie Mac. All of these records and Mortgage data in the possession of the Servicer are retained by the Servicer in a custodial capacity only.

### (b)   Permitted use of Mortgage data

The Servicer may use these records and Mortgage data only for the following purposes:

- Servicing Mortgages (and, in compliance with the provisions of the Guide, retaining subservicers to service Mortgages) on behalf of, and in the interest of, Freddie Mac

- As background information for the Servicer's use related to marketing or cross-selling of the Servicer's own primary market products and services in compliance with applicable laws, provided that such marketing and cross-selling does not involve disclosure of these records or Mortgage data to any third parties, other than vendors assisting the Servicer in its marketing activities who are themselves bound by these requirements

- As necessary to enable a vendor to provide analytic services to the Servicer with respect to the Servicer's Servicing portfolio, for the Servicer's internal use only, provided the vendor is bound by these requirements, and

- As necessary to enable the Servicer to comply with its obligations under applicable law including, without limitation, any disclosures required in connection with audits by regulatory agencies with jurisdiction over the Servicer's operations

Except as expressly authorized by Freddie Mac in writing, Servicers may not use or disclose, or authorize or permit third parties to use or disclose, these records or Mortgage data for any other purpose, including, without limitation, resale or licensing of Mortgage data, either alone or with other data. See Section 8101.8, for additional requirements related to confidentiality.

**Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Freddie Mac - Seller/Servicer Relationship / Series 1000: General Contract Terms / Topic 1300: General Responsibilities of the Seller/Servicer / Chapter 1301: General Responsibilities of the Seller/Servicer / 1301.10: Survival of warranties; remedies (03/02/16)**

## 1301.10: Survival of warranties; remedies (03/02/16)

The warranties and representations in the Purchase Documents for any Mortgage purchased by Freddie Mac survive payment of the purchase price by Freddie Mac. The warranties and representations are not affected by any investigation made by, or on behalf of, Freddie Mac, except when expressly waived in writing by Freddie Mac.

When any party has purchased a Mortgage from Freddie Mac that Freddie Mac previously purchased from a Seller, Freddie Mac may exercise any rights or remedies at law or in equity on behalf of the party to the extent that the party does not affirmatively do so. Freddie Mac may also exercise its discretion to disqualify or suspend a Seller or a Servicer pursuant to Chapter 2301 or Section 9102.1.

For each Mortgage purchased by Freddie Mac, the Seller and the Servicer agree that Freddie Mac may, at any time and without limitation, require the Seller or the Servicer, at the Seller's or the Servicer's expense, to make such endorsements to and assignments and recordations of any of the Mortgage documents so as to reflect the interests of Freddie Mac and/or its successors and assigns.

068

**Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Freddie Mac - Seller/Servicer Relationship / Series 3000: Risk Management and Remedies / Topic 3300: Mortgage File Contents and Retention / Chapter 3302: Mortgage File Retention / 3302.5: Transfer of file custody; security of file information (03/02/16)**

## 3302.5: Transfer of file custody; security of file information (03/02/16)

Freddie Mac may at any time require the Servicer to deliver the following documents to a Document Custodian approved by Freddie Mac or a transferee designated by Freddie Mac:

- Any original Note, Security Instrument, assignment and modifying instrument still in the Servicer's custody
- Any Mortgage file, document within a Mortgage file or other related documents and records in the Servicer's or its Document Custodian's custody, whether maintained as originals or as copies in accordance with Section 3302.2

The Servicer may, without Freddie Mac's prior approval, entrust custody of all or part of the Mortgage file to the Document Custodian holding Notes and assignments under Section 2202.2. When requested, the Servicer must be able to identify to Freddie Mac those file items held by the Document Custodian and document to Freddie Mac the Document Custodian's acknowledgment that such file items:

- Are Freddie Mac's property
- Will be maintained by the Document Custodian according to standards at least equal to those set in this chapter
- Will be maintained in such a way as to ensure the security and confidentiality of the information; protect against anticipated threats or hazards to the security or integrity of the information; and protect against unauthorized access to or use of such information
- Will be surrendered to Freddie Mac at any time Freddie Mac may request them

The Servicer agrees to indemnify Freddie Mac and hold Freddie Mac harmless for any loss, damage or expense (including court costs and reasonable attorney fees) that Freddie Mac may incur as a result of the Document Custodian's holding all or part of the Mortgage file.

The Servicer must maintain a copy (in a form allowable under Section 3302.2) of any original document that has been entrusted to the Document Custodian for safekeeping. If all or part of the Mortgage file is held by the Servicer's Document Custodian, the Servicer agrees to recover from the Document Custodian (at the Servicer's expense) and provide to Freddie Mac (at the place and within the time frame specified by Freddie Mac) any Document Custodian-held original document requested by Freddie Mac for the postfunding quality control detailed in Chapter 3301 or in conjunction with a Freddie Mac desktop or on-site review of the Servicer's Servicing operations.

069

**Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Selling / Series 6000: Selling and Delivery / Topic 6300: Delivery of All Mortgages / Chapter 6301: Documentation Delivery / 6301.6: Assignment of Security Instrument (10/09/17)**

# 6301.6: Assignment of Security Instrument (10/09/17)

The Seller/Servicer is not required to prepare an assignment of the Security Instrument to Freddie Mac. However, Freddie Mac may, at its sole discretion and at any time, require a Seller/Servicer, at the Seller/Servicer's expense, to prepare, execute and/or record assignments of the Security Instrument to Freddie Mac.

If an assignment of the Security Instrument to Freddie Mac has been prepared, the Seller/Servicer must not record it unless directed to do so by Freddie Mac. Any statement in the assignment to the effect that the assignment is made without recourse will in no way affect the Seller/Servicer's repurchase obligations under the Purchase Documents.

For transfer or assignment of Freddie Mac's interest in the Mortgage, the Seller/Servicer shall prepare at its own expense any assignment necessary to transfer the Security Instrument to Freddie Mac's assignee, designee or transferee.

Intervening Assignments must be prepared in accordance with the requirements of this section.

NOTE: Special provisions for preparing assignments for Mortgages secured by Manufactured Homes located in certificate of title States where there is no provision for surrender and cancelation of the certificate of title are set forth in Section 5703.7(c), paragraph 3. Mortgages secured by Manufactured Homes located in certificate of title States where there is no provision for surrender and cancelation of the certificate of title may not be registered with MERS[®].

**(a)   Mortgages not registered with MERS**

For a Mortgage not registered with MERS, the Seller/Servicer must ensure that the chain of assignments is complete and recorded from the original mortgagee on the Security Instrument to the Seller. If the Seller concurrently or subsequently transfers the Servicing, an assignment to the new Servicer must be completed and recorded where required, thus keeping the chain complete.

If a State does not accept assignments for recordation, the Seller must so state in an affidavit maintained with the unrecorded assignment.

**(b)   Mortgages registered with MERS**

For a Mortgage registered with MERS, if MERS is not the original mortgagee of record, the Seller/Servicer must ensure that:

- An assignment of the Security Instrument to MERS has been prepared, duly executed and recorded in all places necessary to perfect a First Lien security interest in the Mortgaged Premises in favor of MERS, solely as nominee for the lender named in the Security Instrument and the Note, and the lender's successors and assigns. Mortgages subsequently assigned to MERS in the States of Montana, Oregon and Washington are not eligible for sale to Freddie Mac.
- The chain of assignments is complete and recorded from the original mortgagee to MERS

If the Seller/Servicer concurrently or subsequently transfers the Servicing of a Mortgage registered with MERS, no further assignments are required if the Transferee Servicer is a MERS Member. If the Transferee Servicer is not a MERS Member, or if the Mortgage has not been, or is no longer, registered with MERS, the Seller/Servicer must complete the assignments in accordance with the requirements in Section 6301.6(a).

**(c)   Mortgages registered with MERS naming MERS as original mortgagee of record**

No assignments are required for a Mortgage registered with MERS if:

- The Mortgage is originated naming MERS as the original mortgagee of record, solely as nominee for the lender named in the Security Instrument and the Note, and the lender's successors and assigns, and
- The Seller/Servicer has ensured that the Security Instrument is properly executed, acknowledged, delivered and recorded in all places necessary to perfect a First Lien security interest in the Mortgaged Premises in favor of MERS, solely as nominee for the lender named in the Security Instrument and the Note, and the lender's successors and assigns

**(d)    Concurrent Transfers of Servicing**

If the Mortgage is registered with MERS, and the Transferee Servicer is not a MERS Member, then the requirements for Mortgages not registered with MERS must be followed.

For a Concurrent Transfer of Servicing when a Mortgage is registered with MERS:

- The Seller must notify MERS of the Transfer of Servicing and reflect such Transfer of Servicing on the MERS System
- The Transferee Servicer must follow the document custodial procedures in Section 7101.9, and deliver the assignments to the Transferee Document Custodian to be verified and certified in accordance with the requirements of Section 6304.2, unless the Transferee Servicer has elected to retain all assignments for MERS-registered Mortgages in the Mortgage files. The Transferee Servicer must also supply its Document Custodian with any documentation necessary for the Document Custodian to determine whether the Seller/Servicer has elected to hold all assignments in the Mortgage files.

For a Concurrent Transfer of Servicing when a Mortgage is not registered with MERS:

- The Seller must record any Intervening Assignments to complete the chain of assignments from the original mortgagee to the Seller, in accordance with Section 6301.6(a)
- The Seller must then assign the Security Instruments to the Transferee Servicer and record the assignments
- The Transferee Servicer must follow the document custodial procedures set forth in Section 7101.9, and deliver the assignments to the Transferee Document Custodian, to be verified and certified in accordance with the requirements of Section 6304.2

Special provisions for Concurrent Transfers of Servicing of Mortgages secured by Manufactured Homes located in certificate of title States where there is no provision for surrender and cancelation of the certificate of title are set forth in Section 5703.7 (c), paragraph 3.

| Related Guide Bulletins | Issue Date |
|---|---|
| Bulletin 2017-10 | July 12, 2017 |

**Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Servicing / Series 7000: Transfers of Servicing / Topic 7100: Transfers of Servicing / Chapter 7101: Transfers of Servicing and Intra-Servicer Portfolio Moves / 7101.6: Endorsement of Notes and assignment of Security Instruments related to Transfers of Servicing (03/02/16)**

**FUTURE REVISION 07/23/18 [HIDE]**

**REVISION NUMBER:** 07232018        **DATE:** 07/23/2018
**REVISION REMARKS:**  THIS CONTENT WILL BECOME EFFECTIVE ON 07/23/2018. CURRENT REQUIREMENTS APPEAR UNSHADED BELOW.

## 7101.6: Endorsement of Notes and assignment of Security Instruments related to Transfers of Servicing (Future effective date 07/23/18)

When a Mortgage is sold to Freddie Mac, the Seller must endorse the Note in blank in accordance with Section 6301.3. When a Transfer of Servicing occurs, the Transferor Servicer may not complete the blank endorsement or further endorse the Note, but must prepare and complete assignments according to the following requirements:

**(a)    Concurrent Transfer of Servicing for a Mortgage not registered with MERS®**

To prepare and complete assignment of the Security Instrument for a Concurrent Transfer of Servicing for a Mortgage not registered with MERS, the Transferor Servicer must:

- Record any Intervening Assignments to complete the chain of assignments to it from the original mortgagee, in accordance with Section 6301.6(a)
- Assign the Security Instruments to the Transferee Servicer, and record the assignment
- Follow the document custodial procedures set forth in Section 7101.9 and deliver the assignment to the Transferee Servicer's Document Custodian to be verified in accordance with the requirements of Section 6304.2

See Section 6301.6(a) for additional information.

073

**(b)    Concurrent Transfer of Servicing for a Mortgage registered with MERS**

To prepare and complete an assignment of the Security Instrument for a Concurrent Transfer of Servicing of a Mortgage that is registered with MERS:

- If the **Transferee Servicer is a MERS Member**, no further assignment is needed. The Transferor Servicer must notify MERS of the Transfer of Servicing.

- If the **Transferee Servicer is not a MERS Member**, then for a Concurrent Transfer of Servicing:

  ◦ The Transferor Servicer must prepare and record an assignment of the Security Instrument (on behalf of MERS) from MERS to the Transferee Servicer

  ◦ The Transferor Servicer must follow the document custodial procedures set forth in Section 7101.9, and deliver the assignment to the Transferee Servicer's Document Custodian to be verified and certified in accordance with the requirements of Section 6304.2

See Section 6301.6(b) for additional information.

**(c)    Subsequent Transfer of Servicing for a Mortgage not registered with MERS**

To prepare and complete an assignment of a Security Instrument for a Mortgage related to a Subsequent Transfer of Servicing if that Mortgage is not registered with MERS, the Transferor Servicer must:

- Recover and destroy any original unrecorded assignments to Freddie Mac that may have been prepared

- Assign the Security Instrument to the Transferee Servicer and record the assignment

- Follow the document custody procedures set forth in Section 7101.9, and deliver assignment(s) to the Transferee Document Custodian to be verified and certified in accordance with the requirements of Section 6304.2

If the most recent assignment of the Security Instrument is to Freddie Mac and was recorded, the Transferor Servicer may not prepare an assignment to the Transferee Servicer.

| Related Guide Bulletins | Issue Date |
|---|---|
| Bulletin 2018-6 | April 11, 2018 |

## 7101.6: Endorsement of Notes and assignment of Security Instruments related to Transfers of Servicing (03/02/16)

When a Mortgage is sold to Freddie Mac, the Seller must endorse the Note in blank in accordance with Section 6301.3. When a Transfer of Servicing occurs, the Transferor Servicer may not complete the blank endorsement or further endorse the Note, but must prepare and complete assignments according to the following requirements:

074

**(a)   Concurrent Transfer of Servicing for a Mortgage not registered with MERS®**

To prepare and complete assignment of the Security Instrument for a Concurrent Transfer of Servicing for a Mortgage not registered with MERS, the Transferor Servicer must:

- Record any Intervening Assignments to complete the chain of assignments to it from the original mortgagee, in accordance with Section 6301.6(a)
- Assign the Security Instruments to the Transferee Servicer, and record the assignment
- Follow the document custodial procedures set forth in Section 7101.9 and deliver the assignment to the Transferee Document Custodian to be verified in accordance with the requirements of Section 6304.2

See Section 6301.6(a) for additional information.

**(b)   Concurrent Transfer of Servicing for a Mortgage registered with MERS**

To prepare and complete an assignment of the Security Instrument for a Concurrent Transfer of Servicing of a Mortgage that is registered with MERS:

- If the **Transferee Servicer is a MERS Member**, no further assignment is needed. The Transferor Servicer must notify MERS of the Transfer of Servicing.
- If the **Transferee Servicer is not a MERS Member**, then for a Concurrent Transfer of Servicing:
  - ◦ The Transferor Servicer must prepare and record an assignment of the Security Instrument (on behalf of MERS) from MERS to the Transferee Servicer
  - ◦ The Transferor Servicer must follow the document custodial procedures set forth in Section 7101.9, and deliver the assignment to the Transferee Document Custodian to be verified and certified in accordance with the requirements of Section 6304.2

See Section 6301.6(b) for additional information.

**(c)   Subsequent Transfer of Servicing for a Mortgage not registered with MERS**

To prepare and complete an assignment of a Security Instrument for a Subsequent Transfer of Servicing for a Mortgage not registered with MERS, the Transferor Servicer must:

- Recover and destroy any original unrecorded assignments to Freddie Mac that may have been prepared
- Assign the Security Instrument to the Transferee Servicer and record the assignment
- Follow the document custody procedures set forth in Section 7101.9, and deliver assignment(s) to the Transferee Document Custodian to be verified and certified in accordance with the requirements of Section 6304.2

If an original assignment to Freddie Mac was recorded, no additional assignment need be made.

075

Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Servicing / Series 7000: Transfers of Servicing / Topic 7100: Transfers of Servicing / Chapter 7101: Transfers of Servicing and Intra-Servicer Portfolio Moves / 7101.15: Liabilities of the Transferor Servicer and Transferee Servicer (03/02/16)

**FUTURE REVISION 07/23/18 [HIDE]**

**REVISION NUMBER:** 07232018       **DATE:** 07/23/2018
**REVISION REMARKS:** THIS CONTENT WILL BECOME EFFECTIVE ON 07/23/2018. CURRENT REQUIREMENTS APPEAR UNSHADED BELOW.

## 7101.15: Liabilities of the Transferor Servicer and Transferee Servicer (Future effective date 07/23/18)

**(a)  Warranties**

Except as stated in the following paragraph, for Transfer of Servicing requests received by Freddie Mac, the Transferee Servicer, by electronically signing the Agreement for Subsequent Transfer of Servicing of Single-Family Mortgages ("STOS Agreement") in the Freddie Mac Service Loans application, is liable to Freddie Mac for all Seller and any prior Servicer's duties, obligations, responsibilities, representations, covenants, warranties, agreements and related liabilities in the Purchase Documents with respect to the Mortgages related to the Transfer of Servicing as set forth in the Final Mortgage List (as defined in Section 7101.2(b)) in the Service Loans application, whether or not the Transferor Servicer had such liability. The Transferee Servicer's assumption of such rights, duties, obligations, responsibilities, representations, covenants, warranties, agreements and related liabilities upon the Effective Date of Transfer does not release the Transferor Servicer, any prior Servicer, or the original Seller of their duties, obligations, responsibilities, representations, covenants, warranties, agreements and related liabilities with respect to the Mortgages and REO related to the Transfer of Servicing, all such parties' liability being joint and several with the Transferee Servicer. However, a Transferor Servicer does not assume such liability for Servicing violations occurring in all respects on or after the Effective Date of Transfer and based solely and directly upon the actions or omissions of later Transferee Servicers.

***Mortgages sold through Gold Cash Xtra® and the Servicing Released Sales Process that are related to a Concurrent Transfer of Servicing***

For Mortgages sold through Gold Cash Xtra® and the Servicing Released Sales Process, the Seller remains solely liable to Freddie Mac for all sale representations, covenants and warranties in the Purchase Documents (sale representations and warranties) with respect to the Mortgages related to the Transfer of Servicing. The Transferee Servicer is liable to Freddie Mac for all Servicing duties, obligations, responsibilities, representations, covenants, warranties, agreements and related liabilities in the Purchase Documents with respect to the Mortgages related to the Transfer of Servicing. For subsequent Transfers of Servicing of such Mortgages:

- The Seller Transferor remains solely liable to Freddie Mac for all sale representations and warranties with respect to the Mortgages related to the Transfer of Servicing; and

- The subsequent Transferee Servicer is liable to Freddie Mac for all Servicing duties, obligations, responsibilities, representations, covenants,

076

warranties, agreements and related liabilities in the Purchase Documents with respect to the Mortgages and REO related to the Transfer of Servicing, but the Transferee Servicer's assumption of these duties, obligations, responsibilities, representations, covenants, warranties, agreements and related liabilities upon the Effective Date of Transfer does not release the subsequent Transferor Servicer or any prior Servicer of their duties, obligations, responsibilities, representations, covenants, warranties, agreements and related liabilities with respect to the Mortgages related to the Transfer of Servicing, their liability being joint and several with the Transferee Servicer. However, a Transferor Servicer does not assume such liability for Servicing violations committed by the Transferee Servicer or any subsequent Transferee Servicer occurring in all respects after the Effective Date of Transfer and based solely and directly upon the actions or omissions of later Transferee Servicers.

Note: For provisions applicable to the Concurrent Transfer of Servicing rights of Mortgages sold to Freddie Mac through Gold Cash Xtra, see Exhibit 28, Loan Servicing Purchase and Sale Agreement.

**(b)   Hold harmless**

The Transferor Servicer and the Transferee Servicer, jointly and severally, fully indemnify and agree to hold Freddie Mac, its successors and assigns, harmless from and against any and all losses, claims, demands, actions, suits, damages, costs and expenses (including reasonable attorney fees) of every nature and character that may arise or be made against or be incurred by Freddie Mac as a result of the Transferor Servicer's or the Transferee Servicer's failure to comply with applicable law or failure to comply with Freddie Mac's Servicing requirements as set forth in the Purchase Documents, including, but not limited to failure to provide the notices required by Section 7101.14, failure to make any payment to the appropriate parties for which Escrow is collected and failure to credit properly any payments received from Borrowers.

**(c)   Servicing**

By electronically signing the STOS Agreement, the Transferee Servicer agrees to service the Mortgages set forth in the Final Mortgage List in the Service Loans application in accordance with the terms of the Servicing Contract.

| Related Guide Bulletins | Issue Date |
|---|---|
| Bulletin 2018-6 | April 11, 2018 |

## 7101.15: Liabilities of the Transferor Servicer and Transferee Servicer (03/02/16)

**(a)   Warranties**

Except as stated in the following paragraph, for Transfer of Servicing requests received by Freddie Mac, the Transferee Servicer is liable to Freddie Mac for all sale and Servicing responsibilities, representations, covenants and warranties in the Purchase Documents with respect to the Mortgages and REO for which Servicing is transferred, whether or not the Transferor Servicer had such liability. The Transferee Servicer's assumption of responsibilities, representations, covenants and warranties upon transfer does not release the Transferor Servicer, any prior Servicer, or the original Seller of their responsibilities, representations, covenants and warranties with respect to the transferred Mortgages, their liability being joint and several with the Transferee Servicer. However, a Transferor Servicer does not assume such liability for Servicing violations occurring in all respects after the effective date of its transfer and based in all respects upon the actions or omissions of later Transferee Servicers.

For Mortgages sold through Gold Cash Xtra® and the Servicing Released Sales Process, the Seller remains solely liable to Freddie Mac for all sale representations, covenants and warranties in the Purchase Documents (sale representations and warranties) with respect to the Mortgages for which Servicing is transferred. The Transferee Servicer is liable to Freddie Mac for all servicing responsibilities, representations, covenants and warranties in the Purchase Documents with respect to the Mortgages for which Servicing is transferred. For subsequent Transfers of Servicing of such Mortgages:

- The Seller Transferor remains solely liable to Freddie Mac for all sale representations and warranties with respect to the Mortgages for which Servicing is transferred; and

- The subsequent Transferee Servicer is liable to Freddie Mac for all Servicing responsibilities, representations, covenants and warranties in the Purchase Documents with respect to the Mortgages and REO for which Servicing is transferred, but the Transferee Servicer's assumption of responsibilities, representations, covenants and warranties upon transfer does not release the subsequent Transferor Servicer or any prior Servicer of their responsibilities, representations, covenants and warranties with respect to Servicing of the transferred Mortgages, their liability being joint and several with the Transferee Servicer. However, a Transferor Servicer does not assume such liability for Servicing violations occurring in all respects after the effective date of its transfer and based in all respects upon the actions or omissions of later Transferee Servicers.

Note: For provisions applicable to the concurrent transfer of servicing rights of Mortgages sold to Freddie Mac through Gold Cash Xtra, see Exhibit 28, Loan Servicing Purchase and Sale Agreement.

**(b)   Hold harmless**

The Transferor Servicer and the Transferee Servicer, jointly and severally, fully indemnify and agree to hold Freddie Mac, its successors and assigns, harmless from and against any and all losses, claims, demands, actions, suits, damages, costs and expenses (including reasonable attorney fees) of every nature and character that may arise or be made against or be incurred by Freddie Mac as a result of the Transferor Servicer's or the Transferee Servicer's failure to comply with applicable law or failure to comply with Freddie Mac's Servicing requirements as set forth in the Purchase Documents, including, but not limited to failure to provide the notices required by Section 7101.14, failure to make any payment to the appropriate parties for which Escrow is collected and failure to credit properly any payments received from Borrowers.

**(c)   Servicing**

The Transferee Servicer hereby agrees to service the Mortgages in accordance with the terms of the unitary, indivisible master Servicing contract comprising the Guide, applicable Bulletins, applicable users' guides and any other applicable Purchase Documents, all of which are fully incorporated herein by reference.

**Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Servicing / Series 8000: Servicing All Mortgages / Topic 8100: General Freddie Mac Servicing Policies / Chapter 8105: Servicing Compensation / 8105.3: Servicing obligations to be performed for the Servicing compensation (03/02/16)**

## 8105.3: Servicing obligations to be performed for the Servicing compensation (03/02/16)

In consideration for the Servicing Spread, a Servicer is responsible for the performance of all of its Servicing obligations described in the Guide and other Purchase Documents for each of the Mortgages purchased by Freddie Mac. The Servicer's Servicing obligations compensated by the Servicing Spread include, among other things, undertaking all activities required to protect Freddie Mac's interest in the Mortgage in the event of a foreclosure of the property or a bankruptcy of the Borrower, such as:

- Preparing and delivering foreclosure and bankruptcy referrals to attorneys
- Providing all documents and information necessary for the attorneys to prosecute foreclosure or bankruptcy cases (including, but not limited to, missing documents such as Notes, title insurance policies, and Intervening Assignments)
- When necessary, paying for the preparation and recordation of missing documents, such as Intervening Assignments, necessary for the prosecution of foreclosure or bankruptcy cases
- Resolving any title issues that are the result of the Seller's or Servicer's action or inaction
- Managing attorneys, including but not limited to:
  - Collecting, receiving, processing, reviewing and paying attorneys' invoices
  - Supervising and providing necessary assistance to attorneys in the foreclosure and bankruptcy proceedings
  - Making available any monitoring, management, reporting, information and document delivery processes or systems, and paying the fees and costs for such processes or systems (refer to Section 9501.9 for information on connectivity and invoice processing systems)
- Continuing to work with the Borrower to resolve the delinquency through loss mitigation activities
- Handling the bankruptcy management activities specified in Chapter 9401

Nothing in the Guide is intended to prohibit a foreclosure or bankruptcy attorney from assisting a Servicer by working with a Borrower to facilitate a reinstatement of the Mortgage or loss mitigation activity.

**Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Servicing / Series 8000: Servicing All Mortgages / Topic 8100: General Freddie Mac Servicing Policies / Chapter 8107: Document Custody / 8107.1: Servicer responsibilities related to document custody (02/14/18)**

REVISION HISTORY 03/02/16 [HIDE]

REVISION NUMBER: 03022016          DATE: 03/02/2016
REVISION REMARKS: THIS CONTENT HAS CHANGED. CURRENT REQUIREMENTS APPEAR UNSHADED BELOW.

**8107.1: Servicer responsibilities related to document custody (Effective: 03/02/16)**

**(a)     Delivery of modifications to a Document Custodian**

If a Note is subsequently modified, pursuant to the requirements of the Guide, the original modifying instrument must be delivered to the Document Custodian holding the original Note.

**(b)   Obtaining physical or constructive possession of documents**

Seller/Servicers may need to obtain physical or constructive possession of a Note or other documents from a Document Custodian to take appropriate action in conjunction with the payoff, foreclosure, repurchase, substitution, conversion, modification or assumption of a Mortgage:

- To obtain physical or constructive possession of a Note and/or other documents from the Designated Custodian, the Seller/Servicer may complete and send the Form 1036, Request for Physical or Constructive Possession of Documents, or make an electronic request ("Web Release Request") using the Designated Custodian's specified Internet web site. Contact the Designated Custodian for further information **(see Directory 4)**. The Seller/Servicer must promptly: (i) if physical possession was obtained by Seller/Servicer, return the Note and any other documents to the Designated Custodian when the reason for having physical possession is no longer required for Servicing the Mortgage (do not return the Note and any other documents to the Designated Custodian if the related Mortgage was repurchased or paid in full), or (ii) if constructive possession was obtained, send notice (a copy of the original Form 1036 with a notice of termination of constructive possession or otherwise as instructed by the Designated Custodian's specified Internet web site) to the Designated Custodian, when the reason for constructive possession is no longer required for Servicing the Mortgage. Seller/Servicers using the Designated Custodian's Internet web site Asset Repository and Collateral System (ARK) to request physical or constructive possession of Notes and other documents must include a copy of the 1036 Release Receipt Report when returning such items to the Designated Custodian. The Release Receipt Report can be electronically generated from the Designated Custodian's ARK web site.

- To obtain physical or constructive possession of a Note and/or other documents from a Document Custodian (excluding the Designated Custodian), the Seller/Servicer must complete Form 1036, and send the Form 1036 to the Document Custodian. The Seller/Servicer must promptly: (i) if physical possession was obtained by the Seller/Servicer, return the Note and any other documents to the Document Custodian when the reason for having physical possession is no longer required for Servicing the Mortgage (do not return the Note and any other documents to the Document Custodian if the related Mortgage was repurchased or paid in full), or (ii) if constructive possession was obtained by the Seller/Servicer, send notice (copy of the original Form 1036 with a request for termination of constructive possession) to the Document Custodian, when constructive possession is no longer required for Servicing the Mortgage.

Seller/Servicers must follow prudent business practices in protecting and safeguarding all Notes and documents physically transferred and delivered to them by the Document Custodian until these documents are returned to the Document Custodian. These practices include protection from external elements, such as fire, and identification as a Freddie Mac asset and segregation from other non-related documents.

See Section 8107.2(b) when Servicing a Mortgage with respect to which the Seller/Servicer is required to be in physical or constructive possession of the Note to take legal action, such as a Freddie Mac Default Legal Matter or other litigation (collectively, "Legal Action"), and the Document Custodian has physical custody of the Note.

082

## 8107.1: Servicer responsibilities related to document custody (02/14/18)

**(a)**   **Delivery of modifications to a Document Custodian**

If a Note is subsequently modified, pursuant to the requirements of the Guide, the original modifying instrument must be delivered to the Document Custodian holding the original Note.

**(b)**   **Obtaining physical or constructive possession of documents**

Seller/Servicers may need to obtain physical or constructive possession of a Note or other documents from a Document Custodian to take appropriate action in conjunction with the payoff, foreclosure, repurchase, substitution, conversion, modification or assumption of a Mortgage.

The process for obtaining physical or constructive possession of a Note and/or other documents from Document Custodians is described below:

**(i)**   **All Document Custodians other than The Bank of New York Mellon Trust Company, N.A.**

To obtain physical or constructive possession of a Note and/or other documents from a Document Custodian other than The Bank of New York Mellon Trust Company, N.A. ("BNYM") as Designated Custodian, the Seller/Servicer must complete Form 1036, and send the Form 1036 to the Document Custodian.

The Seller/Servicer must promptly:

- If physical possession was obtained by the Seller/Servicer, return the Note and any other documents to the Document Custodian when the reason for having physical possession is no longer required for Servicing the Mortgage (do not return the Note and any other documents to the Document Custodian if the related Mortgage was repurchased or paid in full), or

- If constructive possession was obtained by the Seller/Servicer, send notice (copy of the original Form 1036 with a request for termination of constructive possession) to the Document Custodian, when constructive possession is no longer required for Servicing the Mortgage

083

**(ii)    The Bank of New York Mellon Trust Company, N.A. as Designated Custodian**

To obtain physical or constructive possession of a Note and/or other documents from BNYM as Designated Custodian, the Seller/Servicer may complete and send the Form 1036, Request for Physical or Constructive Possession of Documents, or make an electronic request ("Web Release Request") using the specified Internet web site. Contact BNYM for further information **(see Directory 4)**.

The Seller/Servicer must promptly:

- **If physical possession was obtained by Seller/Servicer**, return the Note and any other documents to BNYM when the Note is no longer required for Servicing the Mortgage (i.e., do not return the Note or any other documents if the related Mortgage was repurchased or paid in full), or

- **If constructive possession was obtained**, notify BNYM when constructive possession is no longer required for Servicing the Mortgage by sending a copy of the original Form 1036 with a notice of termination of constructive possession or otherwise as instructed by BNYM.

Seller/Servicers using BNYM's Internet web site Asset Repository and Collateral System (ARK) to request physical possession of Notes and other documents must include a copy of the 1036 Release Receipt Report when returning such items to BNYM. The Release Receipt Report can be electronically generated from the ARK web site.

Seller/Servicers must follow prudent business practices in protecting and safeguarding all Notes and documents released to them by a Document Custodian until these documents are returned to the Document Custodian. These practices include protection from external elements, such as fire, identification as a Freddie Mac asset and segregation from unrelated documents.

See Section 8107.2(b) when physical or constructive possession of the Note is required to take legal action, such as a Freddie Mac Default Legal Matter or other litigation, and the Document Custodian has physical custody of the Note.

| Related Guide Bulletins | Issue Date |
|---|---|
| Bulletin 2018-2 | February 14, 2018 |

Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Servicing / Series 8000: Servicing All Mortgages / Topic 8100: General Freddie Mac Servicing Policies / Chapter 8107: Document Custody / 8107.2: Document Custodian's custodial functions (06/13/18)

REVISION HISTORY 02/14/18 [HIDE]

REVISION NUMBER: 02142018        DATE: 02/14/2018
REVISION REMARKS: THIS CONTENT HAS CHANGED. CURRENT REQUIREMENTS APPEAR UNSHADED BELOW.

## 8107.2: Document Custodian's custodial functions (Effective: 02/14/18)

### (a)    General duties

Each Document Custodian is responsible for maintaining custody of the original Notes and assignments, in trust, for the benefit of Freddie Mac by:

- Storing the original Notes and assignments in secure, fire-resistant facilities as required by Section 2202.2(b). If the Seller/Servicer delivers supplemental documents, such as original modifying instruments, the Document Custodian must place the supplemental documents with the related Note.

- Affixing the Freddie Mac loan number to the Note, if advised by the Seller/Servicer that Freddie Mac requires it. If the Note for a Mortgage contains the Freddie Mac loan number, changing the Freddie Mac loan number on a Note if advised in writing by the Seller/Servicer that Freddie Mac has changed the Freddie Mac loan number for the related Mortgage.

085

**(b)    Physical or constructive possession to take legal action**

In Servicing a Mortgage, the Seller/Servicer requires physical or constructive possession of the Note to take legal action, such as bringing or defending, for example, a lawsuit or other litigation relating to the maturity, prepayment, repurchase, substitution, conversion, modification or assumption of a Mortgage or a Freddie Mac Default Legal Matter (collectively, "Legal Action"). If constructive possession is appropriate for the Legal Action, the Seller/Servicer shall automatically, immediately and conclusively be deemed to be in constructive possession of the Note from the earlier of the date that the Legal Action commences or the date the Document Custodian receives the Seller/Servicer's Form 1036 requesting constructive possession of the Note until the Legal Action is concluded.

The Document Custodian maintains physical custody of the Note for the benefit of the Seller/Servicer while the Servicer has constructive possession. For the duration of the Legal Action, the Seller/Servicer shall be: (i) in constructive possession of the Note, (ii) the holder of the Note, (iii) entitled to enforce the Note, and (iv) duly authorized by Freddie Mac to take Legal Action to service the related Mortgage. When the Legal Action is concluded, the Document Custodian shall automatically and immediately cease maintaining physical custody of the Note, in trust, for the benefit of the Seller/Servicer and resume maintaining physical custody of the Note, in trust, for the benefit of Freddie Mac.

The Seller/Servicer must complete, sign and submit a Form 1036 or its equivalent, such as the Web Release Request described in Section 8107.1(b), to request constructive possession from the Document Custodian. The constructive possession will commence on the earlier of the date on which: (i) the Document Custodian receives the Seller/Servicer's request for constructive possession, or (ii) the Seller/Servicer commences the Legal Action. A single Form 1036 may be used to request multiple Notes if each Note is separately listed and identified.

**(c)    Delivery of possession of documents to the Seller/Servicer**

The Seller/Servicer may require physical possession of a Note and other documents for Servicing a Mortgage in conjunction with a Legal Action.

In such circumstances, the Seller/Servicer must deliver a Form 1036 or Web Release Request to the Document Custodian to request such release.

To use an Electronic, as defined in Chapter 1401 or system-generated version of the Form 1036, the Seller/Servicer must enter into an electronic transaction agreement with the Document Custodian that:

- Defines Electronic Signature and the type(s) of electronic transmission(s) permitted
- States the Document Custodian's requirements for accepting an Electronic Signature
- States the Seller/Servicer's requirements for maintaining and controlling access to Electronic Signature information
- Clearly assigns liability when the terms of the agreement are violated

In addition, the Seller/Servicer must provide, and the Document Custodian must retain, a list of the individuals designated by the Seller/Servicer to request the release of documents electronically. The list must be signed by an authorized officer of the Seller/Servicer and contain the notarized signatures of the Seller/Servicer's designated individuals.

An Electronic or system-generated Form 1036 must contain all information required on the paper Form 1036. A single electronic form may be used to request multiple Notes if each Note is separately listed and identified.

Upon receipt of a signed Form 1036 from the Seller/Servicer, the Document Custodian shall transfer and deliver physical possession of the Note to the Seller/Servicer. Upon receipt of the Note, the Seller/Servicer shall automatically, immediately and conclusively be deemed to be: (i) in physical possession of the Note, (ii) the holder of the Note, (iii) entitled to enforce the Note, and (iv) duly authorized by Freddie Mac to take Legal Action in connection with Servicing the related Mortgage.

If a Note or other document is no longer needed for the reason cited on the request, or when the Legal Action is concluded, the Seller/Servicer must promptly return the Note and related documents and a copy of the Form 1036 to the Document Custodian, or return the Note and related documents to The Bank of New York Mellon Trust Company, N.A. as Designated Custodian. Upon receipt of the returned Note, the Document Custodian shall immediately resume maintaining physical custody of the Note, in trust, for the benefit of Freddie Mac, as set forth in the Tri-Party Agreement, and update its note tracking system to reflect their receipt.

Notes and related documents may be transported only by a nationally recognized commercial or bonded carrier or courier service.

See Section 8107.1(b) for additional information on returning Notes to the Document Custodian.

**(d)   Form imaging and retention requirements**

The Document Custodian must retain either the original or an imaged copy of the Form 1036 or its equivalent for at least three months after the date the Mortgage is paid off. The Document Custodian need not retain a Form 1034E, or Note Delivery Cover Sheet, after the related Mortgages have been certified.

Imaged copies of the forms are permitted, provided that:

- Such copies were made in the regular course of business pursuant to Document Custodian's written policy
- Each imaged copy accurately reproduces or forms a durable medium for reproducing the original document
- There is equipment to view or read and to reproduce the imaged copies into legible documents at the location where the imaged copies are maintained

The Document Custodian may destroy:

- Original Certification Schedules after making imaged copies that meet the above criteria
- Paper Forms 1036 after making imaged copies that meet the above criteria and updating Document Custodian's Note tracking system to indicate the date of and reason for release of the related documents
- All original or imaged copies of Certification Schedules and Forms 1036 after expiration of the retention period

In disposing of such documents, the Document Custodian must have in place and follow procedures and use disposal methods that ensure the confidentiality of Borrowers' private personal information.

| Related Guide Bulletins | Issue Date |
|---|---|
| Bulletin 2018-2 | February 14, 2018 |

**REVISION HISTORY 03/02/16 [HIDE]**

**REVISION NUMBER:** 03022016       **DATE:** 03/02/2016
**REVISION REMARKS:** THIS CONTENT HAS CHANGED. CURRENT REQUIREMENTS APPEAR UNSHADED BELOW.

**8107.2: Document Custodian's custodial functions (Effective: 03/02/16)**

**(a)     General duties**

Each Document Custodian is responsible for maintaining custody of the original Notes and assignments, in trust, for the benefit of Freddie Mac by:

- Storing the original Notes and assignments in secure, fire-resistant facilities as required by Section 2202.2(b). If the Seller/Servicer delivers supplemental documents, such as original modifying instruments, the Document Custodian must place the supplemental documents with the related Note.

- Affixing the Freddie Mac loan number to the Note, if advised by the Seller/Servicer that Freddie Mac requires it. If the Note for a Mortgage contains the Freddie Mac loan number, changing the Freddie Mac loan number on a Note if advised in writing by the Seller/Servicer that Freddie Mac has changed the Freddie Mac loan number for the related Mortgage.

**(b)     Physical or constructive possession to take legal action**

The Seller/Servicer may be required to be in physical or constructive possession of the Note to take legal action, such as a Freddie Mac Default Legal Matter or other litigation (collectively, "Legal Action"), in connection with Servicing a Mortgage. If the Seller/Servicer concludes that constructive possession is the appropriate type of possession for the Legal Action, the Seller/Servicer shall automatically, immediately and conclusively be deemed to be in constructive possession of the Note upon the earlier of: (i) that date such Legal Action commences, or (ii) the date the Document Custodian receives the Seller/Servicer's Form 1036 requesting constructive possession of the Note, until the Legal Action is concluded.

When the Document Custodian, during any such Legal Action, maintains physical custody of the Note, it does so in trust for the benefit of the Seller/Servicer. For the duration of the Legal Action, the Seller/Servicer shall be: (i) in constructive possession of the Note, (ii) the holder of the Note, (iii) entitled to enforce the Note, and (iv) duly authorized by Freddie Mac to take Legal Action in connection with Servicing the related Mortgage. When the Legal Action is concluded, the Document Custodian shall automatically and immediately cease maintaining physical custody of the Note, in trust, for the benefit of the Seller/Servicer and resume maintaining physical custody of the Note, in trust, for the benefit of Freddie Mac.

The Seller/Servicer must complete, sign and submit a Form 1036, or its equivalent, including the Designated Custodian's Web Release Request described in Section 8107.1(b) (Form 1036 and such the Designated Custodian's Web Release Request, collectively referred to herein as "Form 1036") requesting constructive possession from the Document Custodian or Designated Custodian, as applicable. The date that the constructive possession commences shall be the earlier of the date: (i) the Document Custodian receives the Form 1036 from the Seller/Servicer requesting constructive possession, or (ii) the Seller/Servicer commences the Legal Action. A single Form 1036 may be used to request multiple Notes, provided that each Note is separately listed and identified.

**(c)     Delivery of possession of documents to the Seller/Servicer**

The Seller/Servicer may require physical possession of a Note and other documents in connection with Servicing a Mortgage, including, but not limited to, bringing or defending a Legal Action or conducting a foreclosure or in connection with the maturity, prepayment, repurchase, substitution,

089

conversion, modification or assumption of a Mortgage. In such circumstances, Freddie Mac will deliver physical possession of the Note to the Seller/Servicer as set forth in this Section 8107.2(c)

When Servicing a Mortgage with respect to which the Seller/Servicer is required to be in physical possession of the Note, the Seller/Servicer shall deliver a Form 1036 to the Document Custodian.

To use an Electronic, as defined in Chapter 1401 or system-generated version of the Form 1036, the Seller/Servicer must enter into an electronic transaction agreement with the Document Custodian that:

- Defines Electronic Signature and the type(s) of electronic transmission(s) permitted
- States the Document Custodian's requirements for accepting an Electronic Signature
- States the Seller/Servicer's requirements for maintaining and controlling access to Electronic Signature information
- Clearly assigns liability when the terms of the agreement are violated

In addition, the Seller/Servicer must provide, and the Document Custodian must retain, a list of the individuals designated by the Seller/Servicer to request the release of documents electronically. The list must be signed by an authorized officer of the Seller/Servicer and contain the notarized signatures of the Seller/Servicer's designated individuals.

An Electronic or system-generated Form 1036 must contain all of the information required on the paper Form 1036. A single electronic form may be used to request multiple Notes, provided that the Note is separately listed and identified.

Upon receipt of a signed Form 1036 from the Seller/Servicer, the Document Custodian maintaining physical custody of the Note, in trust, for the benefit of Freddie Mac, shall transfer and deliver physical possession of the Note to the Seller/Servicer. Upon receipt of the Note, the Seller/Servicer shall automatically, immediately and conclusively be deemed to be: (i) in physical possession of the Note, (ii) the holder of the Note, (iii) entitled to enforce the Note, and (iv) duly authorized by Freddie Mac to take Legal Action in connection with Servicing the related Mortgage.

If a document is no longer needed for the reason originally cited on the request, or when the Legal Action is concluded, the Seller/Servicer must promptly return the Note and related documents and a copy of the Form 1036 to the Document Custodian, or return the Note and related other documents required by the Designated Custodian. Upon receipt of the returned Note, the Document Custodian and/or Designated Custodian, as applicable, shall immediately resume maintaining physical custody of the Note, in trust, for the benefit of Freddie Mac, as set forth in the Custodial Agreement, and update its note tracking system to reflect receipt of the Note and any other documents.

Notes and related documents may be transported only by a nationally recognized commercial or bonded carrier or courier service.

See Section 8107.1(b) for additional information on returning Notes to the Document Custodian.

**(d)   Form imaging and retention requirements**

The Document Custodian must retain either the original or an imaged copy of the Form 1036 or its equivalent for at least three months after the date the Mortgage is paid off. The Document Custodian need not retain a Form 1034E, or Note Delivery Cover Sheet, after the related Mortgages have been certified.

Imaged copies of the forms are permitted, provided that:

- Such copies were made in the regular course of business pursuant to Document Custodian's written policy
- Each imaged copy accurately reproduces or forms a durable medium for reproducing the original document
- There is equipment to view or read and to reproduce the imaged copies into legible documents at the location where the imaged copies are maintained

The Document Custodian may destroy:

- Original Certification Schedules after making imaged copies that meet the above criteria
- Requests for Release after making imaged copies that meet the above criteria and updating Document Custodian's Note tracking system to indicate the date of and reason for release of the related documents
- All original or imaged copies of Certification Schedules and Requests for Release after expiration of the retention period

In disposing of such documents, the Document Custodian must have in place and follow procedures to ensure the confidentiality of Borrowers' private personal information and must use disposal methods that safeguard such confidentiality.

## 8107.2: Document Custodian's custodial functions (06/13/18)

**(a)   General duties**

Each Document Custodian is responsible for maintaining custody of the original Notes and assignments, in trust, for the benefit of Freddie Mac by:

- Storing the original Notes and assignments in secure, fire-resistant facilities as required by Section 2202.2(b). If the Seller/Servicer delivers supplemental documents, such as original modifying instruments, the Document Custodian must place the supplemental documents with the related Note.
- Affixing the Freddie Mac loan number to the Note, if advised by the Seller/Servicer that Freddie Mac requires it. If the Note for a Mortgage contains the Freddie Mac loan number, changing the Freddie Mac loan number on a Note if advised in writing by the Seller/Servicer that Freddie Mac has changed the Freddie Mac loan number for the related Mortgage.

**(b)**   **Physical or constructive possession to take legal action**

In Servicing a Mortgage, the Seller/Servicer requires physical or constructive possession of the Note to take legal action, such as bringing or defending, for example, a lawsuit or other litigation relating to the maturity, prepayment, repurchase, substitution, conversion, modification or assumption of a Mortgage or a Freddie Mac Default Legal Matter (collectively, "Legal Action"). If constructive possession is appropriate for the Legal Action, the Seller/Servicer shall automatically, immediately and conclusively be deemed to be in constructive possession of the Note from the earlier of the date that the Legal Action commences or the date the Document Custodian receives the Seller/Servicer's Form 1036 requesting constructive possession of the Note until the Legal Action is concluded.

The Document Custodian maintains physical custody of the Note for the benefit of the Seller/Servicer while the Servicer has constructive possession. For the duration of the Legal Action, the Seller/Servicer shall be: (i) in constructive possession of the Note, (ii) the holder of the Note, (iii) entitled to enforce the Note, and (iv) duly authorized by Freddie Mac to take Legal Action to service the related Mortgage. When the Legal Action is concluded, the Document Custodian shall automatically and immediately cease maintaining physical custody of the Note, in trust, for the benefit of the Seller/Servicer and resume maintaining physical custody of the Note, in trust, for the benefit of Freddie Mac.

The Seller/Servicer must complete, sign and submit a Form 1036 or its equivalent, such as the Web Release Request described in Section 8107.1(b), to request constructive possession from the Document Custodian. The constructive possession will commence on the earlier of the date on which: (i) the Document Custodian receives the Seller/Servicer's request for constructive possession, or (ii) the Seller/Servicer commences the Legal Action. A single Form 1036 may be used to request multiple Notes if each Note is separately listed and identified.

**(c)    Delivery of possession of documents to the Seller/Servicer**

The Seller/Servicer may require physical possession of a Note and other documents for Servicing a Mortgage in conjunction with a Legal Action.

In such circumstances, the Seller/Servicer must deliver a Form 1036 or Web Release Request to the Document Custodian to request such release.

To use an Electronic, as defined in Section 1401.2, or system-generated version of the Form 1036, the Seller/Servicer must enter into an electronic transaction agreement with the Document Custodian that:

- Defines Electronic Signature and the type(s) of electronic transmission(s) permitted
- States the Document Custodian's requirements for accepting an Electronic Signature
- States the Seller/Servicer's requirements for maintaining and controlling access to Electronic Signature information
- Clearly assigns liability when the terms of the agreement are violated

In addition, the Seller/Servicer must provide, and the Document Custodian must retain, a list of the individuals designated by the Seller/Servicer to request the release of documents electronically. The list must be signed by an authorized officer of the Seller/Servicer and contain the signatures of the Seller/Servicer's designated individuals.

An Electronic or system-generated Form 1036 must contain all information required on the paper Form 1036. A single electronic form may be used to request multiple Notes if each Note is separately listed and identified.

Upon receipt of a signed Form 1036 from the Seller/Servicer, the Document Custodian shall transfer and deliver physical possession of the Note to the Seller/Servicer. Upon receipt of the Note, the Seller/Servicer shall automatically, immediately and conclusively be deemed to be: (i) in physical possession of the Note, (ii) the holder of the Note, (iii) entitled to enforce the Note, and (iv) duly authorized by Freddie Mac to take Legal Action in connection with Servicing the related Mortgage.

If a Note or other document is no longer needed for the reason cited on the request, or when the Legal Action is concluded, the Seller/Servicer must promptly return the Note and related documents and a copy of the Form 1036 to the Document Custodian, or return the Note and related documents to The Bank of New York Mellon Trust Company, N.A. as Designated Custodian. Upon receipt of the returned Note, the Document Custodian shall immediately resume maintaining physical custody of the Note, in trust, for the benefit of Freddie Mac, as set forth in the Tri-Party Agreement, and update its note tracking system to reflect their receipt.

Notes and related documents may be transported only by a nationally recognized commercial or bonded carrier or courier service.

See Section 8107.1(b) for additional information on returning Notes to the Document Custodian.

**(d)   Form imaging and retention requirements**

The Document Custodian must retain either the original or an imaged copy of the Form 1036 or its equivalent for at least three months after the date the Mortgage is paid off. The Document Custodian need not retain a Form 1034E, or Note Delivery Cover Sheet, after the related Mortgages have been certified.

Imaged copies of the forms are permitted, provided that:

- Such copies were made in the regular course of business pursuant to Document Custodian's written policy
- Each imaged copy accurately reproduces or forms a durable medium for reproducing the original document
- There is equipment to view or read and to reproduce the imaged copies into legible documents at the location where the imaged copies are maintained

The Document Custodian may destroy:

- Original Certification Schedules after making imaged copies that meet the above criteria
- Paper Forms 1036 after making imaged copies that meet the above criteria and updating Document Custodian's Note tracking system to indicate the date of and reason for release of the related documents
- All original or imaged copies of Certification Schedules and Forms 1036 after expiration of the retention period

In disposing of such documents, the Document Custodian must have in place and follow procedures and use disposal methods that ensure the confidentiality of Borrowers' private personal information.

| Related Guide Bulletins | Issue Date |
|---|---|
| Bulletin 2018-9 | June 13, 2018 |
| Bulletin 2018-2 | February 14, 2018 |

**Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Servicing / Series 9000: Servicing Default Management / Topic 9300: Foreclosure / Chapter 9301: Foreclosure / 9301.1: Foreclosures on Freddie Mac Mortgages (03/02/16)**

## 9301.1: Foreclosures on Freddie Mac Mortgages (03/02/16)

The Servicer must refer to, manage and complete foreclosure in accordance with this chapter when there is no available alternative to foreclosure. Additionally, Freddie Mac requires the Servicer to manage the foreclosure process to acquire clear and marketable title to the property in a cost–effective, expeditious and efficient manner.

**Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Servicing / Series 9000: Servicing Default Management / Topic 9300: Foreclosure / Chapter 9301: Foreclosure / 9301.11: Obtaining the original Note (02/14/18)**

**REVISION HISTORY 03/02/16 [HIDE]**

> **REVISION NUMBER:** 03022016          **DATE:** 03/02/2016
> **REVISION REMARKS:**  THIS CONTENT HAS CHANGED. CURRENT REQUIREMENTS APPEAR UNSHADED BELOW.
>
> ## 9301.11: Obtaining the original Note (Effective: 03/02/16)
>
> If physical or constructive possession of the original Note is needed to perform the foreclosure, the Servicer must request the Note from the Document Custodian maintaining the Note by submitting to the Document Custodian a completed Form 1036, Request for Physical or Constructive Possession of Documents, or an electronic or system-generated version of the form (or, in the case of the Designated Custodian, a copy of the electronically generated 1036 Release Receipt Report) in accordance with the requirements of Section 8107.1(b).
>
> If there is a full or partial reinstatement of the Mortgage, the Servicer must return the Note to the Document Custodian with either the original Form 1036 or a copy.

## 9301.11: Obtaining the original Note (02/14/18)

If physical or constructive possession of the original Note is needed to perform the foreclosure, the Servicer must request the Note from the Document Custodian maintaining the Note by submitting to the Document Custodian a completed Form 1036, Request for Physical or Constructive Possession of Documents, or an electronic or system-generated version of the form (or, in the case of The Bank of New York Mellon Trust Company, N.A. as the Designated Custodian, a copy of the electronically generated 1036 Release Receipt Report) in accordance with the requirements of Section 8107.1(b).

If there is a full or partial reinstatement of the Mortgage, the Servicer must return the Note to the Document Custodian with either the original Form 1036 or a copy.

| Related Guide Bulletins | Issue Date |
|---|---|
| Bulletin 2018-2 | February 14, 2018 |

**Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Servicing / Series 9000: Servicing Default Management / Topic 9300: Foreclosure / Chapter 9301: Foreclosure / 9301.12: Foreclosing in the Servicer's name (03/02/16)**

## 9301.12: Foreclosing in the Servicer's name (03/02/16)

### (a)   Conducting the foreclosure

The Servicer must instruct the foreclosure counsel to process the foreclosure in the Servicer's name and in a manner that would avoid any obligation to pay a transfer tax. However, the Servicer may instruct foreclosure counsel to conduct the foreclosure in Freddie Mac's name if applicable law:

- Precludes the Servicer from conducting the foreclosure in its name because it owns or services a subordinate Mortgage on the Mortgaged Premises, or
- Requires the foreclosure to be processed in Freddie Mac's name to avoid any obligation to pay a transfer tax and foreclosure counsel could not otherwise process the foreclosure in a manner that would successfully avoid imposition of the transfer tax obligation

For these special circumstances, the Servicer does not need to obtain written approval but must notify Freddie Mac within two Business Days of the Servicer's determination to foreclose in Freddie Mac's name and record the basis of the decision in the Mortgage file. All notifications must be sent via e-mail **(see Directory 5)**. For all other circumstances in which the Servicer may need to instruct foreclosure counsel to conduct the foreclosure in Freddie Mac's name, the Servicer must obtain written approval from Freddie Mac (refer to Section 9402.2 regarding initiating legal actions on Freddie Mac's behalf).

When processing the foreclosure in Freddie Mac's name, all pleadings and related documents must comply with Section 9402.2(c). The Servicer remains obligated to notify Freddie Mac pursuant to Section 9501.12 in the event that any foreclosure conducted in Freddie Mac's name evolves into a non-routine litigation matter (see Section 9402.2).

When a Servicer conducts the foreclosure in Freddie Mac's name, the Servicer is not permitted to have the same foreclosure counsel represent the Servicer or another lien holder in the same proceeding. Freddie Mac does not consent to dual representation of Freddie Mac and another lien holder on the same property.

**(b)    Executing documents**

If Freddie Mac needs to execute a document for the Servicer to process the foreclosure, or execute a document related to a foreclosure sale, the Servicer must submit Form 105, Multipurpose Loan Servicing Transmittal, to Freddie Mac **(see Directory 5)** with all supporting documentation, which may include, but is not limited to, the last recorded document in the chain of title, and include the document Freddie Mac needs to execute.

If an assignment of the Security Instrument to Freddie Mac has been recorded and the Servicer is conducting the foreclosure in its name, then the Security Instrument must be assigned back to the Servicer before the foreclosure counsel files the first legal action. Refer to Section 9301.16 for an explanation of first legal action.

To have the Security Instrument assigned back to the Servicer, the Servicer must submit a completed assignment with a Request for Assistance Form (available at: **http://www.freddiemac.com/cim/docex.html**), to Freddie Mac **(see Directory 9)**. Freddie Mac will endeavor to execute the assignment and return it to the Servicer within 10-12 Business Days of receiving the documents.

If the Servicer is foreclosing on a Mortgage registered with MERS®, the Servicer must prepare and execute (using the Servicer's employee who is a MERS authorized "signing officer") an assignment of the Security Instrument from MERS to the Servicer. The Servicer must record the prepared assignment where required by State law. State mandated recordings are non-reimbursable by Freddie Mac, are not considered part of the Freddie Mac allowable foreclosure counsel fees and must not be billed to the Borrower.

If the Mortgage is an FHA, Section 502 GRH or VA Mortgage, then the Servicer must follow FHA, RHS or VA guidelines to determine in whose name the foreclosure action should be brought.

Refer to Section 6301.6 for additional information on Freddie Mac's requirements for assignments of the Security Instrument.

098

**Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Servicing / Series 9000: Servicing Default Management / Topic 9400: Bankruptcy and Other Litigation Involving Freddie Mac-Owned or Guaranteed Mortgages / Chapter 9401: Bankruptcy / 9401.1: Bankruptcy (10/12/16)**

## 9401.1: Bankruptcy (10/12/16)

This chapter provides Servicers with Freddie Mac's requirements for Servicing Mortgages subject to bankruptcy proceedings or litigation. The Servicer must take appropriate action to protect Freddie Mac's interest during bankruptcy proceedings in which the Borrower is the debtor.

(Refer to Chapter 9402 for requirements for Servicing Mortgages subject to other litigation).

| Related Guide Bulletins | Issue Date |
|---|---|
| Bulletin 2016-13 | July 13, 2016 |

Freddie Mac Single Family / Single-Family Seller/Servicer Guide / Single-Family Seller/Servicer Guide / Servicing / Series 9000: Servicing Default Management / Topic 9400: Bankruptcy and Other Litigation Involving Freddie Mac-Owned or Guaranteed Mortgages / Chapter 9402: Other Litigation Involving Freddie Mac-Owned or Guaranteed Mortgages / 9402.2: Routine and non-routine litigation (07/13/16)

## 9402.2: Routine and non-routine litigation (07/13/16)

**(a)   Definition of routine and non-routine litigation**

- **Routine litigation** generally is a contested action in which the Borrower alleges case-specific defenses or issues which, if successful, would not create negative legal precedent beyond the immediate case
- **Non-routine litigation** generally is a contested action in which the Borrower alleges case-specific defenses or issues, which, if successful, would create negative legal precedent beyond the immediate case

Examples of non-routine litigation that must be reported to Freddie Mac as non-routine litigation include, but are not limited to, the following:

- Actions that name Freddie Mac as a party
- Action that seeks monetary relief against Freddie Mac, including any claim (including counterclaims, cross-claims, or third-party claims in foreclosure or bankruptcy actions) for damages against Freddie Mac or its officers, directors, or employees
- Actions that challenge the validity, priority, or enforceability of a Freddie Mac-owned or guaranteed Mortgage or seek to impair Freddie Mac's interest in an REO including, by way of example:

    1.   An action seeking to demolish a structure on the property or the property as a result of a code violation

    2.   An action seeking to avoid a lien based on a failure to comply with a law or regulation

    3.   An attempt by a junior lienholder to assert priority over a Freddie Mac-owned or guaranteed Mortgage or extinguish Freddie Mac's interests

    4.   A quiet title action seeking to declare Freddie Mac's lien void; and

    5.   An attempt by a Borrower to effect a cramdown of a Mortgage in bankruptcy as to which Freddie Mac has not delegated authority to the Servicer or law firm to address

- Actions that present an issue that may pose significant legal or reputational risk to Freddie Mac include, by way of example:

    1.   Any issue involving Freddie Mac's conservatorship, its conservator, FHFA, Freddie Mac's status as a federal instrumentality, or an interpretation of Freddie Mac's charter

    2.   Any assertion that Freddie Mac is a federal agency or otherwise part of the United States Government

    3.   Any "due process" or other constitutional challenge

    4.   Any challenge to the methods by which Freddie Mac does business

    5.   Any putative class actions involving a Freddie Mac-owned or guaranteed Mortgage

6. Challenges to the standing of the Servicer to conduct foreclosures or bankruptcies which, if successful, could create negative legal precedent with an impact beyond the immediate case

7. Challenges to the methods by which MERS® does business or its ability to act as nominee under a Mortgage

8. Any "show cause orders" or motions for sanctions relating to a Freddie Mac-owned or guaranteed Mortgage, whether against Freddie Mac, the Servicer, a law firm, or a vendor of the Servicer or law firm

9. Any appellate or other action for post-judgment relief in any foreclosure, bankruptcy or legal action in which Freddie Mac is a named party

10. Foreclosures on HUD-Guaranteed Section 184 Native American Mortgages

11. Any environmental litigation relating to a Freddie Mac-owned or guaranteed Mortgage

12. A need to foreclose judicially in a State where non-judicial foreclosures predominate

13. Any claim invoking Home Affordable Modification Program (HAMP®) as a basis to challenge a foreclosure

14. Any claim brought by a governmental body

15. Cross-border insolvency proceedings under Chapter 15 of the Bankruptcy Code

16. Any claim of predatory lending or discrimination in Mortgage origination or Servicing; and

17. Any claim implicating the interpretation of the terms of the Fannie Mae/Freddie Mac Uniform Mortgage Instruments

Given the evolving nature of default-related litigation, it is not possible to provide an exhaustive list of non-routine litigation. Each contested action presents unique circumstances, and the Servicer should evaluate each action on a case-by-case basis to determine whether a contested action is routine or non-routine.

**(b)** **Legal actions and strategies initiated by the Servicer**

A Servicer must obtain written approval **(see Directory 5)** from the Freddie Mac Legal Division prior to initiating the following legal actions and strategies:

• Filing a new legal action, other than a Freddie Mac Default Legal Matter, on behalf of Freddie Mac

• Filing a motion to intervene in a pending legal action on behalf of Freddie Mac

• Appealing or otherwise challenging a judgment in any foreclosure or bankruptcy proceeding, or any legal action in which Freddie Mac is a named party

• Filing a notice of removal to federal district court for any legal action in which Freddie Mac is a named party

• Asserting any position in a legal action that relates to Freddie Mac's status as a Government Sponsored Enterprise (GSE), its conservatorship, or its conservator, FHFA

• Propounding discovery requests or otherwise serving or providing any discovery responses on behalf of Freddie Mac

**(c)    Referring to Freddie Mac in litigation**

Freddie Mac must be described in legal proceedings as "Federal Home Loan Mortgage Corporation ("Freddie Mac"), a corporation organized and existing under the laws of the United States of America." Freddie Mac may not be referred to as a "government agency."

**(d)    MERS-registered Mortgages**

See Section 8101.12(b) for additional requirements relating to notices from MERS and MERS-registered Mortgages.

| Related Guide Bulletins | Issue Date |
|---|---|
| Bulletin 2016-13 | July 13, 2016 |

> Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer
> Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and
> Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection,
> Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.1: Servicer's
> management of law firms for Freddie Mac Default Legal Matters (03/02/16)

## 9501.1: Servicer's management of law firms for Freddie Mac Default Legal Matters (03/02/16)

This chapter sets forth requirements for the Servicer's review and evaluation, selection, retention and management of law firms (referred to throughout this chapter as "firms") for Freddie Mac Default Legal Matters.

Effective June 1, 2013, all referrals of Freddie Mac Default Legal Matters must be conducted in accordance with the requirements of Chapter 9501. Chapter 9501 governs the referral of Freddie Mac Default Legal Matters to law firms selected by the Servicer under the requirements of Section 9501.7.

Effective August 1, 2013, Servicers must comply with all requirements of this chapter in order to refer Freddie Mac Default Legal Matters to law firms. Refer to Chapter 9502 for requirements related to Default Legal Matters referred prior to the August 1, 2013 effective date.

Each Servicer is responsible for retaining firms for Freddie Mac Default Legal Matters. Freddie Mac will continue to retain firms directly for REO-related legal services: eviction, REO closing, and related litigation (refer to Chapters 9401 and 9402 for more information relating to litigation).

> Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer
> Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and
> Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection,
> Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.2: Review
> and evaluation of firms (03/02/16)

## 9501.2: Review and evaluation of firms (03/02/16)

**(a)  Due diligence**

As part of its selection process, each Servicer is responsible for obtaining and evaluating documentation and information from firms, and conducting due diligence to ensure that selected firms meet the requirements set forth in Section 9501.3. As part of the process, each Servicer must:

- Obtain and review all required documentation and information submitted by each firm

- Ensure that it selects from a pool of potentially acceptable firms that is diverse, and includes minority and women-owned firms and other diverse firms when feasible; and

- Ensure that the firm or any entity or individual performing work for the firm is not on the Freddie Mac Exclusionary List in accordance with Section 3101.1

**(b)  Due diligence documentation**

The Servicer must provide to Freddie Mac upon request a copy of each firm's application information and related due diligence documentation. Freddie Mac reserves the right to review the process, procedures and due diligence used by the Servicer to evaluate and select a firm.

**(c)    Document retention requirements**

The Servicer must retain all information submitted by a firm in support of the firm's application and all information otherwise gathered by the Servicer regarding the firm. The Servicer must maintain any information relating to firms that are selected and retained by the Servicer for as long as the firm is providing legal services with respect to Freddie Mac-owned or guaranteed Mortgages and, thereafter, for the longer of any retention period applicable to the Servicer or seven years. The Servicer must maintain any information relating to firms that are not selected and retained by the Servicer for the longer of any retention period applicable to the Servicer or seven years.

> Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.3: Firm Minimum Requirements (11/15/17)

## 9501.3: Firm Minimum Requirements (11/15/17)

The Servicer must ensure that all firms selected and retained to handle Freddie Mac Default Legal Matters meet the firm minimum requirements specified in this section ("Firm Minimum Requirements"), and all other applicable Freddie Mac requirements. The Firm Minimum Requirements are as follows:

**(a)    Firm practice**

The firm's practice areas must include end-to-end default-related legal services: foreclosure, bankruptcy, loss mitigation (e.g., deeds-in-lieu of foreclosure), default-related litigation and REO-related legal services: eviction, REO closing and related litigation.

The firm must:

- Be familiar with industry standards in the State in which it practices
- Understand the State legal processes and requirements in default-related and REO-related legal services; and
- Understand the substantive legal issues in the State (e.g., standing)

Additionally, the Servicer must consider firm experience in the following areas: foreclosure mediation, the Fair Debt Collection Practices Act, title curative issues, and general housing-related issues (e.g., rent control, Section 8, lead paint liability, health code violations, foreclosure redemption, confirmation and ratification, homeowners association, mobile home matters, and Cooperative Share Loans). The firm should also have some experience with delegation for loss mitigation.

The Servicer must also consider the firm's membership in default-related and REO-related trade and industry groups, attendance or participation in State bar associations, seminar and lecture participation and attendance, and any other activities relevant to default-related and REO-related law practice.

**(b)   Presence in State**

Firms generally must have a staffed office in the State in which the firm is retained for Freddie Mac Default Legal Matters.

In addition:

- The legal work must be performed by the attorneys licensed in the State where the Mortgaged Premises is located
- The firm must be registered, as necessary, with appropriate State authorities
- For the States in which an appropriately staffed office is required, the firm must disclose to the Servicer the extent, if any, to which work will be performed by an office of the firm in another State
- The Servicer must require the firm to disclose to the Servicer where the staff handling the work in the particular State is located, and to whom the staff in that office regularly reports; and
- The Servicer must obtain office addresses for each firm it seeks to retain

**1.    Judicial foreclosure States**

In judicial foreclosure States, the firm must have an appropriately staffed office in the State in which the firm is retained for Freddie Mac Default Legal Matters.

**2.    Non-Judicial foreclosure States**

In non-judicial foreclosure States, a firm must have an appropriately staffed office located in the State in which the firm is retained, except in the following non-judicial foreclosure States: Alaska, District of Columbia, Idaho, New Hampshire, Rhode Island, Montana, West Virginia and Wyoming. In those States, Servicers should give preference to firms that have staffed offices in those States. However, out-of-State firms may be used to handle Freddie Mac Default Legal Matters, provided that the firm is located in the same region of the country and is able to demonstrate that it has policies, procedures and processes in place to handle cases from out of State.

Servicers may use firms outside of Puerto Rico, the U.S. Virgin Islands and Guam to handle foreclosure and bankruptcy matters in those States. Servicers should give preference to firms that have staffed offices in the State, but out-of-State firms may be used, provided that they are able to demonstrate that they have policies, procedures and processes in place to handle cases from outside the State.

If a Servicer has difficulty finding a sufficient number of firms with appropriately staffed offices in States other than those listed in the exceptions above, the Servicer may contact Freddie Mac to request an exception to the requirement that a firm have an appropriately staffed office located in the State. Requests should be sent to Freddie Mac **(see Directory 1)**.

**(c)   State-specific industry references**

The Servicer must obtain from the firm at least two State-specific mortgage servicers or default-related references, or if the firm has been in existence less than one year, the partners or shareholders of the firm must provide at least two Servicer or default-related references in connection with work performed in the particular State.

**(d)   Statewide coverage and use of local counsel**

The Servicer must ensure that the firm has the ability to cover foreclosure, bankruptcy, eviction, REO closing matters and default-related litigation throughout the State.

If the firm has partnerships or relationships with third parties (e.g., local counsel, trustee companies or title companies) that will perform or complete some aspect of the default-related and REO-related work, the Servicer must require the firm to: (i) obtain disclosure from the firm regarding such relationships and the extent to which third parties will be relied upon and (ii) determine whether the firm has a reasonable contingency plan for the loss of any of those relationships or operational processes. In evaluating any such third-party relationship, the Servicer must consider the length of time the relationship has existed and the adequacy of the firm's written policies to mitigate third-party risk.

If a firm uses local counsel to handle matters within the State, the Servicer must ensure that the firm has a process to select, manage, and review the local counsel and their work product. The process must be designed to ensure that local attorneys are qualified and adequately trained and have a satisfactory history with respect to bar complaints, sanctions and similar matters.

For a firm's contested caseload (e.g., contested foreclosures and litigated cases), the firm's reliance on local counsel must be minimal. Any use of local counsel for these matters must be structured so that the retained firm will direct and manage the local counsel on those matters.

**(e)   Prior volume experience**

Servicers must confirm that the firm and/or managing attorney(s) has completed a sufficient number of foreclosure, bankruptcy, loss mitigation, eviction and REO matters within the past 24 months to demonstrate that the firm has experience in representing creditors in default-related matters.

For the 24-month period, the Servicer must review the total number of matters referred, the total number of matters completed and the number of matters currently pending for each of the following areas: foreclosure, bankruptcy, loss mitigation, eviction and REO closing.

What constitutes a sufficient number of completed default-related and REO-related legal services will vary depending upon the State at issue, the volume the Servicer expects to refer to the firm, and the relative size of the firm. Servicers must consider these factors when making this determination.

**(f)   Firm has adequate, relevant State-specific experience**

The Servicer must confirm that the firm has one or more managing attorney(s) or partner(s) with no less than 8 years of relevant, State-specific experience in foreclosure (including where applicable, confirmation, redemption and ratification matters), bankruptcy, loss mitigation, eviction, and REO closings and litigation. Servicers may make exceptions to this requirement for documented reasons in the event a firm is otherwise qualified.

The Servicer must obtain the names and the years of experience in each area (foreclosure, bankruptcy, eviction, REO closings and related litigation) for the firm's managing attorney(s) or partner(s) and associates.

If the principals or partners of the firm are not actively involved in the management of the firm, the Servicer must consider the level of experience of those actively involved in managing the firm.

**(g)** **One or more of the firm's lead attorneys has adequate, relevant litigation experience in the State**

The Servicer must determine whether the firm has at least one lead attorney to handle Freddie Mac Default Legal Matters with a minimum of five years of experience in default-related and REO-related litigation in the State. The firm's partner(s) or managing attorney(s) may act as the lead attorney for Freddie Mac Default Legal Matters. If the firm will utilize staff attorneys for Freddie Mac Default Legal Matters, one or more staff attorneys must have at least three years of experience in handling default-related and REO-related litigation in the State.

**(h)** **Attorney licensing**

The Servicer must confirm that the firm's attorneys who will handle Freddie Mac Default Legal Matters are licensed to practice, and in good standing, in the State in which the firm is being retained. Legal work must be performed by attorneys licensed in the State.

**(i)** **Staff experience**

The Servicer must determine whether the firm's non-attorney staff has reasonable experience. In determining what constitutes reasonable experience, the Servicer must consider the average years of experience, education, qualifications and demonstrated ability of the non-attorney staff in relation to their respective levels of responsibility.

**(j)** **Staff oversight**

The Servicer must confirm that the firm has appropriate attorney-to-staff ratios to ensure appropriate staff oversight given the size of the firm and the firm's operational structure. The Servicer must consider whether the firm practices in a judicial or a non-judicial State, the firm's case management practices, the State-specific process, attorney and staff experience, firm technology and firm infrastructure.

**(k)** **File oversight**

The Servicer must confirm that the firm has appropriate (i) attorney-to-file and (ii) staff-to-file ratios, given the size of the firm and the firm's operational structure. The Servicer must take into consideration whether the firm practices in a judicial or a non-judicial foreclosure State, the firm's case management practices, the State-specific processes, attorney and staff experience, firm technology and firm infrastructure.

**(l)** **Firm capacity**

As of the date of the submission of the Servicer Selection Form via **https://freddiemacsats.com**, the Servicer must confirm that the firm has the ability to accept additional referrals. Additionally, the Servicer must confirm that the firm is not operating at full capacity, given the existing facilities, personnel, and technology or, alternatively, the firm must outline to the Servicer's satisfaction the steps and time frame necessary to be in a position to handle additional referrals while still maintaining appropriate firm–to-file and staff-to-file ratios. The Servicer must confirm that the firm has contingency plans to deal with a contraction in the market.

**(m)  Ethics and professional standards**

The firm must demonstrate a history of legal practice that comports with applicable legal and ethical standards, reflecting high professional standards. The Servicer must conclude that the firm does not, in the totality of the circumstances, pose a legal and/or reputational risk or exhibit systematic issues that may lead to reputational and/or legal risk to Freddie Mac.

The Servicer must obtain the following information from the firm in order to evaluate the sufficiency of the firm's professional standards:

- Any sanctions against the firm or any of its present or former attorneys in the past five years, including the nature of the sanctions and if they relate to a loan-level matter or systemic firm practice, and if related to firm practice, any corrective actions taken by the firm

- Any bar complaints/reprimands against present and former firm attorneys in the past ten years and whether the complaints were closed, pending or resulted in some form of adverse action

- Any government investigations involving firm practices in the past ten years and whether the investigations involved firm practices or are related to client investigations

- Any damages or settlement of claims as a result of an allegation of professional negligence against the firm or its attorneys in the past five years (i) in excess of $20,000 in any single occurrence, $50,000 in the aggregate, or (ii) reflect a possible pattern of professional negligence, regardless of amount; and

- Any significant litigation asserting systemic issues with firm processes or legal work, such as any class action lawsuit against the firm

If the Servicer is aware of any of the above items that involve the firm's professional standards but which were not disclosed by the firm, the Servicer must disclose them to Freddie Mac in the Servicer Selection Form.

The Servicer must obtain a disclosure from the firm regarding whether the firm (or any of its partners, shareholders, or employees while acting as a partner, shareholder, or principal at another firm) has been previously terminated by Freddie Mac or Fannie Mae or had referrals suspended by Freddie Mac or Fannie Mae.

The Servicer must obtain a certification from the firm that, to the best of the firm's knowledge, the firm's documents have been and continue to be prepared, executed and/or notarized in compliance with applicable law. If the firm reports that the firm, its attorneys, notaries or third-parties that the firm relies on to perform any aspect of default-related or REO-related services have previously prepared, executed or notarized documents that have not been in compliance with applicable law, the Servicer must conclude that the firm has instituted controls, procedures, and processes to address the contributing cause(s) of the firm's failure to comply with applicable law in order to execute the Servicer Selection Form.

Freddie Mac expects Servicers to exercise sound judgment and consider the totality of the circumstances in evaluating the potential legal and reputational risks posed by a firm to Freddie Mac. The items for consideration outlined above are not intended to be exhaustive or to disqualify a firm from retention if the Servicer concludes that the firm is acceptable considering the totality of the circumstances.

**(n)   Timelines**

The Servicer must review the firm's completion timelines, and confirm that the firm is able to track, monitor and complete foreclosure and bankruptcy matters in compliance with applicable law and Freddie Mac timeline requirements, taking into consideration outside factors that impact compliance with Freddie Mac timelines such as new foreclosure requirements and court delays.

**(o)   Information privacy**

The firm must maintain physical, technical and procedural controls and effective information security and data management to:

- Ensure the security and confidentiality of personally identifiable information (PII) and confidential information, whether in paper, electronic or other form
- Protect against any threats or hazards to the security or integrity of such information; and
- Protect against unauthorized access to or use of such information

The firm must implement controls meeting or exceeding industry standards, including, as applicable, standards promulgated by the International Office for Standardization (ISO) or National Institute for Standards and Technology (NIST). The firm must ensure that PII that is stored on the firm's systems and workstations is encrypted at rest at all times. The firm must have secured storage for promissory notes and other original documents to prevent theft and to ensure protection against fire, flood or other damage. The firm may not perform, outsource, or send to any affiliate outside of the United States or its territories, any legal work on Freddie Mac-owned or guaranteed Mortgages, including any storage of Freddie Mac data. The firm may not send any PII underlying Freddie Mac-owned or guaranteed Mortgages, outside the United States. The firm must have written policies, procedures, and processes in place by the date of the submission of the Servicer Selection Form, related to protection of PII and fraud prevention, including policies, procedures and processes related to: background checks of all employees; protection of PII; fraud prevention and identification; and incident response and notification protocols for data breaches and other security incidents. The Servicer must review and confirm that the firm meets these requirements for information security, data management, protection of PII and fraud prevention.

**(p)   Daily reporting to Freddie Mac**

The Servicer must confirm that the firm has the capability to provide daily reporting to Freddie Mac of key metrics (i.e., volume, milestones, delays, loss mitigation successes, litigation detail, etc.) via the Attorney Data Reporting (ADR) System, a Servicing Tool, pursuant to Section 9501.10. The Servicer must also ensure that the firm has staff responsible for reporting data directly to Freddie Mac using ADR.

**(q)     Technology**

The Servicer must confirm that the firm has adequate technology in place or technological capabilities to provide reporting, communication and tracking of key events and milestones, including access to PACER/ECF or other similar systems to obtain case and docket information from federal appellate, district and bankruptcy court records.

Additionally, the Servicer must confirm that the firm is able to provide status reports and track significant dates and events for foreclosure, bankruptcy, evictions and REO closings and has the capability to measure the duration between various process stages, to identify process impediments (e.g., holds) and to parse holds into different categories.

If a firm is multi-jurisdictional or has partnerships or relationships with third parties (e.g., local counsel, trustee companies or title companies) that will perform or complete some aspect of the default-related or REO-related work or if the firm relies on other offices to perform some aspect of the work or provide operational support, the Servicer must confirm that the firm maintains a reliable and secure means of exchanging matter information between each office and any third party the firm relies upon.

The Servicer must require the firm to describe whether the firm currently uses a universal translation technology to communicate information between their technological system and the various Servicers' systems, or explain its method for transmitting information efficiently, accurately and securely to Servicers.

**(r)     Technology staffing**

The Servicer must confirm that the firm has adequate in-house technical expertise or readily available vendor support to ensure compliance with Freddie Mac's automated reporting requirements.

**(s)   Insurance requirements**

The Servicer must confirm that the firm has an appropriate level of malpractice and errors and omissions insurance coverage in place or be able to obtain an appropriate amount of insurance by the date of the submission of the Servicer Selection Form. The appropriate level of insurance coverage will depend upon the total number of Freddie Mac and Fannie Mae files the firm is managing or expects to manage when being evaluated by the Servicer. The firm must have the ability to obtain the appropriate amount of insurance coverage under the new requirements as follows:

- Tier I, volume of 0-4, 499 foreclosure matters, coverage of not less than $1 million per occurrence with an aggregate of not less than $3 million

- Tier II, volume of 4, 500-19, 999 foreclosure matters, coverage of not less than $5 million per occurrence with an aggregate of not less than $5 million; and

- Tier III, volume of 20,000 or more foreclosure matters, coverage of not less than $8 million per occurrence with an aggregate of not less than $8 million

The required level of insurance is determined by the higher of the Freddie Mac or Fannie Mae pending foreclosure volume. By way of example, if a firm had 2,000 Freddie Mac foreclosure matters and 4, 501 Fannie Mae foreclosure matters, the firm would fall within Tier II and the required coverage would be not less than $5 million per occurrence with an aggregate of not less than $5 million. Beginning in 2014, Servicers must conduct an updated coverage analysis annually, with the appropriate level of insurance to be determined by the number of matters being handled as of June 1 of each year. When an annual review reveals a need to increase a firm's coverage, firms will have until December 31 of each year to obtain any required increased coverage. Servicers may grant firms additional time to obtain increased coverage if necessary to reach the routine renewal date for the firm's policy, but may not grant extensions beyond June 1 of the following year.

**(t)   Financial resources**

The Servicer must confirm that the firm has adequate financial resources and the financial ability to make required advances in connection with filing fees and costs necessary to process default-related and REO-related matters.

The Servicer must review the firm's financial statements and/or other firm financial documents in order to confirm that the firm has sufficient reserves or credit lines to manage operating expenses.

**(u)   Business continuity**

The Servicer must confirm that the firm has business continuity and/or disaster recovery plans in place to recover critical business functions. The firm must have a documented succession/continuity plan in the event of loss of the firm owners/partners.

**(v)  Quality control**

The Servicer must confirm that the firm has written policies, procedures and/or processes in place by the date of the submission of the Servicer Selection Form, to ensure the proper management and supervision of staff and the proper preparation, review, execution and notarization of default-related documents and REO-related documents. The Servicer must also confirm the firm has an escalation process for employees to raise document execution and other quality control issues to firm management.

The Servicer must obtain documentation and information related to the firm's process for ensuring compliance with its policies, procedures, processes and training, such as an internal compliance program and/or quality control reviews.

**(w)  Employee training**

The Servicer must confirm that the firm has written policies for employee training, including privacy training. When determining whether a firm's employee training is adequate, the Servicer must review the frequency of training, the presence of policies and procedures and firm handbooks, manuals and job aids.

**(x)  Adverse matters**

No substantial part of the firm's practice can include matters that are adverse to financial institutions, including Freddie Mac or Fannie Mae. Adverse matters to financial institutions include:

- Homeowners or condominium association foreclosures
- Consumer debtor or mortgagor representation
- Bankruptcy trustee representation; or
- Any other client(s) that may create a potential conflict of interest

**(y)  Conflicts of interest**

Attorneys must not be affected by a conflict of interest or a potential conflict of interest when handling Freddie Mac Default Legal Matters. The Servicer must retain the most qualified attorneys in compliance with Freddie Mac requirements to assist with processing Freddie Mac Default Legal Matters without regard to arrangements that could provide a financial or personal benefit directly or indirectly to the Servicer, its employees, outsource companies or third party vendors utilized by the Servicer to assist in Servicing defaulted Mortgages.

On the Servicer Selection Form, the Servicer must disclose to Freddie Mac any current, past (within the last five years), or pending personal and/or financial relationships between (i) the Servicer and the firm, including its partners and shareholders (as applicable) and (ii) the firm, including its partners and shareholders (as applicable), and any outsourcing company or other third-party vendor utilized by the Servicer to assist in Servicing defaulted Mortgages.

**(z)  Disclosure of third-party service providers**

The Servicer must require the firm to disclose the identity of, and relationship with, any entities the firm relies upon to provide third-party support functions performed on the Servicer's behalf, including, but not limited to, title searches, title insurance, posting, publication, and process services.

The Servicer must also require the firm to disclose whether the firm has a process to select and regularly review costs and performance of vendors of related sources to ensure competitive pricing and high quality.

**(aa) Referrals**

The Servicer is responsible for ensuring that the firm complies with Freddie Mac requirements and applicable laws regarding referrals and payment of related fees and benefits, as further described in Sections 9501.7 and 9501.8.

The Servicer must not require the firm to use vendors, outsource companies or other third-parties specified by the Servicer as a condition of receiving a referral of a Freddie Mac Default Legal Matter.

**(bb) Diversity data**

The Servicer must confirm that the firm has the capability to report diversity data to the Servicer and Freddie Mac, if necessary.

| Related Guide Bulletins | Issue Date |
|---|---|
| Bulletin 2017-26 | November 15, 2017 |
| Bulletin 2016-12 | June 29, 2016 |

Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.4: Selection of firm (03/02/16)

## 9501.4: Selection of firm (03/02/16)

**(a)    Servicer selects firm**

If the Servicer determines that a firm meets the Firm Minimum Requirements specified in Section 9501.3 and all other Guide requirements, then the Servicer must complete and submit a Servicer Selection Form to Freddie Mac, via **https://freddiemacsats.com** and receive Freddie Mac's "no objection" determination before entering into an agreement with a firm to handle Freddie Mac Default Legal Matters. If Freddie Mac requests additional information from the Servicer as part of this process, the Servicer must provide the requested information within the time frame requested by Freddie Mac. Servicers may not rely upon a previous submission of a Servicer Selection Form with respect to a firm by another Servicer that received a "no objection" determination. Each Servicer must conduct its own due diligence, submit a Servicer Selection Form and receive a "no objection" determination for each firm that the Servicer wishes to retain to handle Freddie Mac Default Legal Matters.

If a firm practices in multiple States, the Servicer must submit a Servicer Selection Form for each State office for which the Servicer wishes to retain the firm.

**Servicer Attorney Tracking System (SATS) registration**

Servicers must use the Servicer Attorney Tracking System (SATS), an online process, to submit a Servicer Selection Form to Freddie Mac for each law firm selected to handle Freddie Mac Default Legal Matters. To establish access to SATS, Servicers must first register to create a user ID and password at **https://freddiemacsats.com**. After completing the registration process, SATS will allow users to submit the information required in the Servicer Selection Form to Freddie Mac for review. SATS will also allow Servicers to respond to Freddie Mac's requests for additional information, as necessary, and will allow Servicers to track each submission's status during the review process.

Freddie Mac will not review any Servicer Selection Form completed and submitted to any Freddie Mac e-mail address. Servicers must complete and submit the Servicer Selection Form via **https://freddiemacsats.com**.

**(b)    Freddie Mac review of Servicer Selection Form**

After Freddie Mac receives the Servicer Selection Form, Freddie Mac will notify the Servicer via the Servicer's registered e-mail address with SATS whether Freddie Mac:

- Objects to the Servicer's retention of the firm to handle Freddie Mac Default Legal Matters

- Has no objection to Servicer's retention of the firm to handle Freddie Mac Default Legal Matters; or

- Needs additional information or documentation, or due diligence to be conducted before deciding whether the firm may be retained. If requested, the Servicer must provide any additional information or documentation to Freddie Mac via **https://freddiemacsats.com**, and must conduct any further due diligence requested by Freddie Mac within the time period stated in Freddie Mac's request.

**(c)   Freddie Mac's response to Servicer firm selection**

    **(i)   Freddie Mac provides a "no objection" response**

       The Servicer must enter into a contract with the firm (if a contract does not already exist) as further specified in Section 9501.5, to handle Freddie Mac Default Legal Matters.

    **(ii)   Freddie Mac provides an "objection" response**

       If the Servicer determines not to retain a particular firm, or if Freddie Mac objects to the retention of a particular firm, the Servicer must notify the firm that the firm cannot be hired for Freddie Mac Default Legal Matters.

**(d)   The Servicer decides not to retain firm**

The Servicer is not obligated to inform Freddie Mac:

- If the Servicer determines that a firm does not meet the Firm Minimum Requirements; or
- If the Servicer decides not to retain a firm

**(e)   Diversity**

Servicers are reminded that they must be aware of, and comply with, Freddie Mac's requirements in Sections 1201.10 and 1301.2 The Servicer must commit to practice the principles of equal employment opportunity and non-discrimination in all its business activities, including the retention and hiring of firms retained pursuant to this section.

---

Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.5: Retention of firm (03/02/16)

---

## 9501.5: Retention of firm (03/02/16)

**(a)   Servicer contract with firm**

If the Servicer has not already entered into a contract with a selected firm and Freddie Mac has provided a "no objection" determination, then the Servicer must enter into a contract with the firm. The Servicer must notify Freddie Mac when the contract has been executed by updating the Servicer Attorney Tracking System (SATS) via **https://freddiemacsats.com**, and must provide a copy of the contract to Freddie Mac, upon request.

**(b)   Freddie Mac limited retention agreement with firm**

Freddie Mac will enter into a limited retention agreement that sets forth certain key retention provisions with each selected firm for each State in which the firm has received a "no objection" determination.

**(c)   Conflict between Servicer's contract and limited retention agreements; Servicer's respective consent**

The Servicer acknowledges that the limited retention agreement recognizes and reflects a joint attorney-client relationship between the law firm, Freddie Mac and the Servicer, and the Servicer consents to such joint representation. The Servicer consents, in advance, to the selected firm's representation of Freddie Mac in any Freddie Mac Default Legal Matter that is or might be adverse to the Servicer, and further agrees that the firm can use in such representation any information the firm gained in the course of jointly representing the Servicer and Freddie Mac. In the event of any inconsistency or conflict between the terms and conditions of the Servicer's contract with the selected firm and the terms and conditions of Freddie Mac's limited retention agreement with the firm, Freddie Mac's limited retention agreement shall control.

> Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.6: Training of firms (03/02/16)

## 9501.6: Training of firms (03/02/16)

**(a)   Training prior to referral**

The Servicer must not refer any Freddie Mac Default Legal Matters to a firm until the Servicer verifies that the firm has executed a limited retention agreement with Freddie Mac and has completed Freddie Mac's new firm training.

A firm is only required to attend Freddie Mac's new firm training once, regardless of the number of Servicers that select and retain the firm.

**(b)   Ongoing training**

The Servicer must ensure that each firm obtains appropriate training to keep the firm apprised of updated Freddie Mac requirements. If the Servicer provides its own standard training and/or other communication materials to a firm, the Servicer must include information regarding Freddie Mac's requirements.

> Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.7: Referral of Freddie Mac Default Legal Matters to firm (03/02/16)

## 9501.7: Referral of Freddie Mac Default Legal Matters to firm (03/02/16)

**(a)   Requirements prior to referral**

Prior to referring a Freddie Mac Default Legal Matter to a firm, the Servicer must confirm that the firm is eligible to receive a referral by ensuring that:

- The firm meets the Firm Minimum Requirements, as specified in Section 9501.3
- Freddie Mac has provided a "no objection" determination, as specified in Section 9501.4
- The firm has executed a contract with the Servicer requiring the firm to comply with all applicable Freddie Mac requirements, as specified in Section 9501.5
- The firm has executed a limited retention agreement with Freddie Mac, as specified in Section 9501.5
- The firm has completed Freddie Mac training and any additional Servicer training, as specified in Section 9501.6; and
- There are no conflicts of interest with respect to the retention of the firm and referral of Freddie Mac Default Legal Matters to the firm

**(b)   Diversification of referrals**

The Servicer must diversify its referrals of Freddie Mac Default Legal Matters to an appropriate number of firms in each State to protect the interests of Freddie Mac and to mitigate the risks related to a high concentration of Freddie Mac files. In selecting firms for referrals, the Servicer must consider firm capacity and management of staff to file ratios.

**(c)   Bankruptcy and foreclosure matters**

The Servicer must not refer foreclosure matters directly to trustees listed on the deeds of trust.

Refer to Section 9401.10 for additional referral requirements.

**(d)   Providing documentation to firm**

The Servicer must identify a file as a Freddie Mac Default Legal Matter when sending the file to a firm. When referring a file to a firm, the Servicer must provide all documentation required to initiate a foreclosure. If the firm requests any additional information and/or documentation at any time, the Servicer must provide such requested information and/or documents within three Business Days after receipt of the request, or within such earlier time frame if necessary to comply with timing requirements under applicable law or court orders and procedures.

For any Mortgage that the Servicer refers for foreclosure that is subsequently repurchased by the Servicer, whether voluntarily or involuntarily, the Servicer must notify foreclosure and/or bankruptcy counsel within two Business Days of the completed repurchase. (See Chapter 3602 for additional information about repurchases.)

**(e)   Contingency plan**

All Servicers must have a contingency plan in place, either in the form of a stand-alone document or incorporated into policies and procedures, to redirect new foreclosure and bankruptcy referrals.

---

Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection,

Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.8:
Prohibitions related to Freddie Mac Default Legal Matters (03/02/16)

## 9501.8: Prohibitions related to Freddie Mac Default Legal Matters (03/02/16)

Servicers must not require the firm to perform any foreclosure or bankruptcy-related services on any Freddie Mac Default Legal Matter without compensation.

**(a)  Prohibition against charging for, contracting for, or making arrangements to receive benefits for Servicing obligations**

A Servicer, whether acting directly or through an affiliate, service provider, vendor or outsourcing company, must not directly or indirectly:

- Charge Freddie Mac or the firm for any foreclosure or bankruptcy-related Servicing obligations, including expenses covered by the Servicing Spread; or
- Contract or make any arrangements with the firm whereby the Servicer (or its affiliate, service provider, vendor or outsourcing company) receives, directly or indirectly, any financial or other benefits (including, but not limited to, payments, the provision of employees or free or discounted services or products) from the firm in connection with any Freddie Mac Default Legal Matter or Freddie Mac-owned or guaranteed Mortgage

Refer to Section 8103.3 for additional information on Servicing obligations.

**(b)  Prohibitions with respect to use of specific vendors, services and/or products**

The Servicer, and not a service provider, vendor or outsourcing company assisting the Servicer in Servicing defaulted Mortgages, must select the firm to handle Freddie Mac Default Legal Matters, and Servicers must not permit service providers, vendors, outsourcing companies, or others to participate in or influence, in any way, the Servicer's referral process.

A Servicer must not, whether acting directly or through an affiliate, service provider, vendor or outsourcing company:

- Require the firm to contract with or use a particular service provider, vendor or outsourcing company, or to use, or pay for, a particular service or product
- Refuse to refer a file to the firm because the firm chooses not to contract with or use a particular service provider, vendor or outsourcing company, or chooses not to use, or pay for, a particular service or product; or
- Charge the firm for any aspect of the file referral or management process, including, but not limited to, the use of connectivity or invoice processing systems (e.g., licensing or subscription fees, "click" charges, or any other payment) in order for the firm to provide services necessary to handle Freddie Mac Default Legal Matters (e.g., to prosecute the foreclosure or bankruptcy case)

However, a Servicer may require the firm to use certain connectivity or invoice processing systems, provided that the firm is not required to pay for the use of, or access to, such systems.

Refer to Section 9501.9 for information about use of, and reimbursement for, connectivity and invoice processing systems.

Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection,

**Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.9: Servicer use of connectivity and invoice processing system (03/02/16)**

# 9501.9: Servicer use of connectivity and invoice processing system (03/02/16)

A Servicer, whether acting directly or through any vendor, service provider or outsourcing company, may employ electronic monitoring, management, reporting or information and document delivery processes technology, referred to in this section as a "Connectivity System, " and an invoice processing system as outlined below.

**(a)    Connectivity System**

A Servicer may employ a Connectivity System to assist with fulfilling Servicing obligations such as:

- Packaging and referring foreclosure and bankruptcy cases to the firm
- Communicating information and delivering documents between the Servicer and the firm as well as any other third parties requiring access to the Connectivity System; and
- Managing and monitoring foreclosure and bankruptcy cases

If a Servicer uses a Connectivity System:

- Freddie Mac will reimburse the Servicer for the actual cost of the connectivity fee up to the maximum expense limit specified in Section 9701.11
- The Servicer must provide the firm with use of and access to the identical Connectivity System
- The Servicer must permit, or continue to permit, the firm to integrate its own technology systems with the Connectivity System at no cost to the firm; and
- The Servicer must not pass on any Connectivity System related charges to the Borrower or the firm

**(b)**   **Invoice processing system**

A Servicer may employ an invoice processing system for managing the submission and payment of invoices.

If a Servicer, whether acting directly or through a vendor or outsourcing company, processes firm invoices electronically:

- Freddie Mac will reimburse the Servicer for the actual cost of the invoicing fee up to the maximum expense limits specified in Section 9701.11; and
- The Servicer must not pass on any invoice processing related charges to the Borrower or the firm

The amounts specified in Section 9701.11 for connectivity and invoice processing systems are the maximum amounts for which a Servicer may seek reimbursement for the life of the default (i.e., the duration of the foreclosure, including any Freddie Mac Default Legal Matter such as bankruptcy).

For example, if a Servicer has already referred a Mortgage to foreclosure and it then becomes necessary to take action with respect to a bankruptcy related to such Mortgage, or if a Servicer has already referred a file for bankruptcy and foreclosure has commenced following the bankruptcy referral, the Servicer may be reimbursed only for one connectivity fee. Likewise in this scenario, if the Servicer is using an invoice processing system, then the Servicer may only seek reimbursement for one invoicing fee associated with the foreclosure and for one invoicing fee associated with the bankruptcy during the life of the default.

> Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.10: Servicer reporting on Freddie Mac Default Legal Matters (06/29/16)

## 9501.10: Servicer reporting on Freddie Mac Default Legal Matters (06/29/16)

The Servicer must provide reports related to firm performance, management of foreclosure and bankruptcy processes, oversight of firm compliance and performance and other related matters as required by Freddie Mac. Servicers must ensure that all firms retained for Freddie Mac Default Legal Matters report data required by Freddie Mac directly to Freddie Mac accurately and in the time frames prescribed. This includes required daily reporting by its retained law firms, via the Attorney Data Reporting (ADR) System, of key metrics such as:

- Milestones during the lifecycle of Freddie Mac Default Legal Matters
- Delays affecting prompt and efficient completion of the Freddie Mac Default Legal Matter
- Successful loss mitigation activities
- Litigation detail during the lifecycle of certain non-routine litigation matters
- Completion of the Freddie Mac Default Legal Matter

Key metrics generally must be reported to Freddie Mac within 24 hours of occurrence, unless otherwise prescribed in related training materials for the web-based attorney reporting system. Servicers may obtain access to ADR, and monitor their law firms' reporting progress, by completing the **ADR Servicer Access Request Form** available on the Freddie Mac Default-Related Legal Services web page at
**http://www.freddiemac.com/singlefamily/service/default_legal_services.html**

| Related Guide Bulletins | Issue Date |
| --- | --- |

| Bulletin 2016-12 | June 29, 2016 |
|---|---|

**Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.11: Servicer monitoring and management of firm (03/02/16)**

# 9501.11: Servicer monitoring and management of firm (03/02/16)

The Servicer is responsible for managing and monitoring all aspects of the firm performance, providing necessary assistance to the firm relating to Freddie Mac Default Legal Matters, and for undertaking all activities required to protect Freddie Mac's interest in the Mortgage. The Servicer must also ensure that the firm is in compliance with applicable Freddie Mac requirements, and that the firm receives all training and documentation relating to applicable Freddie Mac requirements, either separately or as part of the Servicer's standard training.

**(a)     Compliance processes**

The Servicer must develop and have in place policies and procedures regarding oversight and compliance of firms handling Freddie Mac Default Legal Matters. The Servicer must have policies and procedures reasonably designed to ensure that firms handling Freddie Mac Default Legal Matters are in compliance with the limited retention agreement, the applicable provisions of the Guide, and applicable law.

The Servicer's ongoing compliance monitoring must address the following minimum elements:

- Ongoing eligibility under the Firm Minimum Requirements specified in Section 9501.3
- Compliance with the limited retention agreement, including the fee and cost guidelines; and
- Firm performance and processes necessary to ensure Servicer's compliance with applicable Guide requirements

The Servicer must conduct periodic compliance reviews and training as appropriate. In determining the frequency of firm compliance reviews, the Servicer must consider the overall risk posed to Freddie Mac by the firm (legal, reputational, and financial), firm file volume, performance, any changes in staffing ratios or levels, any litigation against the firm alleging systemic issues, any media coverage regarding the firm and the prior results of any firm compliance reviews.

**(b)** **Freddie Mac review of compliance process**

Freddie Mac reserves the right to review the Servicer's compliance process. Freddie Mac may require Servicers to conduct additional compliance activities related to firms handling Freddie Mac Default Legal Matters, such as additional firm compliance reviews.

The Servicer must make available to Freddie Mac upon request the materials relating to its performance and compliance monitoring of firms handling Freddie Mac Default Legal Matters, including:

- Information regarding the scope and methodology of the Servicer's compliance monitoring
- The schedule of firm compliance reviews conducted
- The identity of any vendors used in the firm compliance reviews
- All documentation from the firm compliance reviews; and
- All findings, reports or remediation plans resulting from the firm compliance reviews

In addition, Freddie Mac may require a Servicer to change the scope of its compliance process used to monitor firms handling Freddie Mac Mortgages.

**(c)** **Freddie Mac right to audit firm**

Freddie Mac also reserves the right to directly conduct firm audits and firm on-site visits as Freddie Mac deems necessary. Freddie Mac audits and visits may focus on items such as fee and cost compliance, Servicer compliance with Freddie Mac requirements, and high-risk issues, including compliance with applicable laws, reputational risk, unsatisfactory results of Servicer firm compliance reviews and conflicts of interest involving Freddie Mac-owned or guaranteed Mortgages.

> **Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.12: Escalation of firm issues to Freddie Mac (03/02/16)**

## 9501.12: Escalation of firm issues to Freddie Mac (03/02/16)

**(a)   Escalation of issues**

The Servicer must notify Freddie Mac via e-mail **(see Directory 1)**, within two Business Days of discovery or sooner if circumstances warrant, if the Servicer becomes aware of any issues or concerns relating to a firm (including a specific employee or vendor of a firm), or a Freddie Mac Default Legal Matter, including, but not limited to:

1.   Any information regarding a firm that may warrant a firm's suspension, termination or Servicer request to transfer Freddie Mac Default Legal Matters to another firm

2.   Information suggesting legal or reputational risk posed by the firm such as bar complaints, sanctions, or litigation alleging systemic issues with the firm, firm attorney, or the firm's practices

3.   Security incidents that compromise the security, confidentiality or integrity of "sensitive customer information" and that security incident is related to Freddie Mac-owned or guaranteed Mortgages (refer to Section 1301.2(f))

4.   Actual or alleged fraud on the part of the firm

5.   Federal, State, or local governmental inquiries, including congressional inquiries, regarding a firm, Freddie Mac-owned or guaranteed Mortgages, or Freddie Mac or Servicer practices affecting Freddie Mac-owned or guaranteed Mortgages

6.   Non-routine litigation (as described in Section 9402.2)

7.   Media inquiries relating to Freddie Mac, a firm, or Freddie Mac-owned or guaranteed Mortgages

8.   Volume or capacity issues with the firm

9.   Breach of the limited retention agreement between the firm and Freddie Mac, or the contract between the firm and the Servicer

10.   Legal matters such as regulatory updates and specific reporting on certain matters (e.g., transfer tax matters)

11.   Any systemic issues with the firm

12.   Systemic Servicer issues related to file suspensions and foreclosure holds (e.g., failure to properly implement new statutory changes); and

13.   Any material change in the ownership, partnership, or organization of the firm after executing the limited retention agreement. Such notifications should include instances where a named partner leaves the firm or a major practice group separates from the firm.

**(b)   Procedures relating to issues and concerns**

When a Servicer provides Freddie Mac notice of an issue requiring Freddie Mac's attention, the Servicer must designate in its e-mail one or more points of contact. Freddie Mac may request that the Servicer obtain additional information from the firm regarding the issue that was escalated to Freddie Mac, and the Servicer must promptly provide the requested information to Freddie Mac.

**(c)   Freddie Mac rights**

Freddie Mac reserves the right to issue direction to Servicers and firms regarding escalated issues. Refer to Section 9501.15 for more information about Freddie Mac's reservation of rights

**(d)   Escalated issue – confidential information**

Any issue that is identified and escalated to or by Freddie Mac pursuant to this section (other than non-routine litigation) is considered to be "confidential information" as defined in Sections 1201.8 and 8101.8. The Servicer must comply with the requirements of such sections with respect to treatment of any escalated issue.

---

**Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.13: File transfers, termination and suspension of firms (05/18/16)**

---

## 9501.13: File transfers, termination and suspension of firms (05/18/16)

**(a)    Servicer-directed suspension of referrals, Freddie Mac Default Legal Matter transfers and terminations**

If a Servicer becomes aware of information regarding a firm's handling Freddie Mac Default Legal Matters that might warrant a suspension of referrals of new Freddie Mac Default Legal Matters, the transfer of Freddie Mac Default Legal Matters to another firm, and/or termination of the firm (such as for legal, reputational, or operational risk), the Servicer must:

- Notify Freddie Mac within two Business Days via e-mail or sooner if circumstances warrant, as set forth in Section 9501.12; and

- Conduct due diligence with respect to the issue

If the Servicer intends to suspend referrals of new Freddie Mac Default Legal Matters, transfer Freddie Mac Default Legal Matters, and/or terminate a firm, the Servicer must provide Freddie Mac with at least five Business Days' notice **(see Directory 1)** prior to implementing the decision. Additionally, the notification must provide Freddie Mac with the implementation plan for the course of action chosen by the Servicer, pursuant to Section 9501.14.

For the transfer of Freddie Mac Default Legal Matters, once a Servicer has determined the eligible law firm(s) that will receive such file transfers, the following must also be included in the notification to Freddie Mac:

- Servicer name and the six-digit Seller/Servicer number
- The nine-digit Freddie Mac loan number
- Servicer loan number
- Date of transfer
- Original law firm name
- New law firm name
- Freddie Mac Default Legal Matter being transferred (e.g., foreclosure, bankruptcy proof of claim (POC) or bankruptcy motion for relief (MFR)) to the new law firm
- The State in which the Mortgaged Premises is located

In addition, the Servicer must:

- Upon request, provide Freddie Mac with the reason for the decision and the due diligence materials or other information supporting the decision

- Inform the firm of the decision; and

- Keep Freddie Mac periodically updated with respect to the status of implementation of the decision

Refer to Section 9501.14 for additional information relating to implementation of terminations, transfer of Freddie Mac Default Legal Matters and suspensions.

**(b)   Freddie Mac-directed suspension of referrals, matter transfers and terminations**

Freddie Mac may direct the Servicer to initiate an investigation of a firm if Freddie Mac becomes aware of information that might warrant a suspension of referrals of new Freddie Mac Default Legal Matters, the transfer of Freddie Mac Default Legal Matters, or termination of the firm. Freddie Mac also may conduct due diligence and investigations as necessary. Freddie Mac may instruct Servicers to suspend some or all referrals of new Freddie Mac Default Legal Matters, to transfer some or all existing Freddie Mac Default Legal Matters, or to terminate a firm.

In the event of a decision by Freddie Mac to suspend referrals of new Freddie Mac Default Legal Matters, transfer Freddie Mac Default Legal Matters, or terminate a firm, Freddie Mac will:

- Inform the Servicer of the decision and provide direction with respect to required Servicer actions, including direction with respect to transfers of Freddie Mac Default Legal Matters
- Inform the firm of the decision and provide direction to the firm with respect to required firm actions; and
- Terminate the limited retention agreement between Freddie Mac and the firm, as appropriate

**(c)   Documentation of due diligence review**

The Servicer must maintain documentation of the due diligence review, the Servicer's decision, and all other information supporting the decision for a period of seven years after such decision.

| Related Guide Bulletins | Issue Date |
| --- | --- |
| Bulletin 2016-9 | May 18, 2016 |

Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.14: Implementing file transfers and/or the termination and suspension of firms (03/02/16)

## 9501.14: Implementing file transfers and/or the termination and suspension of firms (03/02/16)

**(a)  Implementation plan**

Prior to implementing any decision to terminate a contract with a firm, suspend referrals of new Freddie Mac Default Legal Matters and/or transfer Freddie Mac Default Legal Matters from a firm, the Servicer must develop an implementation plan which addresses:

- File transfers
- The capacity of other eligible firms in the State to handle additional Freddie Mac Default Legal Matters and/or transferred Freddie Mac Default Legal Matters
- Proration of fees and costs between the transferor and transferee firms
- Contract provisions during any transition period, including insurance; and
- Other issues as necessary

The implementation plan must take into account any legal, operational or reputational risks that may arise during the transition period, and must address these risks in the most cost-efficient and effective manner. Freddie Mac reserves the right to require the modification of the implementation plan, and provide additional Servicer requirements relating to the termination of any firm, the suspension of referrals of new Freddie Mac Default Legal Matters and the transfer of Freddie Mac Default Legal Matters.

**(b)  Servicer monitoring of implementation plan**

The Servicer must take all necessary steps to ensure that the implementation plan proceeds in an orderly manner and that all Freddie Mac interests are protected during the implementation. Such steps include, but are not limited to:

- Transferring files relating to Freddie Mac Default Legal Matters to eligible firms
- Addressing any issues arising from the transfer of files, the suspension of referrals and the termination of a firm
- Reporting periodically to Freddie Mac on the status of the plan, including such details as how many files are transferred to each new firm, which new firms receive the files and the timing of transfers; and
- Such other details as requested by Freddie Mac

Servicers may not charge Freddie Mac or Borrowers for any fees or costs associated with transferring Freddie Mac Default Legal Matters, and such amounts may not be added to Borrower Mortgage balances.

**(c)  Freddie Mac's rights to manage termination, suspension and/or file transfers**

Freddie Mac may decide, in its sole discretion, that the legal, operational or reputational risks necessitate Freddie Mac's management of the:

- Termination of any firm with respect to its handling of Freddie Mac Default Legal Matters
- Suspension of referrals of Freddie Mac Default Legal Matters to a firm; and/or
- Transfers of files relating to Freddie Mac Default Legal Matters

In such case, the Servicer must cooperate with Freddie Mac in such management and provide all necessary documentation, files and information as requested by Freddie Mac.

Freddie Mac Single Family/Single-Family Seller/Servicer Guide/Single-Family Seller/Servicer Guide/Servicing/Series 9000: Servicing Default Management/Topic 9500: Selection, Retention and

> Management of Law Firms for Freddie Mac Default Legal Matters/Chapter 9501: Selection, Retention and Management of Law Firms for Freddie Mac Default Legal Matters/9501.15: Reservation of rights and remedies for non–compliance concerning litigation (03/02/16)

## 9501.15: Reservation of rights and remedies for non–compliance concerning litigation (03/02/16)

Freddie Mac reserves the right to direct and control all litigation involving a Freddie Mac loan. The Servicer and firm handling the litigation must cooperate fully with Freddie Mac in the prosecution, defense or handling of the matter.

In addition, Freddie Mac reserves the right to:

1. Select the foreclosure counsel for a particular case, whether the case is routine or non-routine litigation

2. Direct and manage the actions taken by the foreclosure counsel, on a case-by-case or individual State basis

3. Assess additional compensatory fees against the Servicer and/or seek repayment of losses, costs or damages from the Servicer sustained due to errors, omissions or delays by the Servicer or its agent; and

4. Direct and manage the actions taken by Servicers and firms relating to escalated issues specified in Section 9501.12

**Remedies for non–compliance**

If a Servicer fails to comply with the provisions under Chapter 9501, Freddie Mac, in its sole discretion, and in addition to any other remedies specified in the Guide or the Servicer's other Purchase Documents, reserves the right to:

- Refuse to reimburse the Servicer for any legal fees and costs
- Offset the entire legal fee from future foreclosure expenses otherwise eligible for reimbursement from Freddie Mac or seek the Servicer's reimbursement of the entire legal fee with interest, if Freddie Mac has already reimbursed the Servicer for the costs involved in the particular foreclosure or bankruptcy
- Require the Servicer to reimburse the firm or Freddie Mac for any prohibited payments or other financial benefits
- Prohibit the Servicer from contracting, directly or through any service provider, vendor or outsourcing company, with a firm with respect to products or services ancillary to a foreclosure or bankruptcy case
- Prohibit the Servicer from contracting with the service provider, vendor or outsourcing company involved in the prohibited activities with respect to Freddie Mac-owned or guaranteed Mortgages
- Seek Servicer repayment of losses, costs or damages sustained by Freddie Mac due to errors by the Servicer or its agent; and/or require repurchase of impacted Mortgage