# Exhibit C

Assignment of Deed of Trust

# Exhibit C

Inst #: 201308280003734
Fees: $17.00
N/C Fee: $25.00
08/28/2013 03:27:44 PM
Receipt #: 1751224
Requestor:
PREMIER AMERICAN TITLE
Recorded By: OSA   Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020
APN #: 177-36-111-001
NDSC NO.: 13-00363-US-NV
MIN NO.: 10002126912069602
PROP ADDRESS: 2937 BARBOURSVILLE CRT, HENDERSON NV 89052
6130 0796

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns and transfers to **U.S. Bank National Association** all beneficial interest under that certain Deed of Trust dated **12/27/2010** executed by **Jia Zhou, a Single Person** Trustor, to **UNITED TITLE OF NEVADA** Trustee, and recorded on **12/29/2010** as Instrument No. **201012290003967** (or Book, Page) of the Official Records of **CLARK** County, NV describing the land therein:

**AS PER DEED OF TRUST MENTIONED ABOVE.**

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust

Date : August 23, 2013

**Mortgage Electronic Registration Systems, Inc.**

By : Bethany K. Buck
It's: Assistant Secretary

STATE OF Kentucky
COUNTY OF Daviess

On August 23, 20 13, before me, Jennifer Crabtree , a Notary Public for said State, personally appeared Bethany K. Buck, Assistant Secretary who personally known to me (or who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

OFFICIAL SEAL
JENNIFER CRABTREE
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires Jan. 31, 2016
ID # 459377

# Exhibit D

MERS Rules

# Exhibit D



# MERS® System Rules of Membership

Effective Date: July 3, 2017

# MERS® SYSTEM RULES OF MEMBERSHIP

## TABLE OF CONTENTS

**INTRODUCTION** ....................................................................................................... **II**

**RULE 1   MEMBERSHIP** ............................................................................................ **1**

**RULE 2   REGISTRATION ON THE MERS® SYSTEM** .................................................. **8**

**RULE 3   OBLIGATIONS OF MERS ENTITIES** ........................................................... **14**

**RULE 4   RULE CHANGES** ....................................................................................... **16**

**RULE 5   FEES AND COSTS** ..................................................................................... **19**

**RULE 6   PROCEDURES AND GUIDELINES** .............................................................. **24**

**RULE 7   DISCIPLINARY ACTIONS** .......................................................................... **27**

**RULE 8   FORECLOSURE & BANKRUPTCY** ............................................................... **36**

**RULE 9   USE AND OWNERSHIP OF INFORMATION** ............................................... **39**

**RULE 10  GENERAL CORPORATE REQUIREMENTS** .................................................. **45**

**RULE 11  SERVICES** ................................................................................................ **48**

**RULE 12  WARRANTIES** .......................................................................................... **50**

**RULE 13  INDEMNIFICATION** ................................................................................. **54**

**RULE 14 NOTIFICATION TO MERSCORP HOLDINGS OF LAWSUITS  AND ADDITIONAL INDEMNIFICATION PROVISIONS** ............................................................................. **59**

**GLOSSARY** ............................................................................................................. **68**

**INTRODUCTION**

The Governing Documents contain the terms and conditions that govern the relationship between a Member, the MERS® System and the Companies. These MERS® System Rules of Membership (the "Rules") replace and supersede, in their entirety, any and all previously published Rules of Membership in place up to the effective date of September 1, 2015.

The Member shall be bound by any amendment to any of the Governing Documents in accordance with the Rules herein, providing that any additional obligations and liabilities of the Member shall begin upon the effective date of such amendment(s).  In the event of any conflict between these Rules and any other document comprising the Governing Documents, the provisions of these Rules shall control.

**MERS as Mortgagee of Record**

Mortgage Electronic Registration Systems, Inc. ("MERS") is a wholly owned subsidiary of MERSCORP Holdings, Inc. ("MERSCORP Holdings") created for the purpose of serving as the Mortgagee of Record in the applicable public land records solely as Nominee for the Note Owner and the Note Owner's successors and assigns, including the Note Holder.  MERS shall have no rights whatsoever to retain any payments made on account of a MERS Loan, to any servicing rights related to MERS Loans, or to retain any mortgaged properties securing MERS Loans.  MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to MERS Loans or mortgaged properties.

**Capitalized Terms**

Capitalized terms used within these Rules are defined in the Glossary section, which by this reference are incorporated into and made a part of these Rules.

**RULE 1**
**MEMBERSHIP**

*Section 1.*      MERSCORP Holdings and MERS shall make the services of the MERS® System available to any Member.  MERSCORP Holdings and MERS are each referred to as a MERS Entity.

*Section 2.* (a)  Each Member acknowledges and agrees that the Member's Organization Identification Number (Org ID), any Affiliate Org ID it might have, and each Mortgage Identification Number (MIN) associated with such Org ID(s) are the property of MERSCORP Holdings and the use of such Org ID(s) and MINs are subject to the terms and conditions of the Governing Documents.

(b)  Each Member shall designate one individual within its organization as the Executive Sponsor who will act as the liaison between the Member and the MERS Entities, with full authority to act on behalf of the Member in connection with the Member's dealings with the MERS® System, MERSCORP Holdings or MERS.  The Member is responsible for maintaining current information in the organization's Member Profile on the MERS® System, and, subject to applicable federal or state law, regulatory requirements, or other agreements, is responsible for notifying MERSCORP Holdings in writing in the event of (i) such Member's merger or combination with, or acquisition of or by, another Member, (ii) such Member's merger or combination with or acquisition of or by a non-Member entity, provided that such notice shall not be required if the non-Member entity is not in the business of investing in, originating, servicing or subservicing mortgage loans, or (iii) any change in Member's company name, in accordance with the Procedures. The Member is required to periodically review and confirm

designated contacts maintained in the MERS® System per the schedules provided in the Procedures.

   *Section 3.*   Resignation of Membership.   Any Member may resign its membership from the MERS® System by giving written notice of Resignation to MERSCORP Holdings in accordance with the Procedures.

   (a)      Such Resignation shall require completion of any obligation of such Member to (1) pay any fees or assessments, as provided in Rule 5, assessed prior to Resignation, to the extent such obligation has not been fulfilled,  (2) meet any conditions that MERSCORP Holdings may establish for the Deactivation of registered mortgage loans from the MERS® System, including sending for recordation within sixty (60) days all applicable MERS assignments of Security Instruments in the applicable public land records (duly executed by a MERS Signing Officer or MERS Corporate Officer) and providing an attestation that such assignments have been sent for recordation in accordance with the Procedures, and (3) provide notice in writing to MERSCORP Holdings that the Resignation of Membership requirements have been completed (collectively, the "Resignation of Membership" requirements).  Upon completion of the Resignation of Membership requirements, MERSCORP Holdings will then transfer the Member's membership to Resigned Member status.   The Member is required to notify MERSCORP Holdings when all assignments from MERS have been recorded in the applicable public land records, which obligation shall survive Resignation.  Notwithstanding the foregoing, Resigned Members shall remain liable and obligated under the terms of Rule 13.   The Member requirements set forth in this Section 3 are subject to a Member's ability to undertake such actions under applicable federal or state law, regulatory requirements, or other agreements and, if the Member determines it is unable to fulfill its Section 3 obligations, the Member shall

2

notify MERSCORP Holdings in writing and provide its basis in as much detail as the Member deems permissible.

(b)   If MERSCORP Holdings provides notice to the Member pursuant to Rule 7 of a violation(s) of the Rules and/or Procedures and such violation(s) have not been cured/remediated at the time the Member completes the Resignation of Membership requirements, the Member may be required to cure/remediate such violation(s) as an additional requirement of its Resignation.

(c)   In the event the Member fails to complete the Resignation of Membership requirements, the MERS Entities reserve the right to complete the Resignation, which includes the right to assign the interest held by MERS in any MERS Loans registered to the Member's Org ID or any of its Affiliate Org IDs in the MERS® System, to record such assignments in the applicable public records and to deactivate such MERS Loans in the MERS® System.  Each such assignment shall be from MERS to the Servicer, Subservicer, or Investor of the loan, unless the Investor directs MERS to assign its interest to another entity.  The MERS Entities shall send written notice to any other Members that are Servicers, Subservicers, or Investors on active loans registered to the Member's Org ID or any of its Affiliate Org IDs in the MERS® System at least thirty (30) days prior to deactivating such MERS Loans in the MERS® System or executing and recording any assignments.

Section 4.  Mergers and Acquisitions.

(a) Any Member that sells, transfers, or otherwise disposes of all or substantially all of its assets to any entity that is not a Member of the MERS® System, shall, subject to applicable federal or state law, regulatory requirements, or other agreements, provide written

3

notice of such transaction(s) to MERSCORP Holdings no less than ninety (90) days prior to the effective time of such disposition of assets to such non-Member entity.  The Member shall complete the Resignation prior to the completion of the disposition of assets to such non-Member entity. Notwithstanding the foregoing, the resigning Member shall not be required to comply with this sub-section if the acquiring entity submits a MERS® System Membership Application (the "Membership Application") no less than thirty (30) days prior to the sale or disposition of assets and subsequently becomes a Member bound by the Governing Documents.

(b) Any Member that plans to merge, acquire or be acquired by, or otherwise combine with any other entity and such other entity is the surviving entity and is a non-Member of the MERS® System, shall, subject to applicable federal or state law, regulatory requirements, or other agreements, provide written notice of such transaction(s) to MERSCORP Holdings no less than ninety (90) days prior to the effective date of such merger or combination with such non-Member entity, subject to Section 2(b).  The Member shall complete Resignation prior to the completion of the merger or combination with such non-Member entity. Notwithstanding the foregoing, the resigning Member shall not be required to comply with this sub-section if the surviving non-Member entity submits a Membership Application no less than thirty (30) days prior to the merger or combination and, as such, shall become a Member bound by the Governing Documents.

*Section 5.* Termination of Membership.   MERSCORP Holdings may terminate a Member's membership after providing such Member with immediate notice and following the expedited dispute resolution process set forth in Rule 7, Section 4 if MERSCORP Holdings reasonably determines that any of the following apply to such organization:

(a) MERSCORP Holdings has reasonable grounds to believe that the Member, or any principal associated with the Member, has been or is responsible for (i) fraud, fraudulent acts or breach of fiduciary duty, (ii) making a misstatement of a material fact or omitting to state a material fact to MERSCORP Holdings in connection with its application to become a Member, or (iii) the material violation of any statutes, rules and regulations applicable to the Member that is relevant to the provision of services of the MERS® System or the MERS Entities, which, in each case (whether (i), (ii), or (iii) above), would cause such Member's continued participation in the MERS® System to result in material detriment to the operational functions, reputation, or business of the MERS® System or the MERS Entities, respectively; or

(b) the Member, or any principal associated with the Member, has been convicted prior to the filing of its application to become a Member and fails to disclose such conviction on its Membership Application, or at any time thereafter while a Member, of any felony which involves the purchase, sale or pledge of a mortgage loan or any interest therein, or arose out of conduct of the business of funding, acquiring, lending on the security of, or servicing mortgage loans (or any business ancillary or related to any of the foregoing, which is relevant to the provision of services of the MERS® System or the MERS Entities), or involves robbery, larceny, embezzlement, fraudulent conversion, forgery or misappropriation of funds or other property, or other dishonest acts which, in each case specified in this Section 4(b), would cause such Member's continued participation in the MERS® System, to result in material detriment to the operational functions, reputation or business of the MERS® System or the MERS Entities, respectively; or

(c) the Member, or any principal associated with the Member, has been, or while a Member is permanently banned from doing business as a result of wrongful or otherwise

prohibited actions by the Member with one or more of the following: (A) Fannie Mae, (B) Freddie Mac, (C) Ginnie Mae, (D) the U.S. Department of Housing and Urban Development, or (E) the U.S. Department of Veterans Affairs, and MERSCORP Holdings deems such termination reasonably necessary to prevent material detriment to the operational functions, reputation, or business of the MERS® System or the MERS Entities, respectively.

For purposes of Rule 1, Sections 5 (a), (b) and (c), the term "principal associated with" when applied to any person or entity shall mean (i) any partner, senior officer, director or controlling person of such person or entity or (ii) any officer or employee of such person or entity who has, or shall have, access to update the MERS® System.

*Section 6.*  The Companies and each Member may not assign or transfer any rights or obligations as a Member under the Governing Documents to a non-Member unless expressly authorized herein.

*Section 7.* The Governing Documents contain many material continuing performance obligations by a Member and the Companies, and thus constitute a single, integrated executory contract within the meaning of 11 U.S.C. § 365. Upon a Member becoming the subject of a bankruptcy case, receivership, or similar insolvency proceeding, the Member shall continue to timely observe and perform all Member obligations under the Governing Documents, including but not limited to timely performance of all obligations and payment of all fees. Failure of a Member to timely perform all obligations and pay all fees shall entitle the Companies to obtain ex parte relief from the automatic stay of 11 U.S.C. § 362 or other similar laws to exercise all rights and remedies available under the Governing Documents. In addition, Member hereby acknowledges and agrees that (a) applicable law excuses the Companies from accepting

performance from or rendering performance to an entity other than a Member, and (b) the Governing Documents are a contract to extend financial accommodations to or for the benefit of the Member, and thus the Member may not assume or assign the Governing Documents or their membership interest pursuant to 11 U.S.C. § 365(c) or other similar laws without consent of the Companies.

*Section 8*.   Each Member agrees and certifies that it will not use borrower information accessed from the MERS® System (other than information which the Member already possesses) as a factor in determining a consumer's eligibility for credit or insurance to be used primarily for personal, family or household purposes, for employment, for a government issued license, or to continue to retain an existing credit account, or in assessing a consumer's credit or payment risks with respect to an existing obligation.

**RULE 2**
**REGISTRATION ON THE MERS® SYSTEM**

*Section 1.*       MERSCORP Holdings, in its sole discretion, shall determine the type of membership and level of access to the MERS® System permitted to each Member and the types of transactions that such Member may register on the MERS® System.   No Member may register or attempt to register any transaction not authorized under the Governing Documents or permitted by MERSCORP Holdings.

*Section 2.*       Subject to Rule 2, Section 1, each Member shall register a MERS Loan and may register any other mortgage loan on the MERS® System as an iRegistration.  Any mortgage loan or MERS Loan registered on the MERS® System shall reflect any and all applicable transactions with respect to such loans to which such Member is a party, in accordance with the Procedures.

*Section 3.* For a MERS Loan to remain active in the MERS® System, the designated Servicer and Note Owner must be Members.  The transfer of contractual servicing rights and/or beneficial ownership interests to a non-Member with respect to a mortgage loan registered on the MERS® System shall require the Deactivation of such mortgage loan from the MERS® System in accordance with the Governing Documents.

*Section 4.*  For a MERS Loan, each Member, at its own expense, shall cause "Mortgage Electronic Registration Systems, Inc." to appear in the applicable public land records as the Mortgagee of Record as Nominee for the Note Owner and its successors and/or assigns with respect to each mortgage loan that the Member registers on the MERS® System.  At the time

8

that a MERS Loan is registered on the MERS® System, the Member shall use commercially reasonable efforts to verify that it has complied with the preceding sentence, which shall be satisfied by verifying that the information in the applicable public land records and on the MERS® System, as specified in the Procedures, is consistent.  Each Member shall maintain an adequate quality assurance program to ensure that the foregoing verification procedures are effective.  Upon a Member becoming aware of any discrepancy between the information shown on the MERS® System and the information in the applicable public land records, the Member shall promptly correct the discrepancy.  Loans designated as iRegistration on the MERS® System shall be excluded from the requirements of this section.

*Section 5.* (a)  MERS shall act as the Nominee of the Note Owner and the Note Owner's successors and/or assigns, including the Note Holder with respect to each MERS Loan that a Member registers on the MERS® System.

(b)  Notwithstanding anything to the contrary in these Rules, and without limiting any authority granted in a mortgage made directly to MERS as Mortgagee as Nominee, with respect to any Mortgage that is subsequently assigned by a Mortgagee of Record and Note Owner to MERS as Nominee:

(i)  MERS is expressly appointed as agent for: (1) such  Mortgagee of Record and such Mortgagee of Record's successors and/or assigns, and their successors and assigns, and (2) the Note Owner and the Note Owner's successors and/or assigns, including the Note Holder, and their successors and assigns, with

the power and authority to exercise the rights and duties of such Mortgagee of Record, Note Owner or Note Holder, to:

(1)  receive any and all notices required or permitted to be given to or received by a mortgagee under a MERS Loan, Mortgage, Security Instrument or applicable law;

(2)  assign and convey (including recording any assignment) all right, title and interest in the Mortgage, for and on behalf of such Mortgagee of Record, Note Owner, or Note Holder;

(3)  release, in whole or in part, any property covered by the Mortgage, and to record any such release; and

(4)  discharge the Mortgage and to record any such discharge.

(ii)  Any Member who executes and records (or causes to be recorded) an assignment of Mortgage or Security Instrument to MERS as Nominee intends to appoint MERS as its agent to execute and record such documents and instruments as it may deem necessary or proper pursuant to the agency granted herein.

(iii)  MERS shall have such other and further authority as an agent with respect to a mortgage assigned as described in Section (b) of this Rule as may now or hereafter be provided in these Rules with respect to MERS Loans generally.

(iv)  As otherwise provided in these Rules, the agency granted under section 5(b)(i) of this Rule is granted by and for the sole benefit of Members.  Upon transfer of any MERS Loan to a person who is not a Member, MERS, acting on behalf of the selling

Member, will assign the related Mortgage or Security Instrument in question to such non-member and record such assignment.

(c)  In the absence of contrary instructions from the Note Owner, MERSCORP Holdings and MERS may rely on instructions from the Servicer or Subservicer shown on the MERS® System in accordance with these Rules and the Procedures with respect to transfers of legal title of the Note or mortgage, transfers of contractual servicing rights, and releases of any security interests applicable to such mortgage loan.  The Note Owner may give instructions that are contrary to those provided by the Servicer and/or the Subservicer that shall supersede all previous instructions by any other Member; provided, however, the Note Owner must deliver such contrary instructions to MERSCORP Holdings in writing (or electronically in an email at an e-mail address specified by MERSCORP Holdings) and the MERS Entities may each rely on such instructions until receipt of further written instructions from the Note Owner.

(d)  If the Note Owner or Investor is involved in a dispute with their Servicer, Subservicer or Warehouse Lender, the Members involved shall engage in a good faith effort to resolve the dispute between the parties. If unable to do so, the Note Owner/Investor may notify MERSCORP Holdings in writing regarding activity on the disputed MIN(s), and upon providing proof of ownership, may request that MERSCORP Holdings (i) process a transfer transaction, or (ii) correct the registration for the disputed MIN(s).

(e)  Any Member who purchases any right in a MERS Loan shall, by virtue of such purchase, be deemed to have assented to the terms of this Section 5.

*Section 6.*  When circumstances warrant that a lien should be released (e.g., payment in full, charge-off, etc.), any Member servicing or identified as the Servicer, Subservicer, or Investor for the mortgage loan shall be responsible, at its own expense, to take, or cause to be taken, action in compliance with the Procedures to execute a release of the Security Instrument (a "Lien Release") duly executed by a MERS Signing Officer.  If MERSCORP Holdings is notified that a Lien Release has not been executed in compliance with the Procedures and, after giving written notice of such failure (a) to the Members shown on the MERS® System as the Servicer or Subservicer, if any, in order to provide the Member(s) with an opportunity to promptly cure any such failures or deficiencies (unless such Member(s) are no longer in business or cannot otherwise be located or contacted, in which case notice shall not be required), and (b) to the Investor, if the Servicer or Subservicer is unavailable or non-responsive, and the Member(s) fail to take such action or give MERSCORP Holdings written notice that the MERS Loan should not be released, then the Companies, upon evidence that the lien should be released, reserve the right to release such lien.  Such Member(s), upon demand, shall reimburse the Companies for out-of-pocket costs in connection with the Lien Release, including any penalties incurred by the MERS Entities for failure to release the lien or take other action in a timely manner, and shall pay an administrative fee as shown in the MERS® System Pricing Schedule (as defined in Rule 5, Section 1(a)).  If the MERS Entities receive a request from a third party to release a lien for a loan that is either (x) not registered on the MERS® System or (y) not registered on the MERS® System to an active Member as Servicer, Subservicer, or Investor, the MERS Entities will take reasonable steps to determine if the loan has been paid in full.  If the MERS Entities determine

that the loan has been paid in full, or are unable to determine whether or not the loan has been paid in full after taking such reasonable steps, MERS may release the lien for such loan.

*Section 7.*   The Companies and the Member agree that: (i) the MERS® System is not a mechanism for creating or transferring liens or interests in mortgage loans, and (ii) MERS® System membership or a Member's use of the MERS® System shall not modify or supersede any agreement between or among the Members and/or any other parties having liens or interests in mortgage loans registered on the MERS® System.   Actual transfers of liens to or from MERS in the mortgage loans are reflected in the public land records as described in this Rule 2.

**RULE 3**
**OBLIGATIONS OF MERS ENTITIES**

*Section 1.*   MERSCORP Holdings shall make reasonable efforts to properly identify Urgent Mail and shall forward such mail to the designated Servicer or Subservicer Member(s), as reflected on the MERS® System, within two (2) business days of receipt at the MERSCORP Holdings mail processing center, in the form prescribed by and otherwise in accordance with the Procedures, all properly identified Urgent Mail received by MERSCORP Holdings or MERS with respect to MERS Loans registered on the MERS® System.  In the event the Servicer and Subservicer are no longer active Members, MERSCORP Holdings shall forward Urgent Mail to the Investor, as reflected on the MERS® System.  Nothing in this section shall limit or alter the obligations of any Member, current or former, under Rule 13.

*Section 2.*   MERSCORP Holdings shall provide Members with access to certain standard reports concerning information contained on the MERS® System, as specified in the Procedures, and such other reports as MERSCORP Holdings may determine from time to time.

*Section 3.*   Upon request from the Member in accordance with the Procedures, MERS shall furnish to the Member a duly authorized MERS Corporate Resolution appointing one or more officers of such Member (or for Members that do not have officers in their organizational structure, then employees who would be considered the equivalent of officers and who possess a level of authority ordinarily reserved for officers), selected by such Member, as MERS Signing Officers.  Such MERS Corporate Resolution shall grant MERS Signing Officers the limited authority to take action as  officers of MERS as prescribed by the MERS Corporate Resolution.

MERS shall respond to such request within three (3) business days of receipt.   All actions required to be taken by Members under these Rules to release, discharge, assign or convey a Mortgage, Deed of Trust or other form of security instrument in the public land records shall be taken by and through a MERS Signing Officer or a MERS Corporate Officer in the name of MERS as Mortgagee of Record.

**RULE 4**

**RULE CHANGES**

*Section 1.* (a)  MERSCORP Holdings shall notify in writing all Members of any proposed changes to these Rules, and shall provide a copy of such proposed changes as well as the proposed timeline for implementation to all Members no fewer than ninety (90) days prior to the proposed adoption date of such changes (the "full comment period").  MERSCORP Holdings shall provide for an appropriate transition, implementation and compliance period prior to the effective date of such changes as determined by the nature of the change(s) to the Rules.  No Member shall be required to comply with such changes prior to the expiration of such implementation period or be subject to any sanction as a result of noncompliance during such period.

(b)  Members may submit to MERSCORP Holdings for its consideration their comments with respect to any such proposed changes to the Rules including the proposed timeline for implementation no later than sixty (60) days from the date of the written notice provided by MERSCORP Holdings (the "initial comment period"). Such comments shall be reviewed by MERSCORP Holdings, and a summary of the comments received made available to Members.  No less than fifteen (15) days after the end of the initial comment period, MERSCORP Holdings shall provide all Members a second notice of the proposed changes including the proposed timeline for implementation to these Rules, which may incorporate comments provided by Member(s) during the initial comment period, and which identifies the incorporation of any such comments.  During the remainder of the full comment period, Members may submit to MERSCORP Holdings for its consideration their comments with respect

16

to the second notice of proposed changes (including the proposed timeline for implementation) and such comments shall be reviewed by MERSCORP Holdings.  Notwithstanding the receipt of any such comments during the initial or full comment period, the Board of Directors of MERSCORP Holdings, in its sole discretion, shall have the right to amend, add to or repeal any Rule of Membership or part thereof previously submitted for comment after the expiration of the full comment period, so long as such amendment, addition or repeal is not contrary to the Certificate of Incorporation of MERSCORP Holdings, and provided that such changes do not impose additional obligations or liabilities on Members or limit the obligations or liabilities of MERSCORP Holdings beyond those circulated for comment.

(c)   Members may submit to MERSCORP Holdings for its consideration any proposals for amendment(s) to the Rules at any time and MERSCORP Holdings shall acknowledge receipt and review such proposal within thirty (30) days.  If the President of MERSCORP Holdings approves such Member proposal(s) for comment, MERSCORP Holdings shall notify all Members in writing of the proposed amendment(s) for their review during the full comment period and transition compliance period as described in the immediately preceding section. Notwithstanding the foregoing, MERSCORP Holdings is under no obligation to accept or implement such Member proposed amendment(s).

*Section 2.*   If MERSCORP Holdings determines in its reasonable judgment, and as approved by its Board of Directors, that an immediate change to the Rules is required due to urgent legal, regulatory or operational issues, it may implement this change concurrently with notice in writing to all Members, which shall set forth the reason for such change, providing for

appropriate transition, implementation and compliance period(s) prior to the effective date of such changes as determined by the nature of the change(s).

*Section 3.*   Each Member shall be bound by any amendment to the Rules with respect to any action or inaction by the Member occurring subsequent to the time such amendment takes effect as fully as though such amendment were now a part of the Rules; provided, however, that no such amendment shall affect the Member's right to resign its MERS® System membership in accordance with the procedures set forth in these Rules before such amendment or change becomes effective.

**RULE 5**
**FEES AND COSTS**

*Section 1.* (a)  <u>Transaction Fees</u>. Each Member shall pay such fees, charges and assessments to MERSCORP Holdings for membership, registrations, transfers, and other transactions on the MERS® System and other services rendered by MERSCORP Holdings as shall be determined from time to time by MERSCORP Holdings in its sole discretion, and specified in a fee schedule promulgated by MERSCORP Holdings which may change from time to time (the "<u>MERS® System Pricing Schedule</u>").

(b)  <u>Pricing Schedule</u>.  MERSCORP Holdings shall provide all Members with at least thirty (30) days' advance written notice of changes to the MERS® System Pricing Schedule with the effective date of the new fees.

(c)  <u>Transfer Fees</u>.  If a Member sells or otherwise transfers the contractual rights to service a loan registered on the MERS® System to another Member, then the transferring Member shall reflect such transfer on the MERS® System in accordance with these Rules and Procedures and a <u>Seasoned Servicing Transfer Fee</u> in the amount specified in the MERS® System Pricing Schedule in effect at the time the transfer is effective shall be due to MERSCORP Holdings for each loan transferred if the transfer date is more than two hundred and seventy (270) days from the <u>Note Date</u> for that loan.  An <u>Intracompany Transfer</u> shall be subject to an <u>Intracompany Transfer Fee</u> for each loan transferred in the amount specified in the MERS® System Pricing Schedule in effect at the time the transfer is effective if the transfer date is more than two hundred and seventy (270) days from the Note Date for that loan.

(d) <u>Transfer Fee Responsibility</u>. Fees for the transfer of servicing between Members (including Intracompany Transfer Fees) shall be payable by the transferor.  If the transferor fails to pay such transfer fees due to bankruptcy, receivership, conservatorship, or because the transferor is no longer in business or cannot otherwise be located or contacted, MERSCORP Holdings will invoice the transferee and the payment of those transfer fees shall be the responsibility of the transferee.  Any monies received by MERSCORP Holdings from the bankruptcy estate of the transferor, or from or on behalf of the transferor, shall be applied as a credit to the transferee's MERSCORP Holdings account.  The transferee will also be responsible for the transfer fees if the servicing transfer transactions have not been initiated on the MERS® System, and the transferor cannot initiate the transactions itself due to bankruptcy, receivership, conservatorship, or because the transferor is no longer in business or cannot otherwise be located or contacted and the transferee requests such transaction to be initiated by MERSCORP Holdings.  If the transferee fails to pay any transfer fees (i) within sixty (60) days of the payment due date, and (ii) after notice of delinquency at approximately thirty (30) days after the due date,and such fees are not being disputed in good faith by the transferee, the transferee may be locked out of the MERS® System pending full payment of all outstanding balances (except penalties under dispute pursuant to Rule 7, Section 2).

(e) <u>Registration Fee Responsibility</u>. If a Member registers a mortgage loan on the MERS® System pursuant to these Rules and Procedures, and that Member subsequently transfers the servicing of that mortgage loan to another Member without first paying the registration fee to MERSCORP Holdings pursuant to Rule 5, Section 1(a), and the transferor fails to pay such registration fees due to bankruptcy, receivership, conservatorship, or because the

transferor is no longer in business or cannot otherwise be located or contacted, MERSCORP Holdings will invoice the transferee and  the immediate payment of those registration fees shall be the responsibility of the transferee.  Any monies received by MERSCORP Holdings from the bankruptcy estate of the transferor or from or on behalf of the transferor shall be applied as a credit to the transferee's MERSCORP Holdings account.  If a MERS Loan has not been registered on the MERS® System and the transferor is unable to register the mortgage loan due to bankruptcy, receivership, conservatorship, or because the transferor is no longer in business or cannot otherwise be located or contacted, then the transferee must register the mortgage loan and pay the corresponding registration fee pursuant to Rule 5, Section 1(a).  If the transferee fails to pay any registration fees (i) within sixty (60) days of the payment due date, and (ii) after notice of delinquency at approximately thirty (30) days after the due date, and such fees are not being disputed in good faith by the transferee, the transferee may be locked out of the MERS® System pending full payment of all outstanding balances (except penalties under dispute pursuant to Rule 7, Section2).

*Section 2.*  Costs for Unusual Expenses.  MERSCORP Holdings shall have the authority to charge a Member for any unusual litigation-related expenses caused directly by such Member, or incurred at such Member's request.  These unusual litigation-related expenses may include, without limitation, the cost of producing records pursuant to a subpoena, court order or other legal process in any litigation or other legal proceeding to which such Member is a party (and in which none of the MERS Entitles are named as parties) or in which such records relating to such Member are so required to be produced, whether such production is required at the instance of such Member or of any other person that is a legitimate participant in such request, demand

or proceeding, provided however, that as set forth in Rule 9, Section 1(b), MERSCORP Holdings shall give the Member written notice of such subpoena, court order or legal process in advance of producing the records to enable the Member to pursue its legal rights to refuse or quash the request.   Regardless of the reason, MERSCORP Holdings may only charge the Member for reasonable expenses.

Section 3.  <u>Delinquency Fees</u>.  MERSCORP Holdings, in its discretion, reserves the right to impose reasonable interest and penalties on delinquent fee payments and the Member shall promptly pay such amounts to MERSCORP Holdings at the prevailing rate set by MERSCORP Holdings in accordance with the MERSCORP Holdings' invoicing instruction(s).

Section 4.   <u>Excess Mail Costs and Fees</u>.  If MERSCORP Holdings determines that the Companies' receipt of mail involving a foreclosure proceeding, lawsuit or code violation resulted from a violation of any of these Rules, including but not limited to Rule 14, Section 2, or the Procedures, then MERSCORP Holdings shall be entitled to charge the Member a fee as per the MERS® System Pricing Schedule determined by MERSCORP Holdings for each filing or document in the proceeding or for each piece of mail received related to the foreclosure proceeding, lawsuit or code violation that MERS forwards to the Member beyond thirty (30) days after the initial service of process or notification that MERS received on behalf of that Member.

Section 5.   <u>Reimbursement for Termination or Resignation Costs</u>.  Notwithstanding the Member's Termination or Resignation, the Member shall remain liable and obligated for (a) any invoices due and outstanding at the time of Termination or Resignation, and (b) the costs

incurred by the Companies in completing the activities for Termination described in Rule 1, Section 5 and Rule 7, Section 1(e), or the activities for Resignation described in Rule 1, Section 3, including costs and fees incurred by the Companies to record assignments of Security Instruments from MERS in the applicable public land records and fees for the Deactivation of MERS Loans in accordance with the applicable Termination or Resignation requirements.  The Member shall pay and reimburse the Companies' costs for Termination or Resignation immediately upon notice from the Companies.  If the Member fails to pay and reimburse the Companies for any such Termination or Resignation costs, after notice, MERSCORP Holdings may invoice any other Members that are Servicers or Investors on active loans registered to the Member's Org ID or any of its Affiliate Org IDs in the MERS® System for such costs.

*Section 6.*  <u>Past Due Invoices</u>.  MERSCORP Holdings' invoices sent to a Member in the normal course of business based on the published MERS® System Pricing Schedule are due and payable within twenty (20) days of the invoice date.  The Member will receive a delinquency notice at approximately thirty (30) days past due if payments are not received on time.  Any accounts with payments past due greater than sixty (60) days, other than any penalties under dispute (pursuant to Rule 7, Section 2), may cause the Member to be locked out of the MERS® System until all outstanding balances are paid in full.

**RULE 6**
**PROCEDURES AND GUIDELINES**

*Section 1.* (a)   MERSCORP Holdings shall issue reasonable Procedures and Guidelines with respect to the business and operation of MERSCORP Holdings, MERS and the MERS® System and the execution of transactions on the MERS® System.  Each Member shall be bound by the Procedures and any amendment thereto in the same manner as it is bound by the provisions of all Governing Documents.  If a Servicer names a Subservicer on the MERS® System, the Servicer remains responsible for the Subservicer's compliance with the Procedures and any subsequent amendments for those MINs or mortgage loans (or services associated with those MINs or mortgage loans) for which the Servicer has named the Subservicer.  If the Subservicer will be processing transactions on the MERS® System, executing MERS signing authority, or receiving mail service on behalf of the Servicer, the Subservicer is required to be a Member.

(b) MERSCORP Holdings shall notify in writing all Members of any proposed changes to the Procedures and shall provide a copy of such proposed changes and the proposed timeline for implementation to all Members no fewer than sixty (60) days prior to the proposed implementation date of such changes (the "full comment period" applicable only to Rule 6).  Members may submit comments relating to any such proposed Procedures changes (including the proposed timeline for implementation) to MERSCORP Holdings for its consideration within twenty-one (21) days of the date of written notice of the proposed changes to the Procedures provided by MERSCORP Holdings (the "initial comment period" applicable only to Rule 6), and such comments shall be reviewed by MERSCORP Holdings, and a

summary of the comments received made available to Members.  No less than nine (9) days after the end of the initial comment period, MERSCORP Holdings will provide all Members a second notice of proposed changes to the Procedures, if any, which may incorporate comments provided by Member(s) during the initial comment period, and which identifies the incorporation of any such comments.  During the remainder of the full comment period, Members may submit comments to the second notice of proposed changes, if provided, to MERSCORP Holdings for its consideration and prior to implementation of any amendment to the Procedures.  The proposed changes to the Procedures shall become effective on the proposed implementation date after giving effect to an appropriate transition period for implementation as determined by the nature of the change(s).

*Section 2.*   From time to time, MERSCORP Holdings may issue Guidelines in order to address technical updates, meet production deadlines and/or legal or regulatory requirements or for reasons as otherwise deemed necessary. Prior to such Guidelines being incorporated into and amending the Procedures, they will go through the same notice and comment period as specified in Section 1(b) of this Rule, including provision for an appropriate transition period for implementation and compliance as determined by the nature of the change(s). Members shall not be subject to penalties or sanctions until such Guidelines are formally adopted into a subsequent release of the Procedures and that release of the Procedures becomes effective.

*Section 3.*   If MERSCORP Holdings determines in its reasonable judgment, and as approved by its Board of Directors, that an immediate change to the Procedures is required due to urgent legal, regulatory or operational issues, it may implement this change concurrently

with notice in writing to all Members, which shall set forth the reason for such change, providing for appropriate transition, implementation and compliance period(s) prior to the effective date of such changes as determined by the nature of the change(s).

**RULE 7**
**DISCIPLINARY ACTIONS**

*Section 1.*   Violations and the Penalty Process.   MERSCORP Holdings may impose a monetary penalty or otherwise sanction a Member for each violation of the provisions of the Rules or Procedures or for errors, delays or other conduct materially detrimental to the operation of MERSCORP Holdings or MERS, the MERS® System or other Members (each a "Violation").   Such monetary penalties shall be as prescribed in the MERS® System Penalty Schedule.   The imposition of monetary penalties or other sanctions shall be subject to notice, an opportunity to provide a written response, and an opportunity to cure and/or remediate the Violation.   Additionally, the Member has the opportunity to engage in a dispute resolution process as set forth below.   A Member shall promptly notify MERSCORP Holdings, in written form or via discussion with MERSCORP Holdings' management or legal department, of any violations of the Rules or Procedures discovered by the Member with respect to actions taken in the name of MERS or MERSCORP Holdings; provided that the MERS Entities shall use reasonable efforts to ensure that legal privilege, if available, with respect to such information will be preserved.

a)   Initial Response Period.   When MERSCORP Holdings becomes aware of a potential Violation attributable to a Member, MERSCORP Holdings shall send the Member a written notice, which notice will include a brief description of the potential Violation and provide the Member with thirty (30) days to provide a written response (the "Initial Response Period").   The Member may request an extension of the Initial Response Period, and MERSCORP Holdings will consider the Member's request in good faith.

b)   <u>Cure Period</u>.   At the expiration of the Initial Response Period, and any approved extension thereof, if MERSCORP Holdings determines that a Violation has occurred, or if the Member has not responded, MERSCORP Holdings shall send the Member a written notice that the Member has thirty (30) days to cure or remediate the Violation ("the Cure Period") by taking the actions specified in such notice or as may be agreed upon between MERSCORP Holdings and the Member.   If the character of the Violation reasonably needs a longer Cure Period, then the Member may request an extension of such Cure Period and MERSCORP Holdings shall consult with the Member to evaluate an extension, and will consider this request to provide a longer Cure Period in good faith.

i.   Curable Violations.   To the extent that a Violation may be cured by the Member, curing the Violation requires a written explanation of why the violation occurred, a remediation plan outlining the actions the Member has taken or will take to prevent reoccurrence of the Violation, and to the extent practical, rectifying the Violation (e.g., submission of an approved Annual Report or a Quality Assurance Plan).   At the expiration of the Cure Period, and any extension thereof, if MERSCORP Holdings determines that the Violation has been cured, no further action will be taken and the issue will be closed.   If MERSCORP Holdings determines that the Violation has not been cured, MERSCORP Holdings may impose monetary penalties as set forth in the MERS® System Penalty Schedule published and in effect at the time of the Violation.

ii.     Non-Curable Violations.  To the extent a Violation cannot be cured by the Member (e.g., MERS Signing Officer violations), the Member must provide a written explanation of why the Violation occurred and a remediation plan outlining the actions the Member has taken or will take to mitigate the issue and prevent the Violation's reoccurrence. If the Member provides a reasonable explanation and remediation plan, penalties may still be imposed as noted in the MERS® System Penalty Schedule published and in effect at the time of the Violation, but upon payment of any applicable monetary penalties no further action will be taken, the Violation will be considered remediated and the issue will be closed.

c)     Penalty Imposition and the Lockout Warning Period.  At the expiration of the Cure Period, and any extension thereof, if the Member has not cured the Violation (or remediated it, if it is non-curable) to the reasonable satisfaction of MERSCORP Holdings, the Member shall receive written notice of the imposition of any sanctions or monetary penalty, as well as notice of the potential for Lockout from the MERS® System or Termination of Membership.  The Member will have thirty (30) days (the "Lockout Warning Period") to cure/remediate the Violation and pay any assessed monetary penalty.  If prior to the expiration of the Lockout Warning Period the Member cures/remediates the Violation and pays any assessed monetary penalty, no further action will be taken and the issue will be closed.

d) <u>Lockout Period and Resignation in Lieu of Termination</u>.   At the expiration of the Lockout Warning Period, if the Member has not cured/remediated the Violation to the reasonable satisfaction of MERSCORP Holdings and paid any assessed monetary penalty, the Member may be locked out of the MERS® System and the Member will receive written notice of the potential for termination of its MERS® System membership.  Any such Lockout of a Member will be promptly removed upon cure/remediation of the Violation and payment of any assessed monetary penalty, provided no other grounds remain for the imposition of Lockout under the Rules.  The Member will be provided with thirty (30) days (the "Lockout Period") to cure/remediate the Violation and pay any assessed monetary penalty before Termination.  If the Member elects to resign its MERS® System membership during the Lockout Period in lieu of termination, the Member must complete the Resignation of Membership requirements described under Rule 1.  If the Member does not complete the Resignation of Membership requirements in accordance with Rule 1 then the Member's MERS® System membership may be terminated immediately without further notice.

e) <u>Termination of Membership</u>.  At the expiration of the Lockout Period, if the Member has not cured/remediated the Violation to the reasonable satisfaction of MERSCORP Holdings and paid any assessed monetary penalty, nor elected to resign its MERS® System membership in lieu of termination, the Companies may terminate the Member's MERS® System membership.  Termination includes Lockout and deactivation of the Member's Org ID(s) in the MERS® System, possible notification to the Member's trading partners of such Termination, and revocation of any MERS Corporate Resolutions issued to the Member or to third-parties acting on its behalf pursuant to a Signing Authority Agreement.  MERS may assign its interest in any

MERS Loans registered to the Member in the MERS® System and record such assignments in the applicable public land records at the Member's expense.  Each such assignment shall be from MERS to the Servicer, Subservicer, or Investor of the loan, unless the Investor directs MERS to assign its interest to another entity.  The MERS Entities shall send written notice to any other Members that are Servicers, Subservicers, or Investors on active loans registered to the Member's Org ID or any of its Affiliate Org IDs in the MERS® System at least thirty (30) days prior to deactivating such MERS Loans in the MERS® System or executing and recording any assignments. The Member shall be liable and immediately reimburse MERSCORP Holdings for all costs the Companies incur in completing the activities associated with the Termination.  The MERSCORP Holdings President will approve any Termination and report such to the MERSCORP Holdings Board of Directors.

f)  <u>Mitigating Factors</u>. Notwithstanding any of the foregoing, MERSCORP Holdings, in its reasonable discretion, may consider mitigating factors, including those provided by the Member, in its determination whether to impose penalties and/or sanctions (or any reduction in the penalties or sanctions) including whether the Member reported the issue, whether it was a first time offense, the potential harm (or lack thereof) suffered by the Companies, cure/remediation steps taken, and other factors.

g)  If the nature of a Violation is the same or substantially similar to a Violation attributable to the Member within the previous three hundred and sixty-five (365) days and such Violation is caused by the Member's failure to follow the remediation plan from the prior Violation, willful disregard of the Rules or Procedures, negligence or bad faith, MERSCORP

Holdings, in its reasonable discretion, may waive application of the Cure Period described in Section 1(b) and double the penalty amount for that Violation. Notwithstanding the waiver of the Cure Period as described above, the Member remains responsible for providing a cure or remediation to the extent such cure or remediation is possible.

*Section 2.* Dispute Resolution. (a).  If there is a dispute between the Member and MERSCORP Holdings: (i) concerning adherence to the requirements of the Rules and Procedures, including whether a Violation occurred and/or has been cured/remediated, (ii) concerning any monetary penalty or sanction imposed, or (iii) regarding errors, delays or other conduct deemed to be materially detrimental to the operations of MERSCORP Holdings or MERS, the MERS® System or other Members, the Member shall notify MERSCORP Holdings in writing at rulenotifications@mersinc.org of its position (the "Dispute Notice").  The Member may provide such Dispute Notice at any time prior to any Lockout.

(b)  With respect to any other dispute that may arise between a Member and the Companies, either the Member or MERS or MERSCORP Holdings, as applicable, shall provide notice to the other party in order to commence dispute resolution proceedings.

(c)  Once a Dispute Notice is received by MERSCORP Holdings, the Member and MERSCORP Holdings will engage in good faith discussion to resolve the issue.  If within fifteen (15) days of receipt by MERSCORP Holdings of a Member's Dispute Notice the matter has not been resolved and the parties have not mutually agreed to extend this period, it will be referred to MERSCORP Holdings' ad hoc membership compliance committee (the "Committee") for final resolution.  The Member will have the opportunity to address the Committee directly and

explain its position.  For purposes of the dispute resolution, the Committee will include members of the MERSCORP Holdings management team and, if requested by Member, disinterested Member representatives.  Member representatives will be selected based on the significance of their transaction volumes and/or operational expertise with the MERS® System. If Member representatives are requested, the total number of votes of the Member representatives on the Committee present at the meeting to resolve the dispute shall be equal to the total number of votes of the MERSCORP Holdings management team on the Committee present at the same meeting, and no vote shall be held unless at least one Member representative is present.

(i) In the case of a dispute with respect to a potential Violation, if the Committee determines a Violation by the Member has occurred and has not been cured/remediated with appropriate effort and diligence, the Committee by simple majority vote (i.e. more than 50%) will decide on the appropriate sanction or penalty, which penalty shall not exceed the specified penalty on the MERS® System Penalty Schedule, subject to Rule 7, Section 1(g), and this decision will be final.  If the Committee vote does not result in a greater than 50% vote, the final resolution will be determined by an appropriate committee of the MERSCORP Holdings Board of Directors. Notwithstanding anything else in this Section, no sanctions or monetary penalties will be assessed and a Member will not be locked out or terminated during the pendency of the instituted dispute resolution process as appearing in the Dispute Notice.

(ii) With respect to disputes that may arise between a Member and the Companies other than relating to an alleged violation of the Rules or Procedures, the majority decision of the Committee, or the decision of the MERSCORP Holdings President in the event there is no majority vote by the Committee, will not be final and binding on the Member, but the MERS Entities and the Member agree that no arbitration or legal action can be filed until the dispute resolution process is complete.

*Section 3.*  Arbitration.  In the event that the parties to the dispute are not able to resolve the dispute in accordance with the internal dispute resolution process set forth above, the form of legal action taken, if any, to resolve the dispute shall be to submit the matter to confidential, binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof; provided, however, that the place of arbitration shall be Washington, DC, and fees and expenses for the arbitration proceedings shall be paid by the party initiating arbitration.

*Section 4.*  Lockout to Prevent Material Detriment.  Notwithstanding the preceding sections under this Rule, should MERSCORP Holdings in its reasonable judgment determine that immediate sanctions are necessary to prevent a material detriment to the operational function(s), reputation, or business of the MERS® System or MERSCORP Holdings, MERS, or other Members, MERSCORP Holdings shall have the authority to institute a Lockout of the Member's access to the MERS® System at any time during the Initial Response Period or thereafter, provided however, that MERSCORP Holdings shall immediately notify the Member

prior to Lockout of the opportunity for expedited dispute resolution.  MERSCORP Holdings shall use commercially reasonable efforts to commence such dispute resolution process as promptly as practicable (and in any event within two (2) business days following Lockout) and to conclude the dispute resolution process as promptly as practicable thereafter.

Section 5.  Conflicts with the Rules.  Notwithstanding the preceding sections under this Rule, in the event of any conflict between the Rules and any legal or regulatory requirements imposed on a Member by any US federal or state regulatory body or agency (including a court), the Member shall notify MERSCORP Holdings of any such conflict, to the extent such notification is permissible, and the MERS Entities shall cooperate with the Member in good faith to determine how to resolve such conflict.  Notwithstanding anything else in this Rule 7, no Violation will be deemed to have occurred, no sanctions or monetary penalties will be assessed and the affected Member will not be locked out or forced to resign during the pendency of a good-faith claim regarding any conflict between the application of the Rules, on the one hand, and other applicable law binding upon a Member, on the other hand, and during the resolution process set forth in this paragraph.

**RULE 8**
**FORECLOSURE & BANKRUPTCY**

*Section 1.*  (a)  With respect to each MERS Loan for which the Note Owner or the Note Owner's Servicer has decided to: (i) initiate foreclosure proceedings, whether judicial or non-judicial or (ii) file a Proof of Claim or file a Motion for Relief from Stay in a bankruptcy ("Legal Proceedings"); the Note Owner or the Note Owner's Servicer shall cause a MERS Signing Officer to execute an assignment of the Security Instrument from MERS to the Note Owner's Servicer, or to such other party expressly and specifically designated by the Note Owner.  The Member and/or Note Owner agrees and acknowledges that MERS has the authority to execute such assignment of the Security Instrument in accordance with the immediately preceding sentence. The assignment of the Security Instrument must be executed, notarized, witnessed (if applicable), be in recordable form, be promptly sent for recording in the applicable public land records, and comply with all applicable laws, regulations and rules.

(b)  The Member agrees and acknowledges that when MERS is identified as Nominee of the "lender and lender's successors and assigns" in the Security Instrument, MERS as Nominee, is the Mortgagee of Record, in the Security Instrument for and on behalf of the Note Owner and/or the Note Holder.

(c)  The Member servicing a MERS Loan shall be responsible for processing foreclosures in accordance with the applicable agreements between such Member and the Note Owner and all applicable laws, regulations and rules.

(d)  The authority to initiate foreclosures and file Legal Proceedings in the name

36

of MERS granted to a Member's MERS Signing Officers under such Member's MERS Corporate Resolution is revoked for actions initiated on or after July 22, 2011, the effective date of this revocation (the "Effective Date").   Effective September 1, 2011, the Member whose MERS Signing Officer initiates a foreclosure or files a Legal Proceeding in MERS' name could be sanctioned by MERSCORP Holdings pursuant to Rule 7; provided however, if the Member voluntarily dismisses such foreclosure or withdraws the filed Legal Proceedings within twenty-one (21) days of filing the action, no sanction shall be levied.

(e)(i)   The Note Owner or the Note Owner's Servicer shall cause the Signing Officer to execute the assignment of the Security Instrument from MERS to the Note Owner, or the Note Owner's Servicer, or such other party expressly and specifically designated by the Note Owner, before initiating foreclosure proceedings or filing Legal Proceedings and promptly send the assignment of the Security Instrument (in recordable form) for recording in the applicable public land records.

(ii)   Notwithstanding subsection (e)(i), in those states in which the law does not require the party initiating foreclosure proceedings or filing Legal Proceedings to also be the Mortgagee of Record, the Note Owner or the Note Owner's Servicer shall cause the Signing Officer to execute the assignment of the Security Instrument from MERS to the Note Owner or the Note Owner's Servicer or to such other party expressly and specifically designated by the Note Owner, either before or promptly after initiating foreclosure proceedings or filing any Legal Proceedings and promptly send the assignment of the Security Instrument (in recordable form) for recording in the applicable public land records.   However, until MERSCORP Holdings

37

has identified and published a list of states that do not require an executed assignment of the Security Instrument from MERS to the Note Owner or the Note Owner's Servicer, or to such other party expressly and specifically designated by the Note Owner before initiating foreclosure proceedings or filing Legal Proceedings, the Note Owner or the Note Owner's Servicer shall cause the Signing Officer to execute the assignment from MERS to the Note Owner or the Note Owner's Servicer, or to such other party expressly and specifically designated by the Note Owner, before initiating foreclosure or filing Legal Proceedings in all states.

**RULE 9**
**USE AND OWNERSHIP OF INFORMATION**

*Section 1*  (a) The Companies and each Member shall at all times keep confidential and shall not sell or otherwise disclose, directly or indirectly, to any third party,  any information accessed through or contained on the MERS® System that they (i) do not own, or (ii) is not available in public records.  The MERS Entities and the Member shall use a reasonable degree of care consistent with the Standards for Safeguarding Customer Information (16 C.F.R. parts 314) (the "Safeguards Rule") to preserve the confidentiality of any such information, and to take all reasonable action by instruction, agreement or otherwise with its directors, officers, employees, affiliates, agents and third party suppliers, as applicable, to satisfy their obligations with respect to confidentiality, non-disclosure and limitation of use of any such information. The Companies shall further ensure that provisions of this subsection shall also apply to third party vendors, if any, retained by the Companies.

(b)  The MERS Entities may furnish information contained on the MERS® System as required by law, or pursuant to a subpoena, court order or regulatory request, provided, however, that the MERS Entities, as applicable, shall use all reasonable efforts to provide the current Servicer and Investor, as shown on the MERS® System, with sufficient notice of such subpoena, court order or request of a regulator in advance of any such disclosure, subject to applicable federal or state law, regulatory requirements, or other agreements.  Additionally, where Member information is required to be disclosed, and to the extent it reasonably can under the circumstances, a MERS Entity, shall, upon request by the Member, provide a copy of such Member-owned information that a MERS Entity intends to

provide, to all Members shown on the MERS® System as having a current interest in a mortgage loan which is the subject of such subpoena, court order or regulatory request, in advance of such disclosure.

(c)  The MERS Entities shall take all reasonable steps to ensure the confidentiality of all documents or other information that references a particular borrower name or address or other identifying details relating to specific borrowers (the Non-Public Personally Identifiable "NPPI" information) provided by the Member.  If the MERS Entities are required (by any governmental authority) to disclose a Member's NPPI information pursuant to a subpoena or court order or request of a regulator, the MERS Entities shall promptly notify the Member in advance of such disclosure and shall cooperate with the Member to resist, limit or delay such disclosure of such NPPI information to the maximum extent permitted by law.

(d)  The MERS Entities shall have no ownership rights whatsoever in or to any information contained on the MERS® System, other than the Member's Org ID(s) and MINs. Notwithstanding the foregoing, the MERS Entities are authorized to (i) use the information contained on the MERS® System to operate the MERS® System; (ii) use the information contained on the MERS® System as part of its internal quality control process to monitor compliance with operational standards and time frames, and to compile transaction volume reports to track current or previous usage levels, project future usage and provide the mortgage industry with non-Member-specific aggregate usage data which may be used to gauge the success of the MERS® System, but excluding any NPPI information; (iii) disclose any information contained on the MERS® System if required as a matter of law, subject to Section

1(b); (iv) provide reports to the Board of Directors of a MERS Entity to the extent required for Board oversight; provided that the Board members are under an obligation to keep such information confidential; and (v) provide information and reports to third parties (as approved by the Board) regarding mortgage activity and mortgage loans registered on the MERS® System that otherwise could have been obtained through the public land records if not for the implementation of the MERS® System.  Any reports given to third parties shall not identify individual Members or include NPPI information, without the Member's prior written consent.

The provision by the Member of any data or information to the MERS Entities or the MERS® System shall not (i) alter or impair the rights of the Members with respect to such data or information or (ii) create any rights for the benefits of the MERS Entities with respect to such data or information.  Except as expressly provided, Member consent shall be required for the use or disclosure of such Member's data by the MERS Entities or any other Member.

(e)  The Member and the MERS Entities shall at all times keep confidential any non-public information provided by the MERS Entities or the Member, respectively, and that is designated as "Confidential" or that the MERS Entities or the Member have a reason to know is of confidential nature.  The Member and the MERS Entities shall use a reasonable degree of care to preserve the confidentiality of any such information, and to take all reasonable action by instruction, agreement or otherwise with their directors, officers, employees, affiliates, agents and third party suppliers, as applicable, to satisfy their obligation with respect to confidentiality, non-disclosure and limitation of use of any such information.  The Member or the MERS Entities may furnish such information to any governmental authority pursuant to a

subpoena or court order or request of a regulator, subject to Section 1(b). The confidentiality obligations and use limitations set forth herein shall not apply to information that is a matter of public knowledge or to which the recipient has access free of such obligations or limitations.

*Section 2.*  (a)  Each MERS Entity acknowledges and agrees that: (i) the Member will be entering borrower information into the MERS® System to which a MERS Entity has access as a part of the services provided to the Member, and (ii) such borrower information is subject to Section 1 of this Rule.

(b)  MERSCORP Holdings has implemented and will maintain, and will cause its third party vendors to implement and maintain, an information security program consisting of reasonable administrative, physical, and technical safeguards designed to meet the objectives set forth in 16 C.F.R. 314.3(b) of the Safeguards Rule.  Documentation regarding such information security program will be provided to the Member upon reasonable request.

MERSCORP Holdings' controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System are generally described in the MERS® System Integration Handbook (Volumes I and II).  MERSCORP Holdings believes the controls and procedures so described meet the objectives specified in the Safeguards Rule.  MERSCORP Holdings agrees to maintain controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System that are no less stringent than those described in the current version of the MERS® System Integration Handbook.  MERSCORP Holdings further agrees that any changes or modifications to such controls and procedures will also be designed to meet the objectives specified in the

Safeguards Rule.  Each Member shall inform MERSCORP Holdings in writing whenever the Member reasonably believes that the controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System fail to meet the objectives specified in the Safeguards Rule.  MERSCORP Holdings agrees the Member (or a mutually agreeable third party representative) will be given access to monitor that MERSCORP Holdings has satisfied the provisions of this paragraph, including access to MERSCORP Holdings-generated summaries of audits, test results or other equivalent evaluations of the controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System.  MERSCORP Holdings will report to the Member any actual or suspected breach of the confidentiality or security of the Member's confidential information furnished by, or concerning such Member contained on the MERS® System within forty-eight (48) hours of having identified the actual or suspected breach.

(c)  As part of the controls and procedures described in paragraph (b) of this section, MERSCORP Holdings maintains, and will continue to maintain, a business recovery plan as required in Rule 12, Section 9.

(d)  The MERS Entities acknowledge that Members are or may be required to comply with various information security standards and other legal requirements.  The MERS Entities shall use commercially reasonable efforts to comply with the rules and policies of the Members related to protecting confidential information.

*Section 3.*  MERSCORP Holdings shall maintain records related to the provision of Services for a period of seven (7) years or as required by law, if longer.  Such records shall

include, but not be limited to, those relating to processes, procedures and controls for quality assurance, quality control, document retention, personnel training, handling of complaints and compliance with law.  MERSCORP Holdings shall use reasonable best efforts to prevent the loss, destruction or alteration of Member records and information, including by maintaining appropriate back-up files and off-site copies of such records and information.

*Section 4.*  The obligations of the MERS Entities and the Member under this Rule 9 shall survive termination of a Membership Agreement.

**RULE 10**
**GENERAL CORPORATE REQUIREMENTS**

*Section 1.*  Insurance.  The Companies, at their own expenses, shall maintain a fidelity bond and an errors and omissions insurance policy on all officers, employees or other persons acting for MERS in any capacity requiring such persons to handle funds, money, documents or papers relating to mortgage loans registered on the MERS® System; provided however, that the Companies shall not be required to maintain coverage for persons who may be appointed at the request of the Member as MERS Signing Officers.  A Member, at its own expense, shall also maintain a fidelity bond and an errors and omissions insurance policy on any such persons that MERS may appoint at the Member's request as a MERS Signing Officer for the purpose of executing documents in the name of MERS.  Upon request, the Companies or the Member shall cause to be delivered to the other a certified true copy of such errors and omissions insurance policy and fidelity bond.  Notwithstanding the foregoing, Members with assets of at least $1 billion may elect to self-insure rather than obtain coverage with third-party carriers.

*Section 2.*  Notices.  Unless otherwise specified in writing by the Companies, any notice or other communication that is required or permitted to be given or made to the Companies pursuant to any provision of the Governing Documents shall be given or made in writing, and shall be sent either (i) via facsimile to (703) 748-0183 (which is confirmed by transmission report or equivalent thereof), (ii) via email to generalcounsel@mersinc.org (which is confirmed by delivery report or equivalent thereof), (iii) via registered or certified mail (return receipt requested and postage prepaid) to Chief Legal Officer, 1818 Library Street, Suite 300, Reston, VA 20190, (iv) via a nationally recognized overnight courier (prepaid and providing proof of

delivery), to the address specified in (iii) above, or (v) via any other method approved by MERSCORP Holdings, to the address specified in (iii) above.

Section 3.  <u>Governing Law</u>.  The Governing Documents and the relationship between the Companies and a Member with respect to the MERS® System shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

Section 4.  <u>Disputes</u>.  Notwithstanding the Indemnification provisions of Rule 13, neither the Member nor the Companies shall institute a proceeding before any tribunal to resolve any controversy or claim arising out of or relating to the Governing Documents, or the breach, termination or invalidity thereof (a "Dispute"), before such party has first sought to resolve the Dispute through good faith negotiations with the other party conducted as contemplated in Rule 7.

Section 5.  <u>Independent Contractor</u>. It is understood and agreed that all of the Services performed hereunder or pursuant to the Governing Documents shall be performed by the MERSCORP Holdings as an independent contractor, or, in the case of MERS acting as nominee with respect to a MERS Loan, as Nominee.

Section 6.  <u>Third Party Rights</u>.  The Governing Documents shall not confer any benefits upon, or create any rights, benefits, remedies, obligations or liabilities under the Governing Documents in favor of any third parties, including any other Member.  As between Members, the Governing Documents shall not confer any rights, benefits, remedies, obligations or liabilities upon, or create any rights in favor of, one Member in relation to another Member,

46

and shall not be deemed incorporated in, or made part of, any contract entered into between Members.

*Section 7.* (a) Vendor Management. The MERS Entities recognize that various Members are subject to regulation by, among others, the Office of the Comptroller of the Currency (OCC) and the Consumer Finance Protection Bureau (CFPB), which requires such Members to comply with certain vendor management policies, including with respect to the relationship of each of those Members with the MERS Entities. The MERS Entities agree to use commercially reasonable efforts to comply with such vendor management requirements, and shall take all appropriate actions to ensure that their relationships with subcontractors and service providers are subject to and conducted in compliance with vendor management standards and procedures.

(b) The MERS Entities shall use commercially reasonable efforts to assist a Member in order to enable the Member to comply with any specific request or directive made to or imposed on it by any federal or state agency having jurisdiction over the Member, including providing the Member with access to the records, procedures and facilities relating to the provision of Services to such Member, and/or providing the Member with summary or actual results of audits and performance reports, in each case during normal business hours and upon reasonable request to MERSCORP Holdings and subject to limitations relating to confidentiality obligations and commercial reasonableness. The MERS Entities shall take appropriate actions to ensure that its subcontractors and service providers are aware of and comply with such requirements.

**RULE 11**
**SERVICES**

*Section 1.*        MERSCORP Holdings shall provide, either directly or through a third party, the Services for MERS and the MERS® System in compliance with reasonable performance standards.

*Section 2.*        MERS may terminate MERSCORP Holdings as service provider at any time upon giving at least 30 days' prior written notice to MERSCORP Holdings.

In the event that MERSCORP Holdings is so terminated as service provider to MERS and with respect to the operation of the MERS® System (a "Service Provider Replacement Event"), then MERS shall, with the approval of its Board of Directors, promptly (and in any event within two (2) business days of such Service Provider Replacement Event) notify the Members in writing and designate one or more qualified third parties (each, a "Replacement Service Provider") to provide such Services to MERS and the MERS® System.

In connection with such Service Provider Replacement Event and appointment of a Replacement Service Provider, MERSCORP Holdings shall reasonably cooperate at the request of MERS in connection with the transition to such Replacement Service Provider in order to facilitate a timely and efficient transition.

Notwithstanding anything contained in these Rules to the contrary, if a Service Provider Replacement Event occurs (i) MERSCORP Holdings shall be deemed to no longer be a party to or subject to these Rules, except (A) to the extent required by the preceding paragraph and (B) that the rights to, and obligations of, MERSCORP Holdings regarding indemnification and

confidentiality shall survive, (ii) MERSCORP Holdings shall no longer be entitled to any Member fees, charges and assessments, and all Member fees, charges and assessments shall be payable directly by Members to MERS or the Replacement Service Provider(s) as directed by MERS, and (iii) the Replacement Service Provider(s) shall be deemed substituted for MERSCORP Holdings for purposes of these Rules, with such amendments as MERS may make as deemed necessary or appropriate in accordance with the provisions of these Rules applicable to amendments.

**RULE 12**
**WARRANTIES**

*Section 1.*  Work Standards.  MERSCORP Holdings represents and warrants that the Services shall be rendered with promptness and diligence in accordance with the practices and high professional standards used in well-managed operations performing services similar to the Services and shall be performed in a workmanlike and cost effective manner.  MERSCORP Holdings represents and warrants that it shall use, and shall require all third-party vendors to use, adequate numbers of qualified personnel with suitable training, education, experience, and skill to perform the Services and satisfy the performance standards.

*Section 2.*  Maintenance.  MERSCORP Holdings represents and warrants that the equipment and software used in the performance of the Services shall be maintained so that they operate in accordance with the performance standards, including (i) maintaining such equipment in good operating condition, subject to normal wear and tear, (ii) undertaking prudent repairs and preventive maintenance on such equipment, and (iii) performing prudent software maintenance, including timely updating software used in the performance of the Services, including the MERS® System, to meet any applicable legal or regulatory changes.

*Section 3.*  Technology.  MERSCORP Holdings represents and warrants that the Services shall be provided using proven technology, which shall take advantage of technological advancements in the industry.

*Section 4.*  <u>Non-Infringement.</u>  MERSCORP Holdings represents and warrants that it shall, and shall require its third party vendors to, perform its responsibilities in a manner that does not infringe, or constitute an infringement or misappropriation of, any patent, copyright, trademark, trade secret or other propriety rights of any third party. MERSCORP Holdings is responsible for supervision of third party vendors hired by the Companies.

*Section 5.*  <u>Software Ownership or Use.</u>  MERSCORP Holdings represents and warrants that, with respect to the software used in the performance of the Services, it owns, and is authorized to provide access to Members for their use of, MERS® system(s).

*Section 6.*  <u>Authorization.</u>  MERSCORP Holdings represents and warrants that it has the requisite corporate power and authority to carry out its responsibilities.

*Section 7.*  <u>Malicious Programs.</u>  MERSCORP Holdings represents and warrants that it shall take reasonable business precautions to ensure that it and any third party vendors providing the Services shall not code or introduce any <u>Malicious Programs</u> into the MERS® System and any other systems and software used to provide the Services, and to monitor, filter and remove any such Malicious Programs that may be introduced into the MERS® System.

*Section 8.*  <u>Licensing and Qualification.</u> MERSCORP Holdings and MERS represent and warrant that each has obtained all state licenses and has qualified to conduct business in all fifty states, the District of Columbia, and United States territories where such licensing and/or qualification is required by law for the Companies to provide the Services or for an entity to serve as Mortgagee of Record, solely as Nominee for the Note Owner and its successors and assigns.

*Section 9.*  <u>Business Recovery Plan.</u>  MERSCORP Holdings represents and warrants to the Member that it has in place and will continue to maintain a fully effective business recovery plan and will make the plan available for viewing by Member upon written request.  MERSCORP Holdings will routinely (no less often than once per year) test its business recovery plan to ensure its continued effectiveness and capability of protecting its Members in the event of a disaster.  Such testing will be designed to ensure that the MERS® System can be restored within 48 hours after the determination of a disaster under the plan.  MERSCORP Holdings will provide a summary of the results of such test to the Member in writing upon request.

*Section 10.*  <u>Member Recordation</u>.  For a MERS Loan, the Member hereby represents and warrants to the Companies that a Security Instrument, or an assignment of a Security Instrument, as may be required under applicable state law, naming MERS as mortgagee, has been or, as soon as practicable, shall be properly prepared, executed, and delivered to the applicable public land records recording office for recording in compliance with the Governing Documents.

*Section 11.*  <u>Assignments from MERS</u>.  For a MERS Loan, when the MERS Loan has been sold or transferred to a non-Member or whenever an assignment from MERS is otherwise required under the Governing Documents, the Member hereby represents and warrants to the Companies that an appropriate assignment of Security Instrument as may be required under applicable state law, identifying MERS as the assignor and executed by a MERS Signing Officer, has been or, as soon as practicable (in compliance with Rule 8), shall be properly prepared,

executed, and delivered to the applicable public land records recording office by the Member

or Member's designee for recording in compliance with the Governing Documents.

**RULE 13**
**INDEMNIFICATION**

*Section 1.*  The Companies agree to indemnify the Member and the Member agrees to indemnify the Companies in accordance with the following provisions:

(a) The Companies shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member (a "Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses ("Indemnified Payments") that the Member Party may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Governing Documents, or reckless or willful misconduct of the Companies or of any employee, director, officer, agent or affiliate of the Companies (a "Company Indemnified Claim").  Notwithstanding the foregoing, the Companies shall not be liable or responsible under the terms of this Paragraph for any losses or claims resulting from the actions or omissions of a MERS Signing Officer.

(b) The Member shall indemnify and hold harmless the Companies, and any employee, director, officer or agent of the Companies (each, a "MERS Party"), for any Indemnified Payments which do not result from a Company Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Governing Documents, or willful misconduct of a Member Party, (ii) as a result of any actions taken by the Member with respect to a transaction on the MERS® System, or (iii) as a result of compliance by the Companies with instructions given by the Member, or its

designee, as Note Owner, Servicer, Subservicer, Interim Funder or other secured party shown on the MERS® System (a "Member Indemnified Claim"), or (iv) as a result of action(s) taken by the Member with respect to a mortgage, deed of trust, or security deed for which MERS is or was the mortgagee, beneficiary or grantee of record.

(c)  The Member shall indemnify and hold harmless the Companies with respect to any liability which may arise as a result of the failure of such Member to (i) take, or cause to be taken, appropriate action to extinguish the lien corresponding to a mortgage loan in accordance with Rule 2, Section 6 or (ii) give MERSCORP Holdings notice that such mortgage loan should not be released in a timely and accurate manner. Without limiting the generality of the foregoing, such indemnification shall extend to circumstances in which a lien is released by MERS in accordance with Rule 2, Section 6, but the MERS Loan should not have been released, or in which such Member wrongfully refuses to authorize MERS to release a Security Instrument after the Member receives notice that the relevant lien should be released.

(d)  In instances where MERS designates an officer of a Member as a MERS Signing Officer for the limited purposes described in the MERS Corporate Resolution, such Member shall indemnify each of MERSCORP Holdings and MERS and any of its employees, directors, officers, agents or affiliates against all loss, liability and expenses which they may sustain as a result of any and all actions taken by such MERS Signing Officer.

(e)  In the event of any loss of principal or interest on a MERS Loan or any Indemnified Payments for which reimbursement is received by MERS or MERSCORP Holdings from a fidelity bond or any errors and omissions insurance policy or other insurance policy, the

proceeds from any such bond or insurance shall be held in trust for and be promptly (and in any event, within two (2) business days of receipt of such proceeds) paid to the Member who is shown as the Servicer on the MERS® System on behalf of the Note Owner unless otherwise instructed by the Note Owner.

(f)  If the Member designates a third party to register loans (the "Registrar") on the MERS® System on behalf of the Member, the Registrar shall not be deemed a vendor or service provider or agent of MERS or of MERSCORP Holdings.  The Registrar shall be solely a service provider or vendor for the Member, and the Companies consent to Member use of a Registrar only to enter information on the MERS® System on behalf of the Member.  The Member agrees that the Companies are not liable to the Member for the following actions taken by the Registrar or any employee, director, officer, agent or affiliate of the Registrar in performing its services for the Member: errors and omissions, negligence, breach of confidentiality, breach of the Rules and/or applicable Procedures, or willful misconduct.

(g)  So long as there are no contrary instructions, when the Note Owner is a non-Member, MERSCORP Holdings and MERS shall at all times comply with the instructions of the Member shown on the MERS® System as the Servicer or Subservicer, if any, of such MERS Loan with respect to transactions relating to such MERS Loan.  Such Member shall indemnify and hold harmless MERSCORP Holdings and MERS, and any employee, director, officer or affiliate of MERSCORP Holdings or MERS, for any and all liability incurred as a result of compliance by MERSCORP Holdings or MERS with instructions given by such Member, as the Servicer or Subservicer acting on behalf of the non-Member Note Owner.

56

(h)   MERSCORP Holdings shall promptly notify the Member if a claim for Indemnified Payments is made by a third party against either the Companies or the Member with respect to any MERS Loan in which the Member is shown on the MERS® System as Note Owner, Servicer, or secured party in accordance with the Governing Documents.  The Member shall promptly notify MERSCORP Holdings if a claim for Indemnified Payments is made against the Member that may be subject to the indemnification provisions of this Section.

*Section 2.*  In the event that a claim (covered by Section 1 of this Rule) is made against a Member Party or the Companies, the following provisions shall apply:

(a)  The indemnified party may, but shall not be obligated to, participate in the defense of the claim or in a subpoena/court order response at its own expense and use counsel of its own choosing; provided, however, that the indemnifying party has the right to control the defense of the claim or method of response to the subpoena/court order. Notwithstanding the foregoing, the indemnified party may upon written notice to the indemnifying party assume control of the indemnified party's defense if in its reasonable discretion the indemnified party concludes at any time that the indemnifying party's provision of defense is inadequate.  The indemnified party may seek to recover all expenses paid by the indemnified party from the indemnifying party, pursuant to Rule 7, Section 2 of these Rules.

(b)   The indemnified party shall cooperate and provide assistance as the indemnifying party reasonably requests and shall be entitled to recover reasonable costs of providing assistance.

(c)  The indemnifying party shall keep the indemnified party informed on status of claim and litigation or response to subpoena/court order.

(d)  The indemnifying party shall not, without indemnified party's written consent, compromise or settle the claim if such compromise or settlement would impose an injunction or other equitable relief upon indemnified party, would require an admission of wrongdoing by the indemnified party, or does not include the third party's release of the indemnified party.

(e)  If the indemnifying party fails to timely defend, contest or otherwise protect against the claim and fails to contest in writing the indemnified party's right to indemnification, the indemnified party may, but shall not be obligated to, defend and make any compromise or settlement and recover the costs thereof from the indemnifying party.

(f)  If the indemnifying party contests in writing the indemnified party's right to indemnification, then the indemnified party shall defend the claim and may seek to recover all expenses paid by the indemnified party from the indemnifying party, and if successful, shall also be indemnified for Indemnified Payments related to initiating and pursuing such recovery pursuant to the Governing Documents.

*Section 3.*  The obligations of the Companies and the Member under this Rule 13, including all confidentiality provisions, shall survive the Termination or Resignation of the Member's MERS® System membership.

**RULE 14**
**NOTIFICATION TO MERSCORP HOLDINGS OF LAWSUITS**
**AND ADDITIONAL INDEMNIFICATION PROVISIONS**

*Section 1.* Relationship to Rule 13.  The provisions set forth in this Rule 14 are in addition to those provisions set forth in Rule 13 of the Rules.  To the extent that any provision of this Rule 14 conflicts with any provision of Rule 13 of the Rules, the provisions of this Rule 14 shall control.

*Section 2.* Obligations when MERS or MERSCORP Holdings a Defendant.  Whenever a Member receives notice of a Legal Filing, service of process on a lawsuit naming a MERS Entity as a defendant, or a code violation notice, that is forwarded to the Member by a MERS Entity with relation to a property where MERS holds or held a Security Instrument, the Member has an affirmative duty to the MERS Entities to review the document and respond accordingly and timely.  This may include retaining counsel (which counsel may be internal counsel to the Member or outside counsel) to defend the MERS Entities in such Legal Filings or code violation proceeding regardless of whether the Legal Filing or code violation proceeding seeks a monetary judgment against either of the MERS Entities or seeks another type of judgment against the MERS Entities' interests (e.g., the right or capacity of MERS to hold, assign, or foreclose interests in Security Instruments).

The Member is not authorized and shall not accept service of process on behalf of MERS and/or MERSCORP Holdings without express written authorization from MERSCORP Holdings.

*Section 3.* <u>Notification Obligations</u>.

(a)  Without regard to responsibility under Rule 13 of the Rules:

(i)  <u>Notifications when MERS or MERSCORP Holdings is a Party</u>.  After receipt of service of process (whether attempted or valid) of a lawsuit involving a mortgage loan registered to a Member that names MERS and/or MERSCORP Holdings as a defendant, the MERSCORP Holdings mail center will forward the lawsuit to the Member(s) named on the MERS® System as the Servicer or Subservicer for such mortgage.  Within twenty-eight (28) days after a Member's receipt of the lawsuit from the MERSCORP Holdings mail center, the Member shall acknowledge its receipt and either (1) provide contact information for the internal contact and outside counsel (if retained) to MERSCORP Holdings or (2) inform MERSCORP Holdings of its determination not to contest the foreclosure or answer the lawsuit.  If the Member fails to provide such information, and MERSCORP Holdings reasonably believes that the Member should defend the lawsuit as a Member Indemnified Claim, then MERSCORP Holdings and/or MERS (as applicable), may, after making a second attempt to obtain contact information for the Member's internal contact and outside counsel, retain counsel to undertake the defense, settlement, and/or compromise of such lawsuit on behalf of, and at the sole expense of, the Member, and shall promptly notify the Member in writing of such undertaking.  Subsequent to MERSCORP Holdings and/or MERS undertaking such defense, settlement, and/or compromise, upon written notice to MERSCORP Holdings from the Member, the Member may assume the defense, settlement and/or compromise of such lawsuit with the consent of MERSCORP Holdings (which consent shall not be unreasonably withheld).  MERSCORP Holdings and/or

MERS (as applicable) shall provide further written notice to the Member of its own intent to settle any such lawsuit where it has retained its own counsel and the Member has not assumed the defense.  If a  Member receives service of process of a Legal Filing from a source other than the MERSCORP Holdings mail center in which MERS and/or MERSCORP Holdings is a defendant and the Member retains counsel to defend the MERS Entities, the Member shall notify MERSCORP Holdings of the Legal Filing and provide contact information for the internal contact and outside counsel within twenty-eight (28) days of the Member's receipt of the Legal Filing.

      (ii)  <u>Notifications when MERS or MERSCORP Holdings is Not a Party</u>.  Upon service of legal process, the Member, or its retained counsel, shall review all Legal Filings  that are related to a mortgage, deed of trust, or security deed for which MERS is or was the Mortgagee of Record (as applicable) and that does not name MERSCORP Holdings and/or MERS as a defendant and shall determine whether such Legal Filing includes one or more of the following categories:

           (1)  a challenge to the authority or ability of MERS to hold, assign, and/or foreclose on mortgage liens;

           (2)  a challenge to the legality of the operation of MERSCORP Holdings, MERS, the MERS® System, or the MERS® eRegistry;

           (3)  a challenge to or examination of the actions, in his or her official capacity, of a person who is identified in the Legal Filing to be an officer or employee of MERSCORP Holdings and/or MERS (including MERS Signing Officers);

(4)  a challenge to the Nominee relationship between MERS and its Members or any other entity;

(5)  a challenge to the sufficiency or validity of an assignment by MERS on grounds that the assignment has not been recorded in the applicable public land records recording office; and/or

(6)  a dispute over whether MERS is entitled to notice of another lien-holder's foreclosure proceedings or other debt collection action.

The Member or its retained counsel shall make a good faith determination based on all information reasonably available to the Member as to whether any Legal Filing that falls into one or more of the enumerated categories listed above has a reasonable likelihood of prevailing.  If a Legal Filing has a reasonable likelihood of prevailing, then notice of the Legal Filing must be provided by the Member to MERSCORP Holdings, within twenty-eight (28) days of receipt of service of process of the Legal Filing on the Member.  The Member shall establish written procedures, or supplement existing procedures governing case management and reporting, for use in making the good faith determination required by this Section.

(iii)  <u>Notification of Appeal</u>. The Member, or its retained counsel, shall notify MERSCORP Holdings within fourteen (14) days of receipt of notice of the appeal of a court order or judgment by any party to a Legal Filing where such appeal involves one of the categories set forth in Section 3(a)(ii).

(b)  In accordance with the procedures set forth in Section 3(a)(ii), the Member, or its retained counsel, shall notify MERSCORP Holdings within thirty (30) days of receipt of any Legal Filing that is filed in response to a proceeding initiated by such Member (either in its own name or in the name of MERSCORP Holdings and/or MERS, notwithstanding Rule 8).

(c)  <u>Obligations when a Member No Longer has an Interest in a Loan</u>.  (i)  If a Member has transferred or otherwise terminated its rights and interests in a mortgage loan, and receives notice of a Legal Filing from the MERSCORP Holdings mail center under Section 3(a)(i), the Member shall, within fourteen (14) days of receipt of such Legal Filing, notify MERSCORP Holdings of the transfer or termination of the Member's rights and interests in the subject mortgage loan, and provide MERSCORP Holdings with the name of the party to which those rights and interests were transferred.

(ii)  The Member shall provide notice to MERSCORP Holdings within thirty (30) days after receipt of service of legal process of a lawsuit that involves a mortgage loan in which the Member no longer holds an interest, if the lawsuit involves a mortgage loan where MERS is the Mortgagee of Record, MERS' recorded interest is readily determinable by the Member, and neither MERSCORP Holdings nor MERS are named as a party to the lawsuit.,

(d)  <u>Filing an Action in the Name of MERS or MERSCORP Holdings</u>.  If a Member determines that it needs to file a lawsuit (or similar action) or an appeal, in the name of MERS or MERSCORP Holdings (notwithstanding Rule 8), it shall provide MERSCORP Holdings with fourteen (14) days advance notice of the filing and a copy of the draft complaint or other

document, unless the action involves an emergency measure which requires the Member to immediately file the lawsuit or similar action to protect the lien interest held by MERS, in which case the Member shall notify MERSCORP Holdings within five (5) days of the filing and provide a copy of the filed complaint or other document.

(e)  <u>Obligations of Investors</u>.  Notwithstanding any of the foregoing, a Member who is also a named Investor appearing on the MERS® System shall be relieved of any obligation to provide the notifications required under Sections 3(a)(i), 3(a)(ii), 3(a)(iii), 3(b), 3(c) and 3(d) when the Investor's retained counsel or the Investor's Servicer or Subservicer, as shown on the MERS® System, is managing the Legal Filing and the Investor has required the outside counsel, Servicer or Subservicer to provide the notifications which would otherwise be required of the Investor under this Rule.

*Section 4.* <u>Notification Contents, Delivery and Confidentiality</u>. (a)  All notifications and/or acknowledgments required by this Rule 14 shall include the following (as applicable), unless certain information has previously been provided:

(i)  the name, phone number, and email address of the contact person of the Member with respect to the subject Legal Filing or action (which may be Member's in-house counsel);

(ii)  the name, telephone number, and email address of the attorney and law firm, if any, retained by the Member with respect to the subject Legal Filing; and

(iii) either a copy of the Legal Filing with the date of service upon the Member; or: 1) the name of the Legal Filing; 2) the county, state and court in which the

Legal Filing was filed; 3) the Mortgage Identification Number ("MIN") of the mortgage loan involved; and 4) the date the Legal Filing was filed with the date of service upon the Member and the date an answer or response is due.

(b)  All notices and/or acknowledgments required by this Rule 14 shall be sent to the attention of the General Counsel of MERSCORP Holdings either (i) via facsimile to (703) 748-0183 (which is confirmed by transmission report or equivalent thereof), (ii) via e-mail to Rule14@mersinc.org (which is confirmed by delivery report or equivalent thereof), (iii) via registered or certified mail (return receipt requested and postage prepaid) to 1818 Library Street, Suite 300, Reston, VA  20190, (iv) via a nationally recognized overnight courier (prepaid and providing proof of delivery) to the address specified in 4(b)(iii), or (v) via any other method approved by MERSCORP Holdings to the address specified in 4(b)(iii).

(c)   MERSCORP Holdings will treat all information contained in notifications and/or acknowledgments provided under this Rule 14 as confidential.

*Section 5*. Indemnification Obligations. With respect to a Member Indemnified Claim as defined in Rule 13, it is the responsibility of the Member to inform its retained counsel of the Member's indemnification obligations under the Rules (including, without limitation, this Rule 14).  With respect to a Member Indemnified Claim, the Member and/or its retained counsel shall take all necessary and appropriate actions to assert promptly valid defenses available to MERSCORP Holdings, and/or MERS, (as applicable), even if such defenses are unavailable to the Member, including, without limitation, the defense that the claim against MERSCORP Holdings,

and/or MERS (as applicable) should be dismissed because MERSCORP Holdings, and/or MERS is neither the Servicer nor Note Owner of the subject mortgage loan.

(a)    Regardless of whether a Member, MERSCORP Holdings, and/or MERS defended a Member Indemnified Claim or none of these entities defended such claim, and regardless of whether MERSCORP Holdings, and/or MERS had notice of the Member Indemnified Claim (provided that if MERSCORP Holdings, and/or MERS received service of legal process of the claim, notice was provided to a Member pursuant to Rule 3 of these Rules), if a judgment is entered against MERSCORP Holdings, and/or MERS, for such claim, the Member shall either pay the full amount of the judgment, or promptly post a Surety Bond, Letter of Credit, or the equivalent that is acceptable to the court, for the amount of the judgment pending: (i) any motions to set aside or vacate the judgment; (ii) appeal of the judgment; or (iii) any challenges made by either the Member or MERSCORP Holdings, and/or MERS, to the judgment.  It is the Member's responsibility to pay the amount of the judgment and any other related Indemnified Payments on behalf of MERSCORP Holdings, and/or MERS (as applicable), and if MERSCORP Holdings, and/or MERS defends against the enforcement of a judgment (which MERSCORP Holdings, and/or MERS shall have the right to do in its discretion after notice to the Member), the Member shall promptly reimburse MERSCORP Holdings, and/or MERS (as applicable) for the amount of the Indemnified Payments related to such defense.

(b)  With respect to a Member Indemnified Claim, upon request, the Member shall provide MERSCORP Holdings with: (i) copies of all pleadings accessible to the public the Member receives from third parties and notice of protected pleadings (e.g., pleadings filed

under seal) it receives from third parties; (ii) copies of all public pleadings the Member files on its own behalf; and (iii) copies of all pleadings the Member files on behalf of MERSCORP Holdings, and/or MERS.

(c)  A Member shall in no way be relieved of its indemnification obligations under Rule 13 by (i) the failure of the Member to receive proper notification of a Legal Filing from a third party, or (ii) the proper notification of a Legal Filing by the Member to MERSCORP Holdings pursuant to this Rule 14.

*Section 6.* <u>Survival of Notice Obligations</u>. The obligations of the Member under this Rule 14 shall survive the Member's Resignation or Termination of Membership.  Notwithstanding the foregoing, if a Member is in Resigned or Terminated status, the former Member shall be relieved of its notification obligations under Sections 3(a)(ii) and 3(c)(ii) two years after the effective date of the completed Resignation or Termination.

**GLOSSARY**

***Affiliate Org ID*** means an additional Org ID issued to a Primary Member pursuant to a Primary/ Secondary Relationship Agreement.  An Affiliate Org ID shall not be used to identify a distinct legal entity .  Rather, an Affiliate Org ID may be used by a Primary Member to identify a department, line of business or internal division of such Primary Member.

***Companies*** mean collectively, MERSCORP Holdings and MERS.
INTRODUCTION

***Company*** means either MERSCORP Holdings or MERS.

***Days*** mean calendar days except as noted (e.g., business days).

***Deactivation*** means the designation of a loan as inactive on the MERS® System for a variety of reasons (e.g., Paid in Full, transfer to non-MERS status, foreclosure complete, etc.), including in conjunction with the Resignation or Termination of Membership.
RULE 1; Section 3

***Executive Sponsor*** means the Mandatory MERS® System contact who is a senior executive responsible for the MERS® System operations in the Member organization. The Executive Sponsor acts as the liaison between a Member and the MERS Entities and should have full authority to act on behalf of the Member in connection with the MERS® System and the Member's dealings with MERSCORP Holdings and MERS.
RULE 1; Section 2 (b)

***Governing Documents*** mean the MERS® System Rules of Membership, the Membership Application, and the Procedures, collectively, which together constitute the Membership Agreement between the Member and the Companies.
INTRODUCTION

***Guidelines*** mean, without limitation, the user manuals, announcements, advisory and policy bulletins, and other instructions published to address technical updates, meet production deadlines and/or legal or regulatory requirements or for reasons as otherwise deemed necessary to support Member use of the MERS® System and the execution of transactions on the MERS® System.
RULE 6; Section 1 (a)

***Interim Funder*** means an organization with an interim financial interest in a loan prior to the sale of the loan to the permanent Investor.
RULE 13; Section 1 (b)

68

**Intracompany Transfer** means a servicing transfer transaction on the MERS® System between two Org IDs associated pursuant to a Primary/Secondary Relationship Agreement.

**Intracompany Transfer Fee** means the fee charged to a Member for an Intracompany Transfer.
RULE 5; Section 1 (c)

**Investor** means the Note Owner, or the Note Owner's designee.
RULE 2; Section 5

**iRegistration** means a loan registered on the MERS® System for information purposes only, where MERS is not the Mortgagee of Record.
RULE 2; Section 4

**Legal Filings** (or **Legal Filing**) mean lawsuits, consumer complaints filed with state and/or federal  agencies, subpoenas, discovery requests, or similar documents, including but not limited to an objection to proof of claim, counterclaim, cross-claim, third party claim, or objection to motion for relief from stay.
RULE 14 Section 2.

**Lockout** means a process whereby, and status with which, a Member's access to the MERS® System is temporarily denied, including, but not limited to, preventing any new registrations and documenting transfers of ownership or servicing rights within the MERS® System.*
Lockout does not revoke the signing authority of the MERS Signing Officer(s) appointed with respect to the Member's existing MERS Loans.
* These are not legal transfers of ownership and servicing rights.
RULE 7; Section 1 (c)

**Malicious Programs** mean the generic term used to include any program (e.g., viruses, worms, Trojan Horses, malware, etc.) or set of instructions intentionally constructed with the ability or intent to damage, or interfere with programs or data, or that may collect data without the user's knowledge or otherwise adversely affect operation, disable, or shut down all or any portion of the MERS® System or services.
RULE 12; Section 7.

**Member** means a legal entity that has signed and submitted a Membership Application to MERSCORP Holdings Inc., received an Organization Identification Number(s), and been approved for integration, and whose membership has not been terminated or resigned; provided, however, that a Third Party Originator (TPO) Member is not required to enter into integration.
INTRODUCTION

**Member Profile** means the information about a Member that is required at the time of initial integration with the MERS® System. The Member Profile indicates the Member's MERS® System process preferences, billing, and other relevant information.
RULE 1; Section 2(b)

**Membership Agreement** means the contract between the Member and the Companies to abide by the terms and conditions of the Governing Documents.  If a MERS® System Member elects to become a Member of the MERS® eRegistry, that entity is also bound by the terms of the MERS® eRegistry Addendum.
RULE 9; Section 4

**Membership Application** means the document used to apply for membership to the MERS® System as a Residential, Lite or Patron Member, or as a Third Party Originator (TPO) Member.
RULE 1; Section 3 (a)

**MERS** means Mortgage Electronic Registration Systems, Inc., a Delaware corporation and wholly-owned subsidiary of MERSCORP Holdings.
INTRODUCTION

**MERS Corporate Officer** means an individual appointed by the MERS Board of Directors.
RULE 1; Section 3(a)

**MERS Corporate Resolution** means a resolution of MERS granting specifically-identified persons limited authority to take certain actions in the name of MERS as enumerated in the resolution.
RULE 3; Section 3

**MERS Entity** (plural, **MERS Entities)** means MERSCORP Holdings or MERS.
RULE 1; Section 1

**MERS Loan** means a loan for which MERS is the mortgagee, beneficiary, grantee, nominee of the lender, or other secured party. For purposes of the Governing Documents, a MERS Loan shall include, without limitation, a loan secured by a Mortgage that is assigned to MERS as Nominee.
INTRODUCTION

**MERS Signing Officer** means an individual appointed by MERS (via a MERS Corporate Resolution) and granted limited authority to take certain actions as enumerated in the MERS Corporate Resolution on behalf of MERS. MERS Signing Officers were formerly known as MERS "Certifying Officers".
RULE 3; Section 3

**MERS®** means the trade name used by MERSCORP Holdings and MERS regarding products and/or like services relating to MERS' role as mortgagee.

**MERS® eRegistry** means a legal system of record that identifies the owner (Controller) and custodian (Location) of the authoritative copy for registered eNotes.
RULE 14; Section 3 (a) (iii) 2.

**MERS® OnLine** means the browser-based interface used by a Member to access and update the MERS® System regarding mortgage loans.

**MERS® System** means the electronic registry owned and operated by MERSCORP Holdings that tracks changes in loan servicing and note ownership rights for registered mortgage loans as reported by MERS® System Members.
INTRODUCTION

**MERS® System Integration Handbook (Volumes I and II)** means the publication describing the controls and procedures that are in place to meet the 'Safeguards Rule'.
RULE 9 Section 2 (b).

**MERS® System Penalty Schedule** means the schedule for certain penalties related to violations of provisions within the Governing Documents or for errors, delays or other conduct materially detrimental to the operation of MERSCORP Holdings, MERS, the MERS® System or other Members, or improper use of the MERS® System.
RULE 7; Section 1

**MERS® System Pricing Schedule** means the schedule of Pricing for the MERS® System.
RULE 5: Section 1 (a)

**MERSCORP Holdings** means MERSCORP Holdings, Inc. (formerly known as MERSCORP, Inc.), a Delaware corporation that owns and operates the MERS® System, MERS® eRegistry, and the Corporate Resolution Management System (CRMS).  MERSCORP Holdings is the parent company and the service provider to MERS.
INTRODUCTION

**Mortgage** means an interest in or a lien against property created by written instrument providing security for the repayment of a debt and/or the performance of a duty.  References herein shall include deed(s) of trust, mortgages and security deeds, and any other form of Security Instrument under applicable state law.  See *Security Instrument*.

**Mortgage Identification Number (MIN)** means a unique 18-digit number composed of the 7-digit Organization Identification Number (Org ID), the 10-digit sequence number, and the check digit.
RULE 1; Section 2 (a)

**Mortgagee of Record** means the party that takes, holds, or receives a pledge of an interest in or lien against property as security for the payment of debt; the pledge is evidenced by a

Mortgage and recorded in the applicable public land records.  References herein to "Mortgagee of Record" shall include the named beneficiary or nominee of the lender under a deed of trust in those jurisdictions where deeds of trust are used to secure loans, and any similar status as used in connection with any other form of security instrument under applicable state law.

INTRODUCTION

***Nominee*** means one designated to act for another as his representative in a limited sense; the agency relationship specifically expressed in the terms of the Fannie Mae / Freddie Mac Uniform Security Instruments identifying MERS as the Original Mortgagee (MOM).

INTRODUCTION

***Note*** means the paper or electronic evidence of indebtedness in a mortgage loan.

RULE 2; Section 5

***Note Date*** means the date on the Note. In some states, the date the borrower signs the Note or the date the Note is drawn may or may not be the actual date on which the interest begins to accrue.

RULE 5; Section 1 (c)

***Note Holder*** means the person or entity: (i) who is entitled to enforce the Note under Article 3 of the Uniform Commercial Code, as enacted by the applicable jurisdiction, including the person or entity who controls an electronic Note under the federal Electronic Signatures in Global and National Commerce Act and/or Uniform Electronic Transactions Act, as enacted by the applicable jurisdiction and (ii) who is authorized to enforce the Note by the Note Owner if the Note Holder is not the Note Owner.

INTRODUCTION

***Note Owner*** means the person or entity with legal title to the Note (or electronic Note).

INTRODUCTION

***Organization Identification Number (Org ID)*** means a 7-digit number uniquely identifying a Member or an Affiliate Org ID on the MERS® System.

RULE 1; Section 2 (a)

***Primary Member*** means the Member designated as the Primary Member on a Primary/Secondary Relationship Agreement.

***Primary/Secondary Relationship Agreement*** means an agreement establishing a relationship between a Primary Member and a Secondary Member(s) and/or Affiliate Org ID(s) on the MERS® System and creating certain obligations and benefits based on such relationship..

RULE 5; Section 1 (c)

**Procedures** mean the procedures that the Member is bound to adhere to, as prescribed in the Procedures Manual.

RULE 1 Section 2 (b)

**Registrar** means a third party to whom a Member has contracted certain business activities such that the Registrar would be the initiator of the business activity that gives rise to a transaction on the MERS® System on behalf of the Member.

RULE 13 Section 1 (f)

**Resignation** means the process by which a membership is withdrawn from the MERS® System, pursuant to Rule 1.

RULE 1; Section 3

**Resigned Member** means a Member whose membership has been withdrawn from the MERS® System pursuant to Rule 1.

RULE 1; Section 3

**Seasoned Servicing Transfer Fee** means the fee charged to a Member  for a seasoned servicing transfer transaction.

RULE 5; Section 1 (c)

**Secondary Member** means the Member designated as the Secondary Member on a Primary/Secondary Relationship Agreement.

**Security Instrument** means a legal document creating an interest in or lien against property as collateral to protect or secure against non-payment of a debt, a mortgage, deed of trust, security deed, or any such other instrument.  See ***Mortgage***.

RULE 1; Section 3

**Servicer** means the entity that possesses the contractual right to collect payments from a debtor and otherwise service a loan for an Investor.  In some cases the Servicer may contract with a Subservicer. However, the Servicer continues to be responsible for compliance with the Procedures with respect to the loans serviced.

RULE 2; Section 3

**Services** mean all services, resources, software, equipment and facilities provided by MERSCORP Holdings, either directly or through a third party.

RULE 11; Section 1

**Subservicer** means the entity with whom the Servicer has contracted to perform certain servicing functions on behalf of the Servicer.  The Subservicer is not the legal owner of servicing rights.

RULE 2; Section 5

**Termination** means a Member's membership has been revoked by MERSCORP Holdings through the Termination of Membership process described in Rule 7.
RULE 1; Section 5

**Urgent Mail** means the postal or electronic mail received at the MERSCORP Holdings mail processing center with sufficient information to identify the MIN(s) registered on the MERS® System, that is required to be forwarded to Member(s) within 2 business days. Mail that falls into the category of "Urgent" includes:

- Adversary Complaints
- City/County Code Violations
- Foreclosure Documents
- Funds
- Government Correspondence
- Lawsuits
- Requests for Discharge of Mortgage
- Subpoenas

RULE 3; Section 1

# Exhibit E

Foreclosure Deed

# Exhibit E

Inst #: 201211070001761
Fees: $20.00
N/C Fee: $0.00
11/07/2012 10:56:53 AM
Receipt #: 1373640
Requestor:
RESOURCES GROUP
Recorded By: KRISM   Pgs: 4
DEBBIE CONWAY
CLARK COUNTY RECORDER

**RECORDING REQUESTED BY:**
Hampton & Hampton, P.C for
Fairbrook Community Association

**WHEN RECORDED MAIL DOCUMENTS TO:**
Barboursville Court Trust
900 S. Las Vegas Blvd. Ste. 810
Las Vegas NV 89101

Forward Tax Statements to Address listed above.

T.S. Number:  18845

(Recorder's Use Only)

APN:  177-36-111-001

## TRUSTEE'S DEED UPON SALE

The amount of the unpaid debt was $3,748.00

The amount paid by the Grantee was 18, 000.00.

The property is in the city of Henderson, County of CLARK.

The documentary transfer tax is *91.80*

Hampton & Hampton, P.C., as authorized trustee (herein referred to as the "Grantor"), does hereby grant and convey, but without warranty or covenant, expressed or implied, regarding title, possession or encumbrances, to the Barboursville Court Trust (herein referred to as the "Grantee(s)"), the real property situated in the County of Clark, State of Nevada, described as follows:

### SEE ATTACHED 'EXHIBIT A' FOR LEGAL DESCRIPTION

**COMMONLY KNOWN AS:** 2937 Barboursville Ct., Henderson NV 89052

This conveyance is made pursuant to the powers granted to the Association and conferred upon the appointed trustee pursuant to Nevada Revised Statute 116.3115 et. seq. and Nevada Revised Statute 116.3116 through 116.31168 et. seq. and by the provisions of the Declaration of Covenants, Conditions, and Restrictions recorded on November 27, 2006 in Book Number 20061127 as Instrument Number 1935, and any subsequent amendments

thereto.   Grantor complied with all applicable statutory requirements of the State of Nevada, and performed all duties required by such law, including the mailing of the Notice of Delinquent Assessment, Notice of Default and Election to Sell, and Notice of Sale.

Said property was sold by Trustee and/or its agent(s) at a public auction on October 23,2012 at the place named in the Notice of Trustee's Sale, in the County of Clark, Nevada in which the property is situated.  Grantee, being the highest bidder at such sale, purchased said property and paid to trustee the amount bid being Three Thousand Seven Hundred and Forty-Eight dollars ($3,748.00) in lawful money of the United States of America, or by the satisfaction of the obligations then due and payable to the association claimant.

DATED:  October 30, 2012

By: _____

Katryna Harper, Collections Manager
Trustee and Authorized Agent for
Hampton & Hampton, P.C.

STATE OF NEVADA          )
                         )ss.
COUNTY OF CLARK          )

On 10/30/12, before me, the undersigned Notary Public, duly commissioned and sworn, personally appeared Katryna Harper, known to me, or proved on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument as the Trustee, and who acknowledged to me that he executed the same freely and voluntarily, and for the uses and purposes mentioned within.

_____
Notary Public

S. VELASCO
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 12-8865-1
My Appt. Expires Sept. 19, 2016

EXHIBIT "A"

Legal Description

Parcel 1:

That portion of the Northwest Quarter (NW 1/4) of Section 36, Township 22, Range 61 East, M.D. B&M., according to the Official Plat of said land on file in the office of the Bureau of Land Management, Clark County, Nevada, and being more particularly described as follows:

Parcels 1-1,1-2,1-3, and 1-4, as shown by map thereof on File in file 44 of Parcel Maps, Page 67, in the Office of the County Recorder of Clark County, Nevada.

Parcel 2:

That portion of the Northwest Quarter (NW 1/4) of the Northwest Quarter (NW 1/4) of Section 36, Township 22 South, Range 61 East, M.D.M., described as follows:

Lots 2-1,2-2,2-3 and 2-4 as shown by map thereof on file in File 44 of Parcel Maps, Page 68 in the Office of the County Reorder of Clark County, Nevada.

Parcel 3:

That Portion of the South One Half (S1/2) of Section 36, Township 22 South, Range 61 East, further described as follows:

Lot Nine (9) as shown by map thereof in File 7 of Parcel Maps, page 44 in the office of the County Recorder, Clark County, Nevada, and as shown by Amended Map thereof in File 9 of Parcel Maps, page 29 in the office of the County Recorder, Clark County, Nevada.

Subject to

1. All general and special taxes for the current fiscal year.

2. Covenants, Conditions, Restrictions, Reservations, Rights, Rights of Way and Easements now of record.

*TOGETHER* with all tenements, hereditaments and appurtenances, including easements and water rights, if any, thereto belonging or appertaining, and any reversions, remainders, rents, issues or profits thereof.

Date: 04/22/2004

STATE OF NEVADA
DECLARATION OF VALUE FORM

1. Assessor Parcel Number(s)
   a. 177-36-111-001
   b. _____
   c. _____
   d. _____

2. Type of Property:
   a. ☐ Vacant Land      b. ☑ Single Fam. Res.
   c. ☐ Condo/Twnhse     d. ☐ 2-4 Plex
   e. ☐ Apt. Bldg        f. ☐ Comm'l/Ind'l
   g. ☐ Agricultural     h. ☐ Mobile Home
      ☐ Other _____

FOR RECORDER'S OPTIONAL USE ONLY
Book: _____ Page: _____
Date of Recording: _____
Notes:

3. a. Total Value/Sales Price of Property        $ 78,000.00
   b. Deed in Lieu of Foreclosure Only (value of property)
   c. Transfer Tax Value:                        $ 78,000.00
   d. Real Property Transfer Tax Due             $ 29,480

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption: _____
   _____

5. Partial Interest: Percentage being transferred: 100 %
   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature: _Kat Harp_                Capacity: Trustee _____

Signature: _____      Capacity: _____

**SELLER (GRANTOR) INFORMATION**          **BUYER (GRANTEE) INFORMATION**
**(REQUIRED)**                            **(REQUIRED)**

Print Name: Hampton & Hampton, P.C        Print Name: Barboursville Court Trust
Address: 8965 S. Pecos Rd., Ste. 9-A      Address: 900 S. Las Vegas Blvd., Ste. 810
City: Henderson                           City: Las Vegas
State: NV          Zip: 89074             State: NV          Zip: 89101

**COMPANY REQUESTING RECORDING**
Print Name: Hampton & Hampton, P.C        Escrow #: TS#18845
Address: 8965 S. Pecos Rd., Ste. 9-A
City: Henderson                           State: NV          Zip: 89074

As a public record this form may be recorded/microfilmed

# Exhibit F

FHFA Statement on HOA
Super Priority Lien Foreclosures

# Exhibit F



<span style="color:red">**Statement**</span>

# Statement on HOA Super-Priority Lien Foreclosures

**FOR IMMEDIATE RELEASE**

**4/21/2015**

Title 12 United States Code Section 4617(j)(3) states that, while the Federal Housing Finance Agency acts as Conservator, "[no] property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency." This law precludes involuntary extinguishment of Fannie Mae or Freddie Mac liens while they are operating in conservatorships and preempts any state law that purports to allow holders of homeownership association (HOA) liens to extinguish a Fannie Mae or Freddie Mac lien, security interest, or other property interest.

As noted in our December 22, 2014 statement on certain super-priority liens, FHFA has an obligation to protect Fannie Mae's and Freddie Mac's rights, and will aggressively do so by bringing or supporting actions to contest HOA foreclosures that purport to extinguish Enterprise property interests in a manner that contravenes federal law. Consequently, FHFA confirms that it has not consented, and will not consent in the future, to the foreclosure or other extinguishment of any Fannie Mae or Freddie Mac lien or other property interest in connection with HOA foreclosures of super-priority liens.

12/22/2014:  **Statement of the Federal Housing Finance Agency on Certain Super-Priority Liens**

###

The Federal Housing Finance Agency regulates Fannie Mae, Freddie Mac and the 12 Federal Home Loan Banks. These government-sponsored enterprises provide more than $5.6 trillion in funding for the U.S. mortgage markets and financial institutions. Additional information is available at **www.FHFA.gov**, on Twitter **@FHFA**, **YouTube** and **LinkedIn**.

## Contacts:

Media: Corinne Russell (202) 649-3032 / Stefanie Johnson (202) 649-3030

Consumers: **Consumer Communications** or (202) 649-3811

© 2018 Federal Housing Finance Agency